**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF KENTUCKY (at Frankfort)**

| | | |
|---|---|---|
| **Andrew Cooperrider, Tony Wheatley, and Jacob Clark** | : | Case No.:_____ |
| c/o Christopher Wiest, Esq. | : | |
| 25 Town Center Blvd, Ste. 104 | | |
| Crestview Hills, KY 41017 | : | |
| | | |
| **And** | : | |
| | | |
| **Kevin Glowgower on behalf of himself** | : | |
| **and his confidential clients,** | | |
| **John Does 1-3** | : | |
| c/o Anna Stewart Whites | | |
| 327 Logan Street | : | |
| Frankfort, KY 40601 | | |
| | : | |
| **And** | : | |
| | : | |
| **Carol and Michael VanWinkle** | : | |
| c/o Anna Stewart Whites | : | |
| 327 Logan Street | | |
| Frankfort, KY 40601 | : | |
| | | |
| **Plaintiffs** | : | |
| | | |
| v. | : | |
| | | |
| **Andrew Beshear, Governor** | : | |
| 700 Capitol Ave, Suite 100 | | |
| Frankfort, KY 40601 | : | |
| | | |
| **And** | : | |
| | | |
| **Melissa Bybee-Fields** | : | |
| Clerk, Kentucky House of Representatives | | |
| 700 Capital Ave. | : | |
| Frankfort, KY 40601 | | |
| | : | |
| **Defendants** | | |
| | : | |
| Also Serve: | | |
| | : | |
| Kentucky Attorney General Daniel Cameron | | |
| 700 Capitol Ave, Suite 118 | : | |

1

Frankfort, KY 40601
(served only for purposes of KRS 418.075)    :

## PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1. The right to petition the legislature for redress of grievances is rooted in pre-colonial times, tracing back to the Magna Carta.  The right to petition under American law stems from these rights, and the English Bill of Rights 1689, and the Petition of Right (1628). In colonial America, state legislatures had both a judicial, equitable, and legislative role. In Blackstone's *Commentaries*, Americans in the Thirteen Colonies read that "the right of petitioning the king, or either house of parliament, for the redress of grievances" was a "right appertaining to every individual."  The Declaration of Independence had, as one of its grievances, "In every stage of these Oppressions We have Petitioned for Redress in the most humble terms: Our repeated Petitions have been answered only by repeated injury. A Prince, whose character is thus marked by every act which may define a Tyrant, is unfit to be the ruler of a free people."[1]

2. The first significant exercise and defense of the right to petition within the United States was to advocate the end of slavery by petitioning Congress in the mid-1830s, including 130,000 such requests in 1837 and 1838. In 1836, the House of Representatives adopted a gag rule that would table all such anti-slavery petitions. John Quincy Adams and other Representatives eventually achieved the repeal of this rule in 1844 on the basis that it was contrary to the right to petition the government.

---

[1] A history and explanation of this right and its history is contained in the article: *A Short History of the Right To Petition Government for the Redress of Grievances*, Stephen Higginson, 96 Yale Law Journal 142 (1986).

3. This case deals with the First Amendment, and its guaranties of the right to petition, to free speech, to association, and Fourteenth Amendment guaranties, and their application to a statute, which has been construed to impose serious liabilities in a content-based manner upon petitioners to Kentucky's General Assembly, who communicate a petition asking for the impeachment of civil officers, while leaving untouched all other petitions, under KRS 63.070.

4. It should be noted that there are three groups of Plaintiffs in this matter, constituting registered Republicans and Democrats. They could not disagree with each other more about the substance of what each group sought through their petitions, and yet they collectively agree on the importance of the rights at issue in this case. The rights at issue are non-partisan, ancient, and fundamental.

## **PARTIES[2]**

5. Plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark are all citizens and residents of the Commonwealth of Kentucky, residing in Fayette, Mercer, and Grayson Counties, respectively.

6.  Plaintiffs Kevin Glowgower, Esq. and John Does 1-3,[3] are all citizens and residents of Jefferson County, Kentucky.

7. Plaintiffs Michael and Carol VanWinkle are citizens and residents of Madison County, Kentucky.

---

[2] The Kentucky Attorney General is served, but is not made a party, solely for compliance with KRS 418.075 and FRCP 5.1.
[3] A motion is being submitted contemporaneously herewith to permit these parties to proceed anonymously.

8. Defendant Hon. Andrew Beshear is the duly elected Governor of Kentucky. He is sued in his official capacity. As is related to this matter, Governor Beshear as an accused to an impeachment petition, under KRS 63.070, is entitled to, has threatened, and continues to threaten, the enforcement of the provisions of that statute.

9. Defendant Melissa Bybee-Fields is the duly appointed Clerk of the Kentucky House of Representatives. She is sued in her official capacity. As is related to this matter, Clerk Bybee-Fields is sued because it is her ministerial duty to tax as costs, the costs called for in KRS 63.070.[4]

## JURISDICTION AND VENUE

10. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

11. Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiffs' Constitutional Rights occurred in counties within this District within Kentucky, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District.

## FACTS

12. On or about January 8, 2021, Plaintiffs Andrew Cooperrider, Tony Wheatley, Jacob Clark (collectively the "Beshear Petitioners"), and a fourth individual submitted a petition with the Kentucky House of Representatives requesting redress of injuries and the remedy of the impeachment of Governor Andrew Beshear, for, among other things,

---

[4] The House Clerk is not entitled to legislative immunity for the claims and actions complained of. *Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015); *Powell v. McCormack*, 395 U.S. 486, 506, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).

repeated federal constitutional violations by the Governor as determined by this and other federal courts, in *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Roberts v. Neace*, 457 F. Supp. 3d 595 (EDKY 2020); *Ramsek v. Beshear*, 468 F. Supp. 3d 904 (EDKY 2020).[5]  It was supported by dozens of other Kentucky residents as affiants, and approximately another 100,000 Kentucky residents submitted supporting petitions.

13. On or about January 13, 2021, Plaintiffs Michael and Caron VanWinkle[6] (collectively the "Goforth Petitioners") submitted a petition with the Kentucky House of Representatives requesting redress of injuries and the remedy of the impeachment of State Representative Robert Goforth, for, among other things, his pending felony charges related to the strangulation with an ethernet cord, and other domestic violence directed towards his wife.[7]  This petition was supported by approximately a dozen other Kentucky residents.

14. On or about January 22, 2021, Plaintiffs John Does 1-3, through their Counsel, Plaintiff Kevin Glogower, Esq., (collectively the "Cameron Petitioners"), with another affiant, and Jennifer Smith, submitted a petition with the Kentucky House of Representatives requesting redress of injuries and the remedy of the impeachment of Attorney General Daniel Cameron, for, among other things, grievances related to his handling of the investigation and presentation of evidence before the Jefferson County Grand Jury related to the death of Breonna Taylor.[8]

---

[5] https://apps.legislature.ky.gov/CommitteeDocuments/343/13202/2021Impeachment%20Petition.pdf (last visited 3/12/21).
[6] To be clear, the Van Winkle's were the petitioners, though others signed on as supporters.
[7] https://apps.legislature.ky.gov/CommitteeDocuments/343/13212/Impeachment%20Petition--Rep.%20Goforth.pdf  (last visited 3/12/21).
[8] https://apps.legislature.ky.gov/CommitteeDocuments/343/13212/Impeachment%20Petition--AG%20Daniel%20Cameron.pdf  (last visited 3/12/21).

15. On February 23, 2021, all three petitions were dismissed.[9]  All of those dismissals indicated an intention to tax the "costs of investigation" to the Petitioners in all three petitions, which included attorney and expert fees.

16. On March 3, 2021, Governor Beshear submitted a cost bill application to the Impeachment Committee, seeking, among other things, that "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to order the remaining Petitioners to reimburse the Commonwealth for these expenses."  See **Exhibit 1**.  In total, the Governor sought $17,730.85 in fees and costs from these petitioners.

17. In the same vein, the Kentucky Attorney General, perhaps recognizing the significant First Amendment issues associated with taxing costs against people for the exercise of First Amendment rights, expressly declined to seek cost reimbursement.[10]

18. On March 11, 2021, the undersigned counsel for the Beshear Petitioners sent communication to the Governor, requesting his position on whether or not the Governor would seek enforcement of the full amount of the fees and costs against the petitioners. There were back and forth communications related to same, which is contained at

---

[9]

https://apps.legislature.ky.gov/CommitteeDocuments/343/13227/Rep.%20Goforth%20Petition%20Dismissal.pdf (last visited 3/12/2021).

https://apps.legislature.ky.gov/CommitteeDocuments/343/13227/Committee%20Report%20and%20Recommendation%20-%20AG%20Daniel%20Cameron.pdf (last visited 3/12/2021);

https://apps.legislature.ky.gov/CommitteeDocuments/343/13227/Committee%20Report%20and%20Recommendation%20-%20Gov%20Andrew%20Beshear.pdf (last visited 3/12/2021).
[10]
https://apps.legislature.ky.gov/CommitteeDocuments/343/13297/AG%20Response%20to%20Request%20for%20Reconsideration%20of%20a%20Bill%20of%20Costs.pdf (last visited 3/12/2021).

**Exhibit 2**.  The bottom line is this: the Governor has submitted a pleading seeking costs to be reimbursed and has refused to disclaim any intention to seek same.

19. On March 12, 2021**,** the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $42,444.05 to the Beshear Petitioners.[11]  The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicating they will not entertain arguments about the constitutionality of such fees.

20. On March 12, 2021**,** the Kentucky House Impeachment Committee sent a letter to the Cameron Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $7,597.36 to the Cameron Petitioners.[12]  The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicating they will not entertain arguments about the constitutionality of such fees.

21.  On March 12, 2021**,** the Kentucky House Impeachment Committee sent a letter to the Goforth Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $12,457.36 to the Goforth Petitioners.[13]  The Committee likewise indicated that they would not entertain any objections or argument

---

[11] https://apps.legislature.ky.gov/CommitteeDocuments/343/13297/Bill%20of%20Costs%20-%20Gov.%20Beshear%20(FINAL).pdf (last visited March 14, 2021).

[12] https://apps.legislature.ky.gov/CommitteeDocuments/343/13297/Bill%20of%20Costs%20-%20AG%20Cameron%20(FINAL).pdf (last visited March 14, 2021).

[13] https://apps.legislature.ky.gov/CommitteeDocuments/343/13297/Bill%20of%20Costs%20-%20Rep.%20Goforth%20(FINAL).pdf (last visited March 14, 2021).

about the imposition of these fees or costs generally, and thus indicating they will not

entertain arguments about the constitutionality of such fees.

22. Plaintiffs have therefore exhausted their remedies.

23. As of the date and time that this matter has been filed, there has been no filing in state

court to seek to enforce any cost of investigation, and, further, no final costs of

investigation under K.R.S. 63.070 have been determined or assessed.

24. Plaintiffs seek injunctive and declaratory relief that K.R.S. 63.070 is unconstitutional,

facially and as-applied to them.

<u>The Challenged Statute</u>

25. KRS 63.070(1) provides: "In a proceeding for impeachment … if the committee reports

against the petition and the report is not overruled by the house petitioned, the petitioner

shall be liable to witnesses and to the accused for the costs of investigation before the

committee. These costs shall be taxed by the clerk of the house appointing the

committee."

26. The statute does not outline what "reports against the petition" by a committee is.  In the

present application, a report against the petition is being held to include the dismissal of

the petition, in 3 cases, but not in another 100+ cases filed contemporaneously.

27. That language makes it impossible for a petitioner to determine in advance whether costs

of the committee may be imposed against the petitioner.

28. KRS 63.070(3) provides: "Costs taxed pursuant to this section may be recovered on

motion, after five (5) days' notice, in a Circuit Court."

29. What such "costs" may include is not outlined in statute or case law.  In the present case,

"costs" are being held to include the legislature's own costs for multiple outside counsel

hired by the committee for its own use, "expert" witnesses who were not available for review or cross-examination by the petitioners, and even staff and Kentucky State Police time spent with the committee.

30. No other legislative committee formed for any other purpose may charge its own attorney, expert, or staff costs to a citizen or petitioner who brings concerns before it.

31. These provisions do not require any finding that the submitted petition is: (1) frivolous; (2) submitted in bad faith; (3) unreasonable; or (4) meant to harass prior to imposition of fees.  Instead, the provisions provides that substantial and steep penalties be imposed on all petitioners unless the full House and Senate actually successfully impeach the person named in the petition.  This serves to child the exercise of a core freedom.

32. These provisions are not the only mechanisms under Kentucky law, under which Kentucky's legislative branch receives reports of potential misconduct.  For instance, KRS 6.686 provides the means to submit reports of violations of legislative ethics but has ability to award costs only if the petition is filed in clear bad faith and the allegations therein are knowingly false.  Even under those circumstances, the costs awarded do not include the costs of the Legislative Ethics Committee for its counsel or investigators or experts.

33. Kentucky's General Assembly and its members regularly receives reports and petitions by citizens on a range of topics, including whether to pass or not pass legislation on an entire host of topics and issues.

34. These non-impeachment citizen petitions can, and do, generate significant legislative and other governmental resources and expenses for investigation and resolution.

35. The only petition to the legislature that even arguably permit imposition of any costs or fees is an impeachment petition.

36. Even worse, the statute is viewpoint based: citizen petitions that request impeachment are subjected to liabilities, while citizen petitions that oppose impeachment are not.

37. There is no rational basis for that distinction.

38. No distinction is drawn between the contents of a petition which requests impeachment as one of many proposed legislative actions that can be taken versus one focused on only on impeachment.  A petition may contain dozens of requests for relief, but still be exposed to onerous and chilling fees and costs assessment if "impeachment" is also referenced.  One must look at, and assess, both the contents and viewpoint of a petition to determine whether it seeks impeachment, versus the entire list of topics that do not incur the penalty.

39. The law does not clearly define what the "costs" to be assessed might be, and interpretation may differ, which exposes petitioners to improper risk of penalties.

40. The law prices citizens with valid concern out of the market, rendering impeachment petitions a process that only wealthy citizens can afford to take part in.  This clear disparate impact renders the law unconstitutional.

41. The law, as written, permits the legislature to enrich itself at the expense of citizens.

42. The law has a clear chilling effect on those who wish to bring concerns to the legislature and to hold their elected officials accountable.

## **COUNT I – Violation of the First Amendment Guaranties of the Right to Petition, Free Speech, Free Association, and Equal Protection**

43. The First Amendment of the United States Constitution states, in relevant part, "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances."

44. The Fourteenth Amendment of the United States Constitution states, in relevant part, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

45. The First Amendment guaranties of Free Speech and the Right to Petition have been incorporated against the states under the Fourteenth Amendment in *Gitlow v. New York*, 268 U.S. 652 (1925) and *DeJonge v. Oregon*, 299 U.S. 353 (1937).

46. It includes a right to association as expressed in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).

The Petition Clause is Violated

47. Under the First Amendment's Petition Clause, the Supreme Court has developed the *Noerr-Pennington* doctrine, which provides absolute immunity is conferred as against any liability related to petitioning activities directed at the legislature, such as those by these petitioners, and it applies here as well.  *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).  The ultimate effect of the *Noerr-Pennington* doctrine when applied in this broader sense is that "if a party's actions are protected by the First Amendment, then that party is immune to suit." *Wilder v. Hall*, 501 F.Supp.2d 887, 895 (E.D. Ky. 2007); *see*

*also Harris v. Adkins*, 189 W. Va. 465, 432 S.E.2d 549, 551 (W.Va. 1993) (citation

omitted) ("The clear import of the *Noerr-Pennington* doctrine is to immunize from legal

action persons who attempt to induce the passage or enforcement of law or to solicit

governmental action even though the result of such activities may indirectly cause injury

to others.").

48. As the Supreme Court observed in *Thomas v. Collins*, 323 U.S. 516, 543 (1943):

> There is some modicum of freedom of thought, speech and assembly which all citizens of
> the Republic may exercise throughout its length and breadth, which no State, nor all
> together, nor the Nation itself, can prohibit, restrain or impede. If the restraint were
> smaller than it is, it is from petty tyrannies that large ones take root and grow. This fact
> can be no more plain than when they are imposed on the most basic rights of all.
> Seedlings planted in that soil grow great and, growing, break down the foundations of
> liberty.

49. "Petitions are a form of expression, and [persons] who invoke the Petition Clause in most

cases could invoke as well the Speech Clause of the First Amendment." *Borough of*

*Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011).

50. The right to petition cannot be circumscribed unless the particular petition is found to

lack "a reasonable basis in fact or law." *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 748

(1983). There is no such requirement under K.R.S. 63.070.

<u>The Free Speech Clause is Violated</u>

51. KRS 63.070 is a content-based regulation: it depends, on its application, solely on the

content of the petition submitted to the legislature, and one must look at that content to

determine whether the statute applies.

52. Because the application of the statute is "drawn based on the message a speaker

conveys," it is therefore "subject to strict scrutiny." *Reed v. Town of Gilbert*, 576 U.S.

12

155, 164 (2015).  Said another way, the applicability of the statute "depend[s] entirely on the communicative content" of the petition.  *Id.*

53. Even worse, the restriction is actually viewpoint discrimination.  *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828-829 (1995).  Those who submit petitions in favor of impeachment are penalized; those who submit petitions opposing impeachment are not.  Here, "the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant."  *Id.*

54. In *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), the Supreme Court was clear that if a fee or cost is charged to exercise a First Amendment right and is based on the content of the speech, it violates the First Amendment.  *Forsyth County* also stands for the proposition that there must be "some limit on the amount the government could charge, based on the potential for a fee to deter protected speech."  *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485 (6th Cir. 2008).

55. Indeed, where a privilege is freely granted by the constitution, it cannot be the subject of a fee or tax.  *Murdock v. Pennsylvania*, 319 U.S. 105, 114 (1943).  The amounts taxed against these petitioners is far from "nominal," which under *Murdock* renders it unconstitutional on its face.  *Id.*

56. Viewpoint discrimination is presumptively unconstitutional.  *Rosenberger*, 515 U. S. 819, 829-830 (1995); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (striking down viewpoint-based law, without undertaking scrutiny or tailoring analysis).

## The Right to Freedom of Association is Violated

57. And, finally, the restriction at issue, being content-based, and viewpoint-based, also is a content-based and viewpoint-based infringement upon the right to association. *NAACP v. Button*, 371 U.S. 415 (1963).

## Equal Protection is Violated

58. Turning, finally, to equal protection, the Fourteenth Amendment prohibits states from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Because there are valid First Amendment claims, strict scrutiny applies. *Zillow, Inc. v. Bork*, 462 F. Supp. 3d 699, 706 (EDKY 2020).

## Strict Scrutiny is not met

59. KRS 63.070, and its application here, fails to meet strict scrutiny: to the extent that the state interest behind it is a desire to recover costs of frivolous petitions on those advancing them, or even causing reimbursement for those petitions that lack a reasonable basis in fact or law, it is not limited to any such finding that a petition is frivolous or that it lacks a reasonable basis in fact or law. If a petition is not advanced because it is deemed not politically expedient to do so, the petition will fail, even if well grounded.

60. Impeachment is fundamentally a political decision, and there are a host of reasons why impeachment may or may not move forward, wholly untied to the merits and basis or substance of the petition.

61. This inherently is not sufficient to meet the narrow tailoring requirement.

14

<u>Injunctive Relief</u>

62. Plaintiffs have and continue to have their fundamental constitutional rights violated by these official capacity Defendants, who are personally involved with the enforcement and/or threatened enforcement of the challenged statute.  Plaintiffs will be irreparably harmed if injunctive relief is not issued.  Further, the public interest is served by the vindication of constitutional rights, and the weighing of harms warrants issuing injunctive relief.

<u>Generally</u>

63. Defendants abused the authority of their offices and, while acting under color of law and with knowledge of Plaintiffs' established rights, used their offices to violate Plaintiffs' Constitutional rights, privileges, or immunities secured by the Constitution and laws.

64. Thus, under 42 U.S.C 1983, Plaintiffs seek declaratory relief and injunctive relief. Pursuant to 42 U.S.C. 1988, Plaintiffs further seek their reasonable attorney fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendant as prayed for, including:

A.  That this Court issue a declaration that KRS 63.070, facially or as applied, is unconstitutional.

B.  That this Court enter permanent injunctive relief to prohibit enforcement of the challenged statute by the Defendants, including prohibiting the House Clerk from taxing the costs and against the Governor preventing the enforcement of any cost bill.

C.  That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

15

D.  Such other relief as this Court shall deem just and proper.

Respectfully Submitted,

/s/Christopher Wiest
Christopher Wiest (KBA 90725)
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
chris@cwiestlaw.com
513.257.1895

/s/Thomas Bruns
Thomas Bruns (KBA 84985)
Bruns Connell Vollmar Armstrong, LLC
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513.312.9890

/s/Zach Gottesman
Zach Gottesman (86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Counsel for the Beshear Petitioners*

/s/Anna Whites
Anna Whites
327 Logan Street
Frankfort, KY 40601
annawhites@aol.com
502.229.1063
*Counsel for the Cameron and Goforth*
*Petitioners*

16

*In the*
COMMONWEALTH OF KENTUCKY
HOUSE OF REPRESENTATIVES


JACOB CLARK, TONY L, WHEATLEY,
and ANDREW D. COOPERRIDER                                    PETITIONERS

v.

GOVERNOR ANDY BESHEAR                                       RESPONDENT


**GOVERNOR BESHEAR'S BILL OF COSTS**

In accordance with this Committee's request in its February 23, 2021 Report and

Recommendation that the Governor submit a bill of costs pursuant to KRS 63.070 related to his

defense of this impeachment petition, including attorney's fees, Governor Beshear states as

follows:

Attorneys for Governor Beshear recorded a total of 159.5 hours in his defense, at a cost

of $17,730.85.  This cost is based on an hourly rate for each attorney as calculated by Mary

Elizabeth Bailey, Commissioner of the Deparment of Human Resources Administration within

the Personnel Cabinet. Commissioner Bailey's methodology and calculated hourly rates are

documented by Affidavit attached as Exhibit 1.  The following table summarizes the cost of the

attorney time by attorney name and applicable hourly rate as calculated by Commissioner Bailey.

A detailed accounting of the attorneys' time is attached as Exhibit 2.

| Attorney | Hourly Rate | Hours Worked | Total |
|----------|-------------|--------------|-------|
| Amy D. Cubbage | $118.18 | 58.0 | $6,854.44 |
| S. Travis Mayo | $118.90 | 43.6 | $5,184.04 |
| Marc G. Farris | $105.12 | 15.3 | $1,608.34 |
| Taylor A. Payne | $108.22 | 15.7 | $1,699.05 |
| Shawn Chapman | $83.55 | 9.2 | $768.66 |
| Benjamin Long | $109.12 | 2.5 | $272.80 |
| T. Chad Thompson | $70.40 | 2.8 | $197.12 |
| Jacob Walbourn | $93.56 | 0.7 | $65.49 |

EXHIBIT 1

| | | | |
|---|---|---|---|
| Shawna Kincer | $88.98 | 3.0 | $266.94 |
| Jessica Williamson | $93.56 | 8.7 | $813.97 |
| **TOTAL** | | 159.5 | $17,730.85 |

The Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to order the remaining Petitioners to reimburse the Commonwealth for these expenses.

Dated: March 3, 2021

Respectfully submitted,

Amy D. Cubbage
General Counsel
S. Travis Mayo
Chief Deputy General Counsel
Taylor A. Payne
Deputy General Counsel
Marc G. Farris
Deputy General Counsel
Office of Governor Andy Beshear
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
amy.cubbage@ky.gov
travis.mayo@ky.gov
taylor.payne@ky.gov
marc.farris@ky.gov

*Counsel for Governor Andy Beshear*

# Exhibit 1

---

## AFFIDAVIT

---

Comes the Affiant, Mary Elizabeth Bailey, being first duly sworn, and hereby swears and deposes as follows:

1.      My name is Mary Elizabeth Bailey, and I am over eighteen years of age and have personal knowledge of the matters set forth herein.

2.      I am the Commissioner of the Department of Human Resources Administration within the Commonwealth of Kentucky Personnel Cabinet.

3.      I have served in this capacity since July 2012.  I have been employed by the Commonwealth of Kentucky in some capacity since May, 1995.

4.      The Personnel Cabinet is the official custodian of all personnel records.  Within the Cabinet, my department is the custodian of official documentation and reports related to employee payroll.

5.      After a review of the Cabinet's records, I have determined and can attest to the following total hourly compensation rate (including salary and fringe benefits) for the below employees:

| | | |
|---|---|---|
| a. | Amy D. Cubbage | $118.18 |
| b. | S. Travis Mayo | $118.90 |
| c. | Marc G. Farris | $105.12 |
| d. | Taylor A. Payne | $108.22 |
| e. | Shawn Chapman | $83.55 |
| f. | Benjamin Long | $109.12 |
| g. | T. Chad Thompson | $70.40 |
| h. | Jacob Walbourn | $93.56 |
| i. | Shawna Kincer | $88.98 |
| j. | Jessica Williamson | $93.56 |

Further, Affiant sayeth naught.

*Mary Elizabeth Bailey*

MARY ELIZABETH BAILEY
COMMISSIONER
DEPT. OF HUMAN RESOURCES ADMINISTRATION

STATE OF KENTUCKY        )
                         )
COUNTY OF FRANKLIN       )

    The foregoing instrument was acknowledged before me on this the 2nd day of

March, 2021, by _Amy Ireland_____.

    My commission expires: ___May 22, 2021_____

                    _Amy Ireland #579918_

                  NOTARY PUBLIC

# Exhibit 2

## <u>Time Recorded on Behalf of Governor Beshear</u>

### <u>Amy D. Cubbage</u>

<u>1/13/2021</u>
-   3.2 hours – Review and analyze impeachment petition; observe Committee meeting; discuss Committee meeting with office attorneys and staff; discuss response to the petition.

<u>1/14/2021</u>
-   2.0 hours – Analyze issues re content and format of response to impeachment petition; outline legal arguments for same.

<u>1/15/2021</u>
-   4.5 hours – Internal meeting re draft response to the petition and research to be performed; assign research to attorneys; perform research re claims in petition.

<u>1/16/2021</u>
-   1.5 hours –Draft response to petition.

<u>1/17/2021</u>
-   1.7 hours – Review research re various legal issues in petition; draft various sections for response to petition.

<u>1/18/2021</u>
-   6.5 hours –Continued drafting and editing of response to petition; review and analyze additional research.

<u>1/19/2021</u>
-   3.8 hours – Draft additional sections of response to petition; edit same.

<u>1/20/2021</u>
-   2.1 hours – Draft additional sections of response to petition; edit same.

<u>1/21/2021</u>
-   3.7 hours - Draft additional sections of response to petition; edit same.

<u>1/22/2021</u>
-   4.8 hours – Final edits and proofreading of response to petition; prepare exhibits; file petition response with committee.

<u>1/26/2021</u>
-   1.0 hours – Receive and review reply in support of petition; analyze issues re same.

<u>1/27/2021</u>

- 2.1 hours – Continued review of reply in support of petition; observe Committee hearing; receive and review correspondence from R. Daniel attorney; analyze issues re same.

1/28/2021
- 1.5 hours – Receive and review Committee letter requesting additional information; gathered records related to the request for additional information; performed legal research; draft response letter.

1/29/2021
- 1.5 hours – Draft letter to Committee.

1/30/2021
- 0.5 hours– Revise letter to Committee.

1/31/2021
- 1.5 hours – Revise letter to Committee

2/1/2021
- 2.1 hours – Finalize letter and provide to Committee.

2/4/2021
- 1.0 hours – Observe Committee meeting; receive and review letter from Committee requesting additional information.

2/5/2021
- 2.2 hours – Additional review of letter from Committee requesting additional information; telephone conference with Committee attorney re same; draft response to same.

2/6/2021
- 0.4 hours – Revise draft letter in response to Committee.

2/7/2021
- 0.3 hours – Additional revisions to draft letter in response to Committee.

2/8/2021
- 2.7 hours – Additional edits to draft letter; review materials to enclose with letter; telephone conference with Committee attorney re same; finalize and send letter and enclosures to Committee.

2/11/2021
- 1.2 hours – Observe Committee hearing.

2/22/2021
- 1.5 hours – Observe Committee hearing.

<u>2/23/2021</u>
- 3.5 hours – Observe Committee hearing.

<u>2/24/2021</u>
- 1.2 hours – Receive and review final Committee report.

**TOTAL for Amy D. Cubbage:        58.0 hours**


### S. Travis Mayo

1/13/2021
- 1.0 hours – Discuss Committee proceedings and potential response to the petition; review the petition.
- 1.8 hours – Observe meeting of Committee; discussed Committee meeting with office attorneys and staff; discussed response to the petition.

1/14/2021
- 2.0 hours – Discuss organization and contents of response; draft outline of some of the legal arguments for the draft response to the petition.

1/15/2021
- 2.5 hours – Discuss draft response to the petition; discuss legal research to be performed; assign legal research to attorneys.

1/16/2021
- 2.0 hours – Continued review of petition; discuss individual counts in the petition with attorneys; assign sections of the draft response to the petition for drafting; determine additional legal research needed for drafting the response to the petition; assign additional legal research.
- 0.8 hours – Research and begin drafting sections for the response to the petition.

1/17/2021
- 0.8 hours – Receive and review draft legal memorandum.
- 8.3 hours – Receive and review draft legal memoranda; draft multiple sections for the response to the petition.

1/18/2021
- 1.5 hours – Research for impeachment response.
- 0.5 hours – Receive and review draft results of legal research.
- 2.0 hours – Draft sections for the response to the petition.
- 1.3 hours– Review and edit the draft response to the petition.

1/19/2021
- 0.3 hours – Research and edit draft response to the petition.

1/21/2021
- 1.3 hours – Review and edit draft response to the petition.

1/27/2021
- 0.6 hours – Review reply to the petition.
- 1.7 hours – Observe and analyze Committee hearing.

1/28/2021
- 2.5 hours – Receive and review Committee letter requesting additional information; gather records related to the request for additional information; perform legal research; draft section for letter.

1/29/2021
- 1.2 hours – Review draft letter to Committee; performed additional legal research; provided draft section for letter.

1/30/2021
- 1.0 hours – Review revised draft letter; perform additional legal research.

1/31/2021
- 0.3 hours – Review revised drafts of letter.

2/1/2021
- 0.2 hours – Review draft letter and provide edits to draft letter; discuss draft letter with attorneys.

2/4/2021
- 1.5 hours – Observe Committee meeting; discuss Committee meeting with co-counsel.

2/5/2021
- 1.0 hours – Review letter from Committee requesting additional information; discuss with attorneys; review draft response letter to Committee.

2/6/2021
- 0.2 hours – Review revised draft letter in response to Committee; discuss with attorneys.

2/7/2021
- 0.1 hours – Review revised draft letter in response to Committee; discuss with attorneys.

2/11/2021
- 1.2 hours – Observe Committee hearing.

2/22/2021
- 1.5 hours – Observe Committee hearing.

2/23/2021

- 3.5 hours – Observe Committee hearing.

2/24/2021
- 1.0 hours – Receive and review final Committee report.

**TOTAL for S. Travis Mayo:        43.6 hours**

**Marc G. Farris**

1/15/2021
- 2.4 hours – Legal research for petition response.

1/16/2021
- 1.2 hours – Review petition; legal research for petition response.

1/17/2021
- 3.5 hours - Legal and fact research for petition response.

1/18/2021
- 5.2 hours - Legal research; draft, edit, revise section; review and revise response to Petition.

1/21/2021
- 1.2 hours – revise and edit draft response.

2/5/2021
- 1.8 hours – draft and revise letter to Committee concerning production of records; discussion and email correspondence with co-counsel regarding records requested by Committee.

**TOTAL for Marc G. Farris:        15.3 hours**

**Taylor A. Payne**

2/15/2021
- 1.5 hours – Legal research for petition response.

2/18/2021
- 2.0 hours – legal research for petition response.
- 3.5 hours – drafting response to petition.

2/20/2021
- 1.6 hours – Revise and edit draft response to petition.

2/21/2021
-   3.0 hours – Draft, revise and edit draft response to petition.

2/22/2021
-   2.7 hours – Revise and edit draft response; prepare exhibits.

2/1/2021
-   0.4 hours – Edit response requested by Committee.

2/5/2021
-   1.0 hours – Revise second response to Committee; discuss response with co-counsel.

**TOTAL for Taylor A. Payne:        15.7 hours**


**<u>Shawn Chapman</u>**

1/15/2021
-   2.5 hours – Research re impeachment petition.

1/16/2021
-   6.7 hours – Continued research re impeachment petition; drafted legal memorandum summarizing findings of research.

**TOTAL for Shawn Chapman:        9.2 hours**


**<u>Benjamin Long</u>**

1/19/2021
-   2.5 hours – Discussed legal research assignment with colleagues; performed legal research re impeachment petition.

**TOTAL for Benjamin Long:        2.5 hours**


**<u>T. Chad Thompson</u>**

1/19/2021
-   0.3 hours – Discuss research assignment with colleagues.
-   2.5 hours - Perform legal research on impeachment petition.

**TOTAL for T. Chad Thompson:    2.8 hours**

**<u>Jacob Walbourn</u>**

1/19/2021
- 0.7 hours – Assist with coordination of legal research as assigned; review case law.

**TOTAL for Jacob Walbourn:      0.7 hours**


**<u>Shawna Kincer</u>**

1/17/2021
- 3.0 hours – Perform legal research and draft legal memorandum.

**TOTAL for Shawna Kincer:      3.0 hours**


**<u>Jessica Williamson</u>**

1/17/2021
- 8.5 hours – Perform legal research and draft legal memorandum.

1/19/2021
- 0.2 hours – Review section for the draft response to the petition; provide feedback on the section for the draft response for the petition.

**TOTAL for Jessica Williamson:    8.7 hours**

**chris@cwiestlaw.com**

| | |
|---|---|
| **From:** | chris@cwiestlaw.com |
| **Sent:** | Friday, March 12, 2021 11:44 AM |
| **To:** | 'Cubbage, Amy (Gov Office)'; 'Mayo, Travis (Gov Office)' |
| **Subject:** | RE: Impeachment Cost Bill |

Thank you.

Should you choose to disclaim enforcement, please let me know.  Otherwise I will assume that it is under consideration and/or impending and forthcoming.

---

**From:** Cubbage, Amy (Gov Office) <amy.cubbage@ky.gov>
**Sent:** Friday, March 12, 2021 11:16 AM
**To:** chris@cwiestlaw.com; Mayo, Travis (Gov Office) <Travis.Mayo@ky.gov>
**Subject:** RE: Impeachment Cost Bill

Dear Chris,

Thank you for letting us know you are now representing the petitioners.  With regard to the costs, we submitted our costs at the direct instruction of the Impeachment Committee.  The Committee's public statements and written order indicated submission was mandatory and was not optional.  At this time we are awaiting the decision of the Impeachment Committee regarding any final order assessing costs pursuant to KRS 63.070, and will make any decisions regarding that order once it is received.

Thanks.

Amy D. Cubbage
General Counsel
Office of the Governor
700 Capital Avenue, Suite 105
Frankfort, KY 40601
Phone: (502) 564-2611
Fax:  (502) 564-6858
Email: amy.cubbage@ky.gov



CONFIDENTIALITY NOTICE
This e-mail message, together with any attachments, is intended only for the personal and confidential and exclusive use of the intended recipient(s) named above. This message may be an attorney-client communication or work product, and as such is privileged and confidential. If you are not the intended recipient(s), you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited and may be unlawful. If you have received this message in error, please return it to the sender, notify the sender immediately by telephone (502) 564-2611 or by return e-mail, and delete or destroy this message, along with any

1                                                    EXHIBIT 2

attachments, from your computer.  It should be understood that the Office of the Governor cannot guarantee the security of the transmission and assumes no responsibility for intentional or accidental receipt by a third party.

---

**From:** chris@cwiestlaw.com <chris@cwiestlaw.com>
**Sent:** Thursday, March 11, 2021 7:54 AM
**To:** Cubbage, Amy (Gov Office) <amy.cubbage@ky.gov>; Mayo, Travis (Gov Office) <Travis.Mayo@ky.gov>
**Subject:** Impeachment Cost Bill

Ms. Cubbage and Mr. Mayo:

I have been asked to represent the impeachment petitioners in relation to defense of any actions to enforce any "cost bill" imposed by the Governor/legislature.

Can you confirm that it is the Governor's intention to execute/enforce same?

Thank you,


Christopher Wiest
Chris Wiest, Attorney at Law, PLLC
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
513-257-1895 (v)

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Andrew Cooperrider, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.


Executed on 3-14-2021.



Andrew Cooperrider

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Tony Wheatley, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on 3-14-2021.

_____
Tony Wheatley

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Jacob  Clark, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on 3-14-2021.


Jacob Clark

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, _Kevin M. Glogower_ declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on 3-15-2021.

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Carol VanWinkle declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on 3-15-2021.

Carol VanWinkle

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Mike VanWinkle declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.


Executed on 3-15-2021.


Mike VanWinkle