**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY (at Frankfort)**
*Electronically Filed*

| | | |
|---|---|---|
| **ANDREW COOPERRIDER, et. al.** | : | Case No. |
| Plaintiffs | : | |
| v. | : | |
| **ANDREW BESHEAR**, *in his official capacity, et. al.* | : | |
| | : | |
| Defendants | | |

**PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION**

Plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark move for an Emergency Motion for Temporary Restraining Order[1] and Preliminary Injunction. A memorandum in support is attached hereto and incorporated by reference. Proposed Orders are attached.

                                                  Respectfully submitted,

                                                  /s/ Christopher Wiest
                                                  Christopher Wiest (KBA 90725)
                                                  Chris Wiest, Atty at Law, PLLC
                                                  25 Town Center Blvd, Suite 104
                                                  Crestview Hills, KY 41017
                                                  859/486-6850 (v)
                                                  513/257-1895 (c)
                                                  859/495-0803 (f)
                                                  chris@cwiestlaw.com

                                                  /s/Thomas Bruns
                                                  Thomas Bruns (KBA 84985)
                                                  4750 Ashwood Drive, STE 200
                                                  Cincinnati, OH 45241
                                                  tbruns@bcvalaw.com
                                                  513-312-9890

---

[1] Plaintiffs seek a restraining order prohibiting the House Clerk from taxing costs and fees during the pendency of this matter.

/s/Zach Gottesman  
Zach Gottesman (86288)  
404 East 12 St., First Floor  
Cincinnati, OH 45202  
zg@zgottesmanlaw.com  
*Counsel for the Beshear Petitioners*

**CERTIFICATE OF SERVICE**

I certify that I have served the foregoing via the Court's CM/ECF system, which will provide notice to all counsel or parties of record; I will also serve this motion on the opposing parties with the service of the Complaint and summons in this matter, this 15 day of March, 2021.

/s/ Christopher Wiest

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY (at Frankfort)**
*Electronically Filed*

| | | |
|---|---|---|
| **ANDREW COOPERRIDER, et. al.** | : | Case No. |
|     Plaintiffs | : | |
| v. | : | |
| **ANDREW BESHEAR**, *in his official capacity,* et. al. | : | |
| | : | |
|     Defendants | | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPOARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION**

Plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark, submit this Memorandum in Support of their Emergency Motion for Temporary Restraining Order[1] and Preliminary Injunction.

**Introduction**

The right to petition the legislature for redress of grievances is rooted in pre-colonial times, tracing back to the Magna Carta.  The right to petition under American law stems from these rights, and the English Bill of Rights 1689, and the Petition of Right (1628).  In colonial America, state legislatures had both a judicial, equitable, and legislative role.  In Blackstone's *Commentaries*, Americans in the Thirteen Colonies read that "the right of petitioning the king, or either house of parliament, for the redress of grievances" was a "right appertaining to every individual."  The Declaration of Independence had, as one of its grievances, "In every stage of these Oppressions We have Petitioned for Redress in the most humble terms: Our repeated

---

[1] Plaintiffs seek a restraining order prohibiting the House Clerk from taxing costs and fees under the challenged statute, during the pendency of this matter.  That request is designed to ensure that this matter is litigated in one forum, versus potentially dozens, and is designed to preserve judicial economy.

1

Petitions have been answered only by repeated injury. A Prince, whose character is thus marked by every act which may define a Tyrant, is unfit to be the ruler of a free people."[2]

The first significant exercise and defense of the right to petition within the United States was to advocate the end of slavery by petitioning Congress in the mid-1830s, including 130,000 such requests in 1837 and 1838. In 1836, the House of Representatives adopted a gag rule that would table all such anti-slavery petitions. John Quincy Adams and other Representatives eventually achieved the repeal of this rule in 1844 on the basis that it was contrary to the right to petition the government.

This case deals with the First Amendment, and its guaranties of the right to petition, to free speech, to association, and Fourteenth Amendment guaranties, and their application to a statute, which has been construed to impose serious liabilities in a content-based manner upon petitioners to Kentucky's General Assembly, who communicate a petition asking for the impeachment of civil officers, while leaving untouched all other petitions, under KRS 63.070.

It should be noted that there are three groups of Plaintiffs in this matter, constituting registered Republicans and Democrats. They could not disagree with each other more about the substance of what each group sought through their petitions, and yet they collectively agree on the importance of the rights at issue in this case. The rights at issue are non-partisan, ancient, and fundamental.

---

[2] A history and explanation of this right and its history is contained in the article: *A Short History of the Right To Petition Government for the Redress of Grievances*, Stephen Higginson, 96 Yale Law Journal 142 (1986).

I.    FACTS

Plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark are all citizens and residents of the Commonwealth of Kentucky, residing in Fayette, Mercer, and Grayson Counties, respectively. (Pl's Verified Compl., ¶ 5).

Defendant Hon. Andrew Beshear is the duly elected Governor of Kentucky. He is sued in his official capacity. (Pl's Verified Compl., ¶ 8). As is related to this matter, Governor Beshear as an accused to an impeachment petition, under KRS 63.070, is entitled to, has threatened, and continues to threaten, the enforcement of the provisions of that statute. *Id.*

Defendant Melissa Bybee-Fields is the duly appointed Clerk of the Kentucky House of Representatives. (Pl's Verified Compl., ¶ 9). She is sued in her official capacity. *Id.* As is related to this matter, Clerk Bybee-Fields is sued because it is her ministerial duty to tax as costs, the costs called for in KRS 63.070.[3] *Id.*

On or about January 8, 2021, Plaintiffs Andrew Cooperrider, Tony Wheatley, Jacob Clark (collectively the "Beshear Petitioners"), and a fourth individual submitted a petition with the Kentucky House of Representatives requesting redress of injuries and the remedy of the impeachment of Governor Andrew Beshear, for, among other things, repeated federal constitutional violations by the Governor as determined by this and other federal courts, in *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Roberts v. Neace*, 457 F. Supp. 3d 595 (EDKY 2020); *Ramsek v. Beshear*, 468 F. Supp. 3d 904 (EDKY 2020). (Pl's Verified Compl., ¶ 12). It was supported by dozens of other Kentucky residents as affiants, and approximately another 100,000 Kentucky residents submitted supporting petitions. *Id.*

---

[3] The House Clerk is not entitled to legislative immunity for the claims and actions complained of. *Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015); *Powell v. McCormack*, 395 U.S. 486, 506, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).

3

On or about January 13, 2021, Plaintiffs Michael and Caron VanWinkle (collectively the "Goforth Petitioners") submitted a petition with the Kentucky House of Representatives requesting redress of injuries and the remedy of the impeachment of State Representative Robert Goforth, for, among other things, his pending felony charges related to the strangulation with an ethernet cord, and other domestic violence directed towards his wife. (Pl's Verified Compl., ¶ 13). This petition was supported by approximately a dozen other Kentucky residents. *Id.*

On or about January 22, 2021, Plaintiffs John Does 1-3, through their Counsel, Plaintiff Kevin Glogower, Esq., (collectively the "Cameron Petitioners"), with another affiant, and Jennifer Smith, submitted a petition with the Kentucky House of Representatives requesting redress of injuries and the remedy of the impeachment of Attorney General Daniel Cameron, for, among other things, grievances related to his handling of the investigation and presentation of evidence before the Jefferson County Grand Jury related to the death of Breonna Taylor. (Pl's Verified Compl., ¶ 14).

On February 23, 2021, all three petitions were dismissed. (Pl's Verified Compl., ¶ 15). All of those dismissals indicated an intention to tax the "costs of investigation" to the Petitioners in all three petitions, which included attorney and expert fees. *Id.*
Of particular note, and as respects the Beshear Petitioners, the dismissal order did not find that the grounds for the petition were baseless, frivolous, and no finding was made that the petition was brought in bad faith; rather, the committee found that the Governor's repeated violations of the United States Constitution did not rise to an impeachable offence. *Id.*

On March 3, 2021, Governor Beshear submitted a cost bill application to the Impeachment Committee, seeking, among other things, that "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to order the remaining

4

Petitioners to reimburse the Commonwealth for these expenses." (Pl's Verified Compl., ¶ 16). See Exhibit 1. In total, the Governor sought $17,730.85 in fees and costs from these petitioners.

17. *Id.* In the same vein, the Kentucky Attorney General, perhaps recognizing the significant First Amendment issues associated with taxing costs against people for the exercise of First Amendment rights, expressly declined to seek cost reimbursement. *Id.*

On March 11, 2021, the undersigned counsel for the Beshear Petitioners sent communication to the Governor, requesting his position on whether or not the Governor would seek enforcement of the full amount of the fees and costs against the petitioners. (Pl's Verified Compl., ¶ 18). There were back and forth communications related to same, which is contained at Exhibit 2. The bottom line is this: the Governor has submitted a pleading seeking costs to be reimbursed and has refused to disclaim any intention to seek same.

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $42,444.05 to the Beshear Petitioners. (Pl's Verified Compl., ¶ 19). The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicating they will not entertain arguments about the constitutionality of such fees.

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Cameron Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $7,597.36 to the Cameron Petitioners. (Pl's Verified Compl., ¶ 20). The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicating they will not entertain arguments about the constitutionality of such fees. *Id.*

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Goforth Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $12,457.36 to the Goforth Petitioners. (Pl's Verified Compl., ¶ 21). The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicating they will not entertain arguments about the constitutionality of such fees. *Id.*

Plaintiffs have therefore exhausted their remedies. (Pl's Verified Compl., ¶ 22).

As of the date and time that this matter has been filed, there has been no filing in state court to seek to enforce any cost of investigation, and, further, no final costs of investigation under K.R.S. 63.070 have been determined or assessed. (Pl's Verified Compl., ¶ 23).

Plaintiffs seek injunctive and declaratory relief that K.R.S. 63.070 is unconstitutional, facially and as-applied to them. (Pl's Verified Compl., ¶ 24).

<u>The Challenged Statute</u>

KRS 63.070(1) provides: "In a proceeding for impeachment … if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee." (Pl's Verified Compl., ¶ 25). The statute does not outline what "reports against the petition" by a committee is. (Pl's Verified Compl., ¶ 26). In the present application, a report against the petition is being held to include the dismissal of the petition, in 3 cases, but not in another 100+ cases filed contemporaneously.

That language makes it impossible for a petitioner to determine in advance whether costs of the committee may be imposed against the petitioner. (Pl's Verified Compl., ¶ 27).

6

KRS 63.070(3) provides: "Costs taxed pursuant to this section may be recovered on motion, after five (5) days' notice, in a Circuit Court." (Pl's Verified Compl., ¶ 28). What such "costs" may include is not outlined in statute or case law. In the present case, "costs" are being held to include the legislature's own costs for multiple outside counsel hired by the committee for its own use, "expert" witnesses who were not available for review or cross-examination by the petitioners, and even staff and Kentucky State Police time spent with the committee. (Pl's Verified Compl., ¶ 29). No other legislative committee formed for any other purpose may charge its own attorney, expert, or staff costs to a citizen or petitioner who brings concerns before it. (Pl's Verified Compl., ¶ 30).

These provisions do not require any finding that the submitted petition is: (1) frivolous; (2) submitted in bad faith; (3) unreasonable; or (4) meant to harass prior to imposition of fees. Instead, the provisions provides that substantial and steep penalties be imposed on all petitioners unless the full House and Senate actually successfully impeach the person named in the petition. (Pl's Verified Compl., ¶ 31). This serves to child the exercise of a core freedom. *Id.*

These provisions are not the only mechanisms under Kentucky law, under which Kentucky's legislative branch receives reports of potential misconduct. (Pl's Verified Compl., ¶ 32). For instance, KRS 6.686 provides the means to submit reports of violations of legislative ethics but has ability to award costs only if the petition is filed in clear bad faith and the allegations therein are knowingly false. *Id.* Even under those circumstances, the costs awarded do not include the costs of the Legislative Ethics Committee for its counsel or investigators or experts. *Id.*

Kentucky's General Assembly and its members regularly receives reports and petitions by citizens on a range of topics, including whether to pass or not pass legislation on an entire

7

host of topics and issues. (Pl's Verified Compl., ¶ 33). These non-impeachment citizen petitions can, and do, generate significant legislative and other governmental resources and expenses for investigation and resolution. (Pl's Verified Compl., ¶ 34).

The only petition to the legislature that even arguably permit imposition of any costs or fees is an impeachment petition. (Pl's Verified Compl., ¶ 35). Even worse, the statute is viewpoint based: citizen petitions that request impeachment are subjected to liabilities, while citizen petitions that oppose impeachment are not. (Pl's Verified Compl., ¶ 36).

No distinction is drawn between the contents of a petition which requests impeachment as one of many proposed legislative actions that can be taken versus one focused on only on impeachment. (Pl's Verified Compl., ¶ 38). A petition may contain dozens of requests for relief, but still be exposed to onerous and chilling fees and costs assessment if "impeachment" is also referenced. *Id.* One must look at, and assess, both the contents and viewpoint of a petition to determine whether it seeks impeachment, versus the entire list of topics that do not incur the penalty. *Id.*

The law does not clearly define what the "costs" to be assessed might be, and interpretation may differ, which exposes petitioners to improper risk of penalties. (Pl's Verified Compl., ¶ 39). The law prices citizens with valid concern out of the market, rendering impeachment petitions a process that only wealthy citizens can afford to take part in. (Pl's Verified Compl., ¶ 40). This clear disparate impact renders the law unconstitutional. *Id.* The law, as written, permits the legislature to enrich itself at the expense of citizens. (Pl's Verified Compl., ¶ 41). The law has a clear chilling effect on those who wish to bring concerns to the legislature and to hold their elected officials accountable. (Pl's Verified Compl., ¶ 42).

## II. LAW AND ARGUMENT

### A. Standard of Review

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) Whether the movant has demonstrated a strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public interest would be served by issuance. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998); *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

Clear Sixth Circuit law establishes that the remaining factors are met where constitutional rights are infringed upon, and so, in these cases, the likelihood of success factor is dispositive. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights); *Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others, even where registry incurred printing costs, where constitutional rights at stake); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

### B. Plaintiffs have demonstrated a likelihood of success on the merits

The First Amendment of the United States Constitution states, in relevant part, "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances."

The Fourteenth Amendment of the United States Constitution states, in relevant part, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The First Amendment guaranties of Free Speech and the Right to Petition have been incorporated against the states under the Fourteenth Amendment in *Gitlow v. New York*, 268 U.S. 652 (1925) and *DeJonge v. Oregon*, 299 U.S. 353 (1937). It includes a right to association as expressed in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).

<u>The Petition Clause is Violated</u>

Under the First Amendment's Petition Clause, the Supreme Court has developed the *Noerr-Pennington* doctrine, which provides **absolute immunity** is conferred as against any liability related to petitioning activities directed at the legislature, such as those by these petitioners, and it applies here as well. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The ultimate effect of the *Noerr-Pennington* doctrine when applied in this broader sense is that "if a party's actions are protected by the First Amendment, then that party is immune to suit." *Wilder v. Hall*, 501 F.Supp.2d 887, 895 (E.D. Ky. 2007); *see also Harris v. Adkins*, 189 W. Va. 465, 432 S.E.2d 549, 551 (W.Va. 1993) (citation omitted) ("The clear import of the *Noerr-Pennington* doctrine is to

10

immunize from legal action persons who attempt to induce the passage or enforcement of law or to solicit governmental action even though the result of such activities may indirectly cause injury to others.").

The statute here, rather than providing for immunity from suit for petitioning activity, expressly provides for substantial liabilities for petitioning. This violates the First Amendment.

As the Supreme Court observed in *Thomas v. Collins*, 323 U.S. 516, 543 (1943):

> There is some modicum of freedom of thought, speech and assembly which all citizens of the Republic may exercise throughout its length and breadth, which no State, nor all together, nor the Nation itself, can prohibit, restrain or impede. If the restraint were smaller than it is, it is from petty tyrannies that large ones take root and grow. This fact can be no more plain than when they are imposed on the most basic rights of all. Seedlings planted in that soil grow great and, growing, break down the foundations of liberty.

"Petitions are a form of expression, and [persons] who invoke the Petition Clause in most cases could invoke as well the Speech Clause of the First Amendment." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011). The right to petition cannot be circumscribed unless the particular petition is found to lack "a reasonable basis in fact or law." *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 748 (1983). There is no such requirement under K.R.S. 63.070. And there has been no such finding related to the Beshear Petitioners' petition.

The Free Speech Clause and Right to Association is Violated

KRS 63.070 is a content-based regulation: it depends, on its application, solely on the content of the petition submitted to the legislature, and one must look at that content to determine whether the statute applies. Because the application of the statute is "drawn based on the message a speaker conveys," it is therefore "subject to strict scrutiny." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015). Said another way, the applicability of the statute "depend[s] entirely on the communicative content" of the petition. *Id.*

11

Even worse, the restriction is actually viewpoint discrimination. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828-829 (1995). Those who submit petitions in favor of impeachment are penalized; those who submit petitions opposing impeachment are not. Here, "the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.*

In *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), the Supreme Court was clear that if a fee or cost is charged to exercise a First Amendment right and is based on the content of the speech, it violates the First Amendment. *Forsyth County* also stands for the proposition that there must be "some limit on the amount the government could charge, based on the potential for a fee to deter protected speech." *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485 (6th Cir. 2008).

Indeed, where a privilege is freely granted by the constitution, it cannot be the subject of a fee or tax. *Murdock v. Pennsylvania*, 319 U.S. 105, 114 (1943). The amounts taxed against these petitioners is far from "nominal," which under *Murdock* renders it unconstitutional on its face. *Id.*

Viewpoint discrimination is presumptively unconstitutional. *Rosenberger*, 515 U. S. 819, 829-830 (1995); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (striking down viewpoint-based law, without undertaking scrutiny or tailoring analysis).

And, finally, the restriction at issue, being content-based, and viewpoint-based, also is a content-based and viewpoint-based infringement upon the right to association. *NAACP v. Button*, 371 U.S. 415 (1963).

Equal Protection is Violated

Turning, finally, to equal protection, the Fourteenth Amendment prohibits states from "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Because there are valid First Amendment claims, strict scrutiny applies. *Zillow, Inc. v. Bork*, 462 F. Supp. 3d 699, 706 (EDKY 2020).

Strict Scrutiny is not met

KRS 63.070, and its application here, fails to meet strict scrutiny: to the extent that the state interest behind it is a desire to recover costs of frivolous petitions on those advancing them, or even causing reimbursement for those petitions that lack a reasonable basis in fact or law, it is not limited to any such finding that a petition is frivolous or that it lacks a reasonable basis in fact or law. If a petition is not advanced because it is deemed not politically expedient to do so, the petition will fail, even if well grounded.

Impeachment is fundamentally a political decision, and there are a host of reasons why impeachment may or may not move forward, wholly untied to the merits and basis or substance of the petition.

This inherently is not sufficient to meet the narrow tailoring requirement.

### III.    CONCLUSION

Plaintiffs have demonstrated that the requested Emergency Temporary Restraining Order and Preliminary Injunction should be granted.

        Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas Bruns
Thomas Bruns (KBA 84985)
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

/s/Zach Gottesman
Zach Gottesman (86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Counsel for the Beshear Petitioners*

**CERTIFICATE OF SERVICE**

I certify that I have served the foregoing via the Court's CM/ECF system, which will provide notice to all counsel or parties of record; I will also serve this motion on the opposing parties with the service of the Complaint and summons in this matter, this 15 day of March, 2021.

        /s/ Christopher Wiest