UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANDREW COOPERRIDER, *et al.*, | ) | |
| Plaintiffs | ) ) ) | Civil No. 3:21-cv-00012-GFVT |
| V. | ) ) ) | **MEMORANDUM OPINION** |
| ANDREW BESHEAR, in his official capacity, *et al.*, | ) ) ) | **&** **ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiffs' Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction. [R. 3.] Because Plaintiffs have failed to satisfy the requirements of Federal Rule of Civil Procedure 65, their request for a Temporary Restraining Order is **DENIED.** However, the Court will continue analysis of Plaintiffs' Motion for Preliminary Injunction until after a scheduling conference has been held and additional briefing has been filed.

**I**

In January 2021, three separate groups of citizens filed petitions in the Kentucky House of Representatives seeking redress of alleged injuries and the impeachment of Governor Andrew Beshear, State Representative Robert Goforth, and Attorney General Daniel Cameron.[1] *Id.* at 5-6. In February 2021, upon review by the House Impeachment Committee, all three petitions were dismissed and the "dismissals indicated an intention to tax the 'costs of investigation' to the

---

[1] Each group sought the impeachment of one government official independently of the other groups. No group was involved in more than one petition for impeachment.

Petitioners […], which included attorney and expert fees."[2] *Id.* at 4.  On March 3, 2021, Governor Beshear "submitted a cost bill application to the Impeachment Committee," which stated that "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to other the remaining Petitioners to reimburse the Commonwealth for these expenses." *Id.*  Governor Beshear sought, in total, $17,730.85 in fees and costs from the petitioners who sought his impeachment.  *Id.*  Attorney General Daniel Cameron, however, "expressly declined to seek cost reimbursement." *Id.*

On March 12, "the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $42,444.05 to the Beshear Petitioners." [R. 3 at 5.]  Further, "[t]he Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicat[ed] they will not entertain arguments about the constitutionality of such fees." *Id.*  Similarly, the Cameron Petitioners were sent a letter indicating that they owe $7,597.36 in costs; the Goforth Petitioners were sent a letter indicating that they owe $12,457.36 in costs.  *Id.*

Plaintiffs now challenge KRS 63.070, which permits the collection of fees from unsuccessful impeachment petitioners and request a TRO and preliminary injunction preventing its enforcement.  [R. 3 at 6.]  KRS 63.070(1) provides as follows:

> In a proceeding for impeachment … if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee.

---

[2] Plaintiffs further state that, in regard to the Beshear Petitioners, "the dismissal order did not find that the grounds for the petition were baseless, frivolous, and no finding was made that the petition was brought in bad faith; rather, the committee found that the Governor's repeated violations of the United States Constitution did not rise to an impeachable offense." [R. 3 at 4.]

2

KRS § 63.070(1).  The statute does not define "reports against the petition."  Plaintiffs allege that "100+" other cases, filed contemporaneously with the three impeachment proceedings, were not deemed "reports against the petition," but that these three dismissals were deemed as such.  [R. 3 at 6.]  The statute also fails to define "costs of investigation" and Plaintiffs state that the definition is "not outlined in statute or case law."  *Id.* at 7.  Nonetheless, the House has deemed "costs" to include "the legislature's own costs for multiple outside counsel hired by the committee for its own use, 'expert' witnesses who were not available for review or cross-examination by the petitioners, and even staff and Kentucky State Police time spent with the committee."  [R. 3 at 9.]

Moreover, KRS 63.070 provides a means to collect the costs. KRS 63.070(c) states "[c]osts taxed pursuant to this section may be recovered on motion, after five (5) days' notice, in a Circuit Court."  *Id.* at 7.  Plaintiffs argue that the required payment of costs by those who petition the government for impeachment is unconstitutional and request a temporary restraining order ("TRO") to enjoin Defendants from enforcing KRS 63.070.

II

Rule 65 allows the Court to issue a TRO without notice to the other party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).  In determining whether to issue a TRO, the Court examines: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4)

whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (citations omitted).

"[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]" *Stein v. Thomas*, 672 Fed. App'x 565, 572 (6th Cir. 2016). This is because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974)).

At issue in this matter is whether Kentucky citizens who petition for a government official's impeachment can be required to pay statutorily undefined "costs" to the House for conducting impeachment proceedings. In this matter, Plaintiffs are charged with over $60,000 in "costs" associated with the impeachment proceedings their petitions triggered. Because Plaintiffs were notified by letter of the charges against them on March 12, these costs can be enforced as early as tomorrow under KRS 63.070 by the filing of an action in Circuit Court. Plaintiffs' allege that the charging of costs to those who petition violates the Petition Clause, the Free Speech Clause, the Right to Freedom of Association, Equal Protection, and fails to satisfy strict scrutiny." [R. 1.] Although these allegations indicate the potential appropriateness of a TRO, a TRO cannot be issued because counsel has not "certifie[d] in writing any efforts made to give notice and why notice should not be required" as Rule 65 mandates. Though counsel provides a certificate of service which describes the efforts made to execute service, the certificate does not explain why the Court should move forward with granting a TRO without notice being provided to the Defendants. Additionally, a review of the CM/ECF system reveals that counsel for Governor Beshear have already entered an appearance in this case; this indicates

that notice has been provided in some manner, although proper execution of service has not been completed. Because notice has already been provided to the Defendants and the requirements of Rule 65 are not satisfied, the Court **DENIES** Plaintiffs' request for a TRO. However, the Court will continue its analysis of Plaintiffs' Motion for Preliminary Injunction [R. 3] until a scheduling conference has been held and additional briefing has been provided.

### III

Accordingly, and the Court being sufficiently advised otherwise, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion for Temporary Restraining Order [R. 3] is **DENIED**; and

2. A scheduling conference regarding Plaintiffs' Motion for Preliminary Injunction [R. 3] shall be held on **Wednesday, March 24, 2021** at **1:00 p.m**. in the United States District Courthouse in **Lexington**, Kentucky with Judge Gregory F. Van Tatenhove presiding.

This the 16th day of March, 2021.

Gregory F. Van Tatenhove
United States District Judge