UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

*Electronically Filed*

| | |
|---|---|
| **ANDREW COOPERRIDER,** *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 3:21-cv-00012-GFVT ) |
| **ANDY BESHEAR**, in his official capacity as Governor of the Commonwealth of Kentucky, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

### THE GOVERNOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Governor Andy Beshear, by and through counsel, hereby responds in opposition to Plaintiffs' Motion for a Preliminary Injunction.

### Background

On January 8, 2021, Plaintiffs Andrew Cooperrider, Tony Wheatley, Jacob Clark, and another nonparty individual (collectively the "Beshear Petitioners") availed themselves of Kentucky Revised Statute (KRS) 63.030, which allows any person to petition the House of Representatives for the impeachment of any public officer. (Doc. 1, Page ID#: 4.) The Beshear Petitioners petitioned for the impeachment of Defendant Governor Andy Beshear. (*Id*. at 4-5.)

KRS 63.020-.075 govern impeachment proceedings in the House of Representatives and potential prosecution in the Senate. Other than responding to this Petition seeking his impeachment, the Governor plays no role in the administration or execution of KRS 63.020-.075. It is purely a function of government occurring within the legislative branch.

Pursuant to KRS 63.030(2), the House referred the Petition to a special committee: the 2021 RS Impeachment Committee. The House also referred to the special committee petitions for the impeachment of Attorney General Daniel Cameron and Representative Robert Goforth. Throughout January, February and March, the Committee met nine times. During that time, the Committee asked the Governor to respond to allegations in the Petition on three different occasions. Doing so in the first instance, on January 14, 2021, the Committee stated that "As required by KRS 63.070, costs shall be assessed to the petitioner if the committee does not recommend moving forward with impeachment proceedings to the House of Representatives."

The Governor, through counsel, responded as requested. On February 23, 2021, the Committee recommended that the House of Representatives take no further action on the Petition and requested the Governor to submit his bill of costs, including attorney's fees. The Governor did so, submitting a bill of costs totaling $17,730.85 for the time expended by his staff to comply with the Committee's requests. The Committee excluded 9.4 hours of attorney time and reduced these costs to $16,613.19, and on March 12, 2021, by letter, the Committee informed the Beshear Petitioners of the costs.

Plaintiffs Cooperrider, Wheatley and Clark, along with individuals petitioning for the impeachment of Attorney General Cameron and Representative Goforth, initiated this action on March 15, 2020. (Doc. 1.) They allege KRS 63.070, which requires the Clerk of the House of Representatives to tax the costs to witnesses and to the accused for the investigation, violates the First and Fourteenth Amendments. (*Id.* at 10.)

Plaintiffs also seek temporary relief from any action by the Clerk under KRS 63.070. (Doc. 3). This Court denied their request for a temporary restraining order.

Following initiation of this action, Plaintiffs submitted objections to the Committee on the bill of costs. On March 30, 2021, the Committee rejected the objections and directed the Clerk to assess costs to Petitioners. The Committee submitted a final report to the House.

The Governor now responds to Plaintiffs' request for a preliminary injunction.

## Legal Standard

Preliminary injunctive relief "is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). To issue a preliminary injunction, the Court must consider:

> (1) whether the movant has shown a strong likelihood of success on the merits;
> (2) whether the movant will suffer irreparable harm if the injunction is not issued;
> (3) whether the issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by issuing the injunction.

*Id.* (citations omitted). Here, Plaintiffs cannot carry their burden to obtain this relief.

## Argument

This Court should deny preliminary relief to Plaintiffs. Plaintiffs fail to demonstrate a strong likelihood of success on the merits, fail to allege the suffering of an irreparable harm absent the preliminary relief, and the equities favor maintaining the status quo and allowing the proceedings under state law to continue.

### I. Plaintiffs Fail To Show A Strong Likelihood Of Success Because This Court Lacks Jurisdiction, Or In The Alternative, Should Abstain.

Plaintiffs' request for preliminary relief here is unique, but fails. They do not allege they were unable to petition the House of Representatives. They do not allege their speech was chilled

3

or they were prevented from associating. Instead, they allege they did avail themselves of all the benefits provided under KRS 63.020-.075, which, as interpreted by the House of Representatives, required the House to establish a special committee to take action on their Petition. The Committee fully considered the Petition. Plaintiffs now claim, that after availing themselves of all the benefits of KRS 63.020-.075, to assess the statutorily mandated costs after the process violates the First and Fourteenth Amendments.

For multiple reasons stated below, Plaintiffs do not have a strong likelihood of success on these claims and cannot prevail on these claims as to the Governor, who plays no role in the administration or execution of KRS 63.070.

**A. The Governor is Immune.**

The Eleventh Amendment provides Kentucky with sovereign immunity. U.S. Const. amend. XI. The sovereign immunity guaranteed by the Eleventh Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100 (1984). A suit against a state official in his official capacity is a suit against the state. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).

An exception to this general rule was announced in *Ex parte Young,* 209 U.S. 123 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst,* 465 U.S. at 102. The *Ex parte Young* exception exists to provide prospective relief to end a continuing violation of federal law. *Diaz v. Mich. Dep't of Corr.,* 703 F.3d 956, 964 (6th Cir. 2013). But that means that it "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters,* 92 F.3d 1412, 1415 (6th Cir. 1996). In other words, *Ex*

4

*parte Young* does not reach state officials who "[are] not expressly directed to see to its enforcement." *Id.* at 157.

Here, because the Governor does not execute or administer KRS 63.070 – or any of the impeachment statutes – *Ex parte Young* does not except the general rule of sovereign immunity. Indeed, the General Assembly, through the Legislative Research Commission and its members – administers the statutes, and KRS 63.070 expressly denotes the House Clerk as the executor of its provisions. The Governor, though the supreme executive, is still entitled to the state's immunity despite this role. *See Children's Healthcare,* 92 F.3d at 1416 ("Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held."). The only reason the Governor is named as a Defendant here is because he submitted his costs to the Committee as requested. Such an action is neither enforcing KRS 63.070 nor threatening to enforce KRS 63.070. As a result, the Governor retains his sovereign immunity. Because the Governor is immune, this Court lacks subject-matter jurisdiction to address Plaintiffs' claims against him.

### B. This Court Lacks Jurisdiction Over Plaintiffs' Unripe Claims.

Ripeness is a justifiability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580 (1985) (internal quotation omitted). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 294 (6th Cir. 1997). Courts weigh three factors when deciding whether to address the issues presented for review: 1) "the likelihood that the harm alleged by the plaintiffs will ever come to pass"; 2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims"; and 3)

5

"the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Adult Video Ass'n v. United States Dep't of Justice,* 71 F.3d 563, 568 (6th Cir. 1995) (internal quotation and brackets omitted).

Through this action, Plaintiffs seek to prevent the collection of a bill taxed to them by the House Clerk to recoup public money spent investigating their Petition for Impeachment. At the time of initiating this action, Plaintiffs had not been billed and had not filed objections, as provided for under KRS 63.070. As of this filing, to the best knowledge of undersigned counsel, the House Clerk has made no efforts to collect the costs. On March 30, 2021, the Committee formally rejected objections submitted by the Plaintiffs and submitted a final report to the House.

Because the House Clerk has not yet sought to collect the costs, Plaintiffs' claims are not yet ripe. Plaintiffs will not be prejudiced by this Court's refusal to hear their unripe claims. KRS 63.070 specifically provides that the costs taxed under it "may be recovered on motion, after five (5) days' notice, in a Circuit Court." KRS 63.070(3). All of Plaintiffs' objections, including the claims asserted here, can and should be addressed by the Circuit Court should that need arise. At this point, Plaintiffs seek relief from an injury yet to occur, that may not occur, and may be limited or prevented by a state court. As a result, at this time, Plaintiffs fail to invoke the Court's jurisdiction to hear their claims.

### C. Alternatively, This Court Should Abstain From Resolving Claims Involving Ongoing State Proceedings.

Plaintiffs request this Court to intervene in state proceedings that have yet to conclude and could conclude in Plaintiffs' favor so as to render this action moot. In this context, several abstention doctrines instruct this Court to abstain from deciding Plaintiff's claims.

### 1. *Pullman* Abstention applies

The *Pullman* abstention doctrine instructs courts to abstain from constitutional issues that a state court determination of state law may moot. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Courts ask "whether the state statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question . . . ." *Jones v. Coleman*, 848 F.3d 744, 752 (6th Cir. 2017) (quoting *Harman v. Forssenius*, 380 U.S. 528, 535 (1965)).

*Pullman* abstention applies here because Plaintiffs raise statutory interpretation issues regarding KRS 63.070 that would render this action moot. Plaintiffs' objections to the bill of costs associated with the Petition to Impeach the Governor challenge the Committee's interpretation of KRS 63.070.[1] In particular, they dispute whether the "costs" allowed for under KRS 63.070 include the attorney fees submitted by the Governor to the Committee. *Id*. Additionally, they assert KRS 63.070 only permits recoupment of costs for "witnesses and the accused," not of the Commonwealth generally. *Id*. In doing so, they challenge whether the time of state employees can be billed. *Id*.

If the Circuit Court accepted Plaintiffs' interpretations of KRS 63.070 – as opposed to the Committees' – the First and Fourteenth Amendment claims asserted here would be moot, certainly as to the Governor, who only submitted a bill that consisted of the time state employees were required to work on responding to the Petition for Impeachment. In other words, if the Committee could not bill these costs of the Governor, this Court's opinion would have no

---

[1] *See* 2021 Regular Session Impeachment Committee (H), Meeting Minutes, (March 30, 2021) available at: https://apps.legislature.ky.gov/CommitteeDocuments/343/13318/Gov%20Beshear%20Cost%20Objection.pdf (last visited April 5, 2021).

practical effect. Because Plaintiffs raise these interpretation issues, this Court should abstain and allow those issues to be decided by the state court.

### 2. *Burford* Abstention applies.

*Burford* abstention applies to federal claims addressing difficult questions of state law, issues of great public importance to the state, or where a state has special expertise. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). It also applies "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concerns." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). Courts sitting in equity abstain from addressing these difficult questions of state law "[w]here timely and adequate state-court review is available[.]" *Id*.

This Court, sitting in equity, should abstain under *Burford* because timely and adequate state court review is available to the Plaintiffs and the state law issues are both difficult, of great importance to the state, and would present state courts with the ability to establish a coherent policy regarding implementation of KRS 63.070. As mentioned above, Plaintiffs have raised statutory interpretation issues regarding the Committee's implementation of KRS 63.070. Those issues concern the state's ability to recoup the costs of creating a forum for Plaintiffs to petition for impeachment and for members of the General Assembly to hear, address and resolve the petition. This Court should allow the state court to address those issues.

### 3. *Colorado River* Abstention applies.

*Colorado River* abstention is appropriate in situations involving contemporaneous exercises of concurrent jurisdictions. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Addressing *Colorado River*, the Sixth Circuit considers:

8

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained ... (5) whether the source of governing law is state or federal, (6) the adequacy of the state court action to protect the federal plaintiff's rights, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent jurisdiction.

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998). "These factors, however, do not comprise a mechanical checklist. Rather, they require 'a careful balancing of the important factors as they apply in a given case' depending on the particular facts at hand." *Id*.

Here, jurisdiction to address the taxation of costs for impeachment proceedings is vested in state court. *See* KRS 63.070. Abstaining from Plaintiffs' claims avoids piecemeal litigation moving through the state courts to collect the taxed costs. This forum is less convenient to the parties because in state court the parties could address multiple issues Plaintiffs have raised in the impeachment proceedings concerning the enforcement of KRS 63.070. Additionally, Plaintiffs could raise the federal claims in any potential state court action. Accordingly, this Court should abstain from resolving issues arising in impeachment proceedings in the state legislature and which can, and likely will, be resolved in the continuation of those proceedings.

### 4. *Younger* Abstention applies.

*Younger* abstention derives from a desire to prevent a party from invoking federal jurisdiction to restrain ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37, 44 (1979). It derives from "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. It applies

to civil and administrative cases, as well as criminal. *Middlesex Cty. Ethics Comm v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

"*Younger* permits abstention when there is (1) an ongoing state criminal prosecution, (2) certain civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions[.]" *Alexander v. Morgan*, 353 F.supp.3d 622, 627 (W.D. Ky. 2018) (citing *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017)). If so, courts consider "whether: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Id.* (citing *Middlesex Cty Ethics Comm.*, 457 U.S. 423).

The impeachment proceedings fit the criteria for *Younger* abstention. Impeachment proceedings are civil enforcement proceedings akin to criminal prosecutions. Upon receiving the Petition, the Committee requested a written response from the public officers and permitted a reply by the petitioners. The Committee heard testimony, requested documents and sought the advice of counsel. At the conclusion of its investigations, the Committee recommended not proceeding with potential punishment for the public offices. Those proceedings – to the extent that the House has yet to tax petitioners – are ongoing, involve a matter of grave importance to the state, and will provide Plaintiffs an opportunity to raise these claims in state court upon any attempt by the House Clerk to collect the taxed costs. *Younger* abstention instructs federal courts to abstain from deciding issues in ongoing state proceedings that could result in civil punishment. Impeachment is the ultimate punishment for any public officer. This Court should

allow the final steps of that procedure to play out, which necessarily will allow Plaintiffs to raise these issues in state court. *See* KRS 63.070(3) (allowing costs to be recovered in Circuit court).

For all of these reasons, if the Court finds it has jurisdiction, it should still abstain from addressing the claims. Because it should abstain, Plaintiffs are not entitled to preliminary relief.

### D. The First Amendment Does Not Prohibit The State From Recouping Costs Expended to Address Citizen Petitions.

Plaintiffs do not assert a cognizable First Amendment claim against the Governor. First Amendment liberties "as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses." *Cox v. State of New Hampshire*, 312 U.S. 569, 765 (1941). To maintain an organized society capable to keep public order, a state is permitted to recoup the "expense incident to the administration of [an] act and to the maintenance of public order in the matter [allowed]." *Id*. Imposing such costs is not contrary to the Constitution. *Id*. The costs taxed under KRS 63.070 expressly fit this criteria: they are "for the costs of investigation before the committee." In other words, for Plaintiffs to obtain access to a forum to address their Petition, they may be required to pay the costs to establish that forum.

Plaintiffs present no facts or legal argument to justify departure from this general rule. To be sure, Plaintiffs concede they successfully petitioned the House of Representatives, the Committee considered the petition and decided that no further action be taken on the Petition. Moreover, Plaintiffs fail to explain why the costs imposed under KRS 63.070 are any different from the costs imposed by government for access to other public forums. The costs, as documented by the Committee, were incident to the investigation of the Petition. They were not discriminatory and not imposed in a way that prevented the exercise of First Amendment rights.

11

As to the claims against the Governor, the Governor has taken no action under KRS 63.070 that possibly could be interpreted as infringing First Amendment rights. The Governor, as requested by the Committee, submitted to the Committee the costs incurred to respond to the Petition. That is it. The Governor plays no role in the administration or execution of KRS 63.070. As a result, the claims against the Governor lack merit and cannot provide a basis for relief.

## II. Plaintiffs Cannot Demonstrate An Irreparable Injury Because They Exercised Their First Amendment Rights Despite The Costs.

To obtain preliminary relief, Plaintiffs must demonstrate – regardless of the strength of the other preliminary relief factors – that they face an irreparable injury. *D.T. v. Sumner Cty. Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019) (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). In other words, the requirement "is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* (citing *Friendship Materials*, 679 F.2d at 103).

For this indispensable requirement, Plaintiffs put forth no argument. Instead, they rely solely on their ability to establish a strong likelihood of success as to the First Amendment claims, asserting that a violation of the First Amendment is presumed to be an irreparable injury. (Doc. 3, Page ID# 60.)Plaintiffs fail to demonstrate a strong likelihood of success and now seek to extend the presumption of an irreparable injury too far.

This is not a case wherein Plaintiffs' First Amendment rights have been restrained or will be restrained in the imminent future. Indeed, by their own account, Plaintiffs exercised their right to petition the government. Their speech was in no way restrained. Their injury is the potential payment of the bill of costs submitted by the House Clerk – a purely monetary injury. Injury that is fully compensable by monetary relief is not irreparable. *Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 578-79 (6th Cir. 2002). Since Plaintiff's injury – paying costs of

12

an impeachment investigation – is compensable by monetary relief, they are not entitled to preliminary relief.

To the extent Plaintiffs argue KRS 63.070 chills freedoms protected under the First Amendment, the facts in this case do not support that it did. Again, Plaintiffs availed themselves of all the benefits under KRS 63.020-.075, and, now after doing so, complain of the costs associated with administering those statutes. By proceeding under KRS 63.030 to file a Petition for Impeachment, Plaintiffs knew, or should have known, the potential costs associated with creating the forum. Still, they proceeded under this statutory right. Moreover, the First Amendment guarantees the freedom to petition the government, it does not guarantee the procedures established under KRS 63.020-.075. Plaintiffs remain free to petition the House, the Senate, and their representatives and senators without invoking the statutory impeachment procedures. And if Plaintiffs wanted to avoid the costs associated with an impeachment investigation, they could have petitioned the General Assembly to begin impeachment proceedings on its own accord under KRS 63.020, rather than through the process established under KRS 63.030, which requires the House to refer the petition to a committee.

Finally, if Plaintiffs argue KRS 63.070 and the imposition of costs will deter them from exercising their statutory rights under KRS 63.030 in the future, that alleged injury is not imminent. The General Assembly adjourned sine die on March 30, 2021. It currently ceases to exist and will not return for a regular session until January 2022. The procedures set forth in KRS 63.020-.075 cannot be utilized until then. Where no imminent, irreparable injury awaits, this Court should decline to grant the extraordinary relief Plaintiffs seek.

### III. The Equities Favor Preservation Of State Law.

Issuance of the injunction would prevent the enforcement of state law and hinder the public's interest in the state recouping public money spent to create the forum for a small number

13

of individuals to be heard, considered and have their petitions for impeachment resolved by the Committee. The injunction Plaintiffs seek benefits only them to prevent the House Clerk from recouping that public money while this Court decides Plaintiffs' claims. The injunction would interrupt the statutory process for seeking the impeachment of a public office and would preclude a state court from hearing and deciding issues raised regarding a state law. The equities favor maintaining the status quo and allowing the state court to address those issues should it be necessary.

## Conclusion

Plaintiffs fail to meet their heavy burden to warrant preliminary relief. They do not demonstrate a strong likelihood of success on the merits, fail to allege an irreparable injury and the equities favor denying the preliminary injunction. This Court should deny Plaintiffs' Motion for a Preliminary Injunction.

/s/Taylor Payne
Amy Cubbage
General Counsel
S. Travis Mayo
Chief Deputy General Counsel
Taylor Payne
Marc Farris
Laura C. Tipton
Deputies General Counsel
Office of the Governor
700 Capitol Building, Suite 106
Frankfort, Kentucky 40601
Phone: 502-564-2611
Amy.Cubbage@ky.gov
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
Marc.Farris@ky.gov
LauraC.Tipton@ky.gov

*Counsel for the Governor*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021 the foregoing Response was electronically filed with the Clerk of this Court and served to counsel of record via the Court's CM/ECF system. Parties may access the filing through the court's CM/ECF system.

/s/*Taylor Payne*
*Counsel for the Governor*