**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT FRANKFORT**

*Electronically Filed*

| | |
|---|---|
| **ANDREW COOPERRIDER,** *et al.*,            Plaintiffs, <br><br> v. <br><br> **ANDY BESHEAR**, in his official capacity as Governor of the Commonwealth of Kentucky, *et al.*,            Defendants. | CASE NO. 3:21-cv-00012-GFVT |

**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS**

Governor Andy Beshear, by and through counsel, submits the memorandum in support of his Motion to Dismiss.

**Background**

On January 8, 2021, Plaintiffs Andrew Cooperrider, Tony Wheatley, Jacob Clark, and another nonparty individual (collectively the "Beshear Petitioners") availed themselves of Kentucky Revised Statute (KRS) 63.030, which allows any person to petition the House of Representatives for the impeachment of any public officer. (Doc. 1, Page ID#: 4.) The Beshear Petitioners petitioned for the impeachment of Defendant Governor Andy Beshear. (*Id*. at 4-5.) By submitting their petition, Plaintiffs chose to invoke the comprehensive statutory scheme that includes the statute regarding costs.

KRS 63.020-.075 govern impeachment proceedings in the House of Representatives and potential prosecution in the Senate. Other than responding to this Petition seeking his

impeachment, the Governor plays no role in the administration or execution of KRS 63.020-.075. It is purely a function of government occurring within the legislative branch.

Pursuant to KRS 63.030(2), the House referred the Petition to a special committee: the 2021 R.S. Impeachment Committee. The House also referred to the special committee petitions for the impeachment of Attorney General Daniel Cameron and Representative Robert Goforth. Throughout January, February and March, the Committee met nine times. During that period, the Committee asked the Governor to respond to allegations in the Petition on three different occasions. Doing so in the first instance, on January 14, 2021, the Committee stated, "As required by KRS 63.070, costs <u>shall be</u> assessed to the petitioner if the committee does not recommend moving forward with impeachment proceedings to the House of Representatives." Plaintiffs Cooperrider, Wheatley and Clark chose to continue with their petition despite the Committee's clear notice regarding KRS 63.070; the nonparty individual sought to withdraw.

The Governor, through counsel, responded to the petition as requested. On February 23, 2021, the Committee recommended that the House of Representatives take no further action on the Petition and requested the Governor to submit his bill of costs, including attorney's fees. The Governor did so, submitting a bill of costs totaling $17,730.85 for the time expended by his staff to comply with the Committee's requests. The Committee excluded 9.4 hours of attorney time and reduced these costs to $16,613.19. On March 12, 2021, by letter, the Committee informed the Beshear Petitioners of the costs.

Plaintiffs Cooperrider, Wheatley and Clark, along with individuals petitioning for the impeachment of Attorney General Cameron and Representative Goforth, initiated this action on March 15, 2020. (Doc. 1.) They allege KRS 63.070, which requires the Clerk of the House of

Representatives to tax the costs to witnesses and to the accused for the investigation, violates the First and Fourteenth Amendments. (*Id*. at 10.)

Following initiation of this action, Plaintiffs submitted objections to the Committee on the bill of costs. On March 30, 2021, the Committee rejected the objections and directed the Clerk to assess costs to Petitioners. The Committee submitted a final report to the House on the same date, and the full House accepted the report. To date, the Clerk has not taxed the costs as directed by the Committee and, under the proposed agreed order submitted to the Court, will not assess costs during the pendency of this litigation. (Doc. 17.)

Other than being the subject of one Petition and responding to the Committee accordingly, the Governor has played no role in the enforcement or administration of the challenged statute that permits assessment and taxation of costs. As a result, the Governor moves to dismiss this action as to him.

## Legal Standard

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (6) provide that a claim may be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010). This standard allows a court to

3

dismiss actions that do not seek damages under any applicable abstention doctrines. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996).

## Argument

This Court should dismiss the claims against the Governor. The Governor is responsible for one action: submitting the costs incurred to respond to the Petition for Impeachment. The Governor does not tax, bill or collect costs against petitioners pursuant to KRS 63.070. It is a statute wholly carried out by the legislative branch. Because the Governor does not administer or execute KRS 63.070, he is immune. For those same reasons, Plaintiffs lack standing because no case or controversy exists with the Governor. Additionally, Plaintiffs request this Court to intervene and resolve proceedings occurring under state law and of great importance to the state. Accordingly, even if a case or controversy existed as to the Governor, this Court should abstain and dismiss the claim in favor of resolution in state court.

**I.     The Governor Is Immune.**

The Eleventh Amendment provides the Commonwealth with sovereign immunity. U.S. Const. amend. XI. The sovereign immunity guaranteed by the Eleventh Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100 (1984). A suit against a state official in his official capacity is a suit against the state. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).

An exception to this general rule was announced in *Ex parte Young,* 209 U.S. 123 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst,* 465 U.S. at 102. The *Ex parte Young* exception exists to provide prospective relief to end a continuing violation of federal law. *Diaz v. Mich. Dep't of Corr.,* 703 F.3d 956,

4

964 (6th Cir. 2013). But that means the exception "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters,* 92 F.3d 1412, 1415 (6th Cir. 1996). In other words, *Ex parte Young* does not reach state officials who "[are] not expressly directed to see to its enforcement." *Id.* at 157 .

Here, because the Governor does not execute or administer KRS 63.070 – or any of the impeachment statutes – *Ex parte Young* does not except the general rule of sovereign immunity. Indeed, the General Assembly, through the Special Committee, the Legislative Research Commission and its members – administers the statutes, and KRS 63.070 expressly denotes the House Clerk as the executor of its provisions. The only reason the Governor is named as a Defendant here is because he submitted his costs to the Committee as requested. Such an action is neither enforcing KRS 63.070 nor threatening to enforce KRS 63.070. Moreover, the Governor's role as the supreme executive does not make him subject to suit here. *See Children's Healthcare,* 92 F.3d at 1416 ("Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held."). As a result, the Governor retains his sovereign immunity. Because the Governor is immune, this Court lacks subject matter jurisdiction to address Plaintiffs' claims against him.

## II.   Plaintiffs Lack Standing.

The Constitution limits a federal court's jurisdiction to "cases and controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A case or controversy requires a Plaintiff to have standing. *Id*. at 560. Standing requires "a causal connection between the injury and the conduct complained of – the injury as to be 'fairly . . . traceable to the challenged action of the

defendant[.]'" *Id*. (citation omitted). It also requires an injury in fact, meaning the injury is actual or imminent, rather than hypothetical. *Id*. (citation omitted). Here, Plaintiffs fail to allege an injury traceable to the action of the Governor or an injury in fact.

### A. The Governor's Action has not Injured Plaintiffs.

Plaintiffs allege injury by the execution or threatened execution of a statute the Governor does not execute. Indeed, they challenge a statute – KRS 63.070 – under which the Governor plays no role. They assert that the taxation of costs permitted by that statute – in the statutory scheme Plaintiffs chose to invoke – violates the First Amendment.

Under KRS 63.070, the House Clerk taxes those costs. The Governor's role in this matter is limited, and Plaintiffs do not allege his role violated the First Amendment. To be sure, the Governor took no action against Plaintiffs. Rather, the Governor complied with a request by the Committee to submit the costs he incurred responding to the Petition.

Plaintiffs argue by complying with this request, the Governor has "submitted a pleading seeking costs to be reimbursed and has refused to disclaim any intention to seek same." (Complaint, ¶18.) But, again, the Governor plays no role in the taxation of these costs. And the "pleading" was requested by the Committee; it did not – and could not – trigger the Committee to take any action it would not otherwise have taken. The Governor's "pleading" only contributed to the amount the Committee requested the House Clerk to assess, not whether costs would be assessed at all. And to further demonstrate the Governor's limited role here, the Committee adjusted the costs submitted by the Governor. Thus, the costs submitted by the Committee are not the same costs submitted by the Governor. As a result, the Governor's actions here could not have injured Plaintiffs.

### B.     Plaintiffs' Claims are not Ripe.

Ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580 (1985) (internal quotation omitted). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 294 (6th Cir. 1997). Courts weigh three factors when deciding whether to address the issues presented for review: 1) "the likelihood that the harm alleged by the plaintiffs will ever come to pass"; 2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims"; and 3) "the hardship to the parties if judicial relief is denied at this stage in the proceedings." *Adult Video Ass'n v. United States Dep't of Justice,* 71 F.3d 563, 568 (6th Cir. 1995) (internal quotation and brackets omitted).

Through this action, Plaintiffs seek to prevent the collection of a bill that is to be taxed to them by the House Clerk to recoup public money spent investigating their Petition for Impeachment. At the time of initiating this action, Plaintiffs had not been billed and had not filed objections, as provided for under KRS 63.070. As of this filing, to the best knowledge of undersigned counsel, the House Clerk has made no efforts to collect the costs. On March 30, 2021, the Committee formally rejected objections submitted by the Plaintiffs and submitted a final report to the House, which accepted that report.

Because the House Clerk has not yet sought to collect the costs, Plaintiffs' claims are not yet ripe. Plaintiffs will not be prejudiced by this Court's refusal to hear their unripe claims. KRS 63.070 specifically provides that the costs taxed under it "may be recovered on motion, after five (5) days' notice, in a Circuit Court." KRS 63.070(3). All of Plaintiffs' objections, including the claims asserted here, can and should be addressed by the state Circuit Court should that need

arise. At this point, Plaintiffs seek relief from an injury yet to occur, that may not occur, and that may be limited or prevented by a state court. As a result, at this time, Plaintiffs fail to invoke the Court's jurisdiction to hear their claims.

### III. Alternatively, This Court Should Abstain From Resolving Claims Involving Ongoing State Proceedings And Dismiss The Action.

Plaintiffs request this Court to intervene in state proceedings that have yet to conclude and could conclude in Plaintiffs' favor so as to render this action moot. In this context, several abstention doctrines instruct this Court to abstain from deciding Plaintiffs' claims.

#### 1. *Pullman* Abstention applies

The *Pullman* abstention doctrine instructs courts to abstain from constitutional issues that a state court determination of state law may moot. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). In applying *Pullman* abstention, courts ask "whether the state statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question . . . ." *Jones v. Coleman*, 848 F.3d 744, 752 (6th Cir. 2017) (quoting *Harman v. Forssenius*, 380 U.S. 528, 535 (1965)).

*Pullman* abstention applies here because Plaintiffs raise statutory interpretation issues regarding KRS 63.070 that would render this action moot. Plaintiffs' objections to the bill of costs associated with the Petition to Impeach the Governor challenge the Committee's interpretation of KRS 63.070.[1] In particular, they dispute whether the "costs" allowed for under KRS 63.070 include the attorney fees submitted by the Governor to the Committee. *Id*. Additionally, they assert KRS 63.070 only permits recoupment of costs for "witnesses and the

---

[1] *See* 2021 Regular Session Impeachment Committee (H), Meeting Minutes (March 30, 2021), available at https://apps.legislature.ky.gov/CommitteeDocuments/343/13318/Gov%20Beshear%20Cost%20Objection.pdf (last visited Apr. 5, 2021).

accused," not the costs of the Commonwealth generally. *Id.* In doing so, they challenge whether the time of state employees can be billed. *Id.*

If the Circuit Court accepted Plaintiffs' interpretations of KRS 63.070 – as opposed to the Committee's – the First and Fourteenth Amendment claims asserted here would be moot, certainly as to the Governor, who only submitted a bill that consisted of the time state employees were required to work on responding to the Petition for Impeachment. In other words, if the Committee could not bill these costs of the Governor, this Court's opinion would have no practical effect. Because Plaintiffs raise these interpretation issues, this Court should abstain and allow those issues to be decided by the state court.

### 2. *Burford* Abstention applies.

*Burford* abstention applies to federal claims addressing difficult questions of state law or issues of great public importance to the state, or where a state has special expertise. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). It also applies "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concerns.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). Courts sitting in equity abstain from addressing these difficult questions of state law "[w]here timely and adequate state-court review is available[.]" *Id.*

This Court, sitting in equity, should abstain under *Burford* because timely and adequate state court review is available to Plaintiffs and the state law issues are both difficult and of great importance to the state, and they would present state courts with the ability to establish a coherent policy regarding implementation of KRS 63.070. As mentioned above, Plaintiffs have raised statutory interpretation issues regarding the Committee's implementation of KRS 63.070.

Those issues concern the state's ability to recoup the costs of creating a forum for Plaintiffs to petition for impeachment and for members of the General Assembly to hear, address and resolve the petition. This Court should allow the state court to address those issues.

### 3. *Colorado River* Abstention applies.

*Colorado River* abstention is appropriate in situations involving contemporaneous exercises of concurrent jurisdictions. *Colorado River Water Conservation Dist.*, 424 U.S. at 813. Addressing *Colorado River*, the Sixth Circuit considers:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; [] (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal, (6) the adequacy of the state court action to protect the federal plaintiff's rights, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent jurisdiction.

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998). "These factors, however, do not comprise a mechanical checklist. Rather, they require 'a careful balancing of the important factors as they apply in a given case' depending on the particular facts at hand." *Id.*

Here, jurisdiction to address the taxation of costs for impeachment proceedings is vested in state court. *See* KRS 63.070. Abstaining from Plaintiffs' claims avoids piecemeal litigation moving through the state courts to collect the taxed costs. This forum is less convenient to the parties because in state court the parties could address the multiple issues Plaintiffs have raised in the impeachment proceedings concerning the enforcement of KRS 63.070. Additionally, Plaintiffs could raise their federal claims in any potential state court action. Accordingly, this Court should abstain from resolving issues arising in impeachment proceedings in the state legislature which can, and likely will, be resolved in the continuation of those proceedings.

####    4.  *Younger* Abstention applies.

*Younger* abstention derives from a desire to prevent a party from invoking federal jurisdiction to restrain ongoing state proceedings. *Younger v. Harris*, 401 U.S. 37, 44 (1979). It derives from "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. It applies to civil and administrative cases, as well as criminal. *Middlesex Cty. Ethics Comm v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

"*Younger* permits abstention when there is (1) an ongoing state criminal prosecution, (2) certain civil enforcement proceedings that are akin to criminal prosecutions, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions[.]" *Alexander v. Morgan*, 353 F.Supp.3d 622, 627 (W.D. Ky. 2018) (citing *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017)). If so, courts consider "whether: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Id*. (citing *Middlesex*, 457 U.S. 423).

The impeachment proceedings fit the criteria for *Younger* abstention. Impeachment proceedings are civil enforcement proceedings akin to criminal prosecutions. Upon receiving the Petition, the Committee requested a written response from the public officer and permitted a reply by the petitioners. The Committee heard testimony, requested documents, and sought the advice of counsel. At the conclusion of its investigations, the Committee recommended not proceeding with potential punishment.  Those proceedings – to the extent that the House has yet

11

to tax petitioners – are ongoing, involve a matter of grave importance to the state, and will provide Plaintiffs an opportunity to raise these claims in state court upon any attempt by the House Clerk to collect the taxed costs. *Younger* abstention instructs federal courts to abstain from deciding issues in ongoing state proceedings that could result in civil punishment. Impeachment is the ultimate punishment for any public officer. This Court should allow the final steps of that procedure to play out, which necessarily will allow Plaintiffs to raise these issues in state court. *See* KRS 63.070(3) (allowing costs to be recovered in Circuit Court).

For all of these reasons, if the Court finds it has jurisdiction, it should still abstain from addressing the claims. Because it should abstain, Plaintiffs are not entitled to preliminary relief.

## Conclusion

This Court should dismiss the claims against the Governor under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Alternatively, this Court should abstain and dismiss the Complaint.

*/s/Taylor Payne*
Amy D. Cubbage
General Counsel
S. Travis Mayo
Chief Deputy General Counsel
Taylor Payne
Marc Farris
Laura C. Tipton
Deputies General Counsel
Office of the Governor
700 Capitol Building, Suite 106
Frankfort, Kentucky 40601
Phone: 502-564-2611
Amy.Cubbage@ky.gov
Travis.Mayo@ky.gov
Taylor.Payne@ky.gov
Marc.Farris@ky.gov
LauraC.Tipton@ky.gov

*Counsel for the Governor*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 12, 2021 the foregoing Memorandum was electronically filed with the Clerk of this Court and served to counsel of record via the Court's CM/ECF system. Parties may access the filing through the court's CM/ECF system.

/s/*Taylor Payne*
*Counsel for the Governor*
