**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY (at Frankfort)**
*Electronically Filed*

| | | |
|---|---|---|
| **ANDREW COOPERRIDER, et. al.** | : | Case No. 3:21-CV-00012 |
| Plaintiffs | : | |
| v. | : | |
| **ANDREW BESHEAR**, *in his official capacity, et. al.* | : | |
| | : | |
| Defendants | | |

**REPLY IN SUPPORT OF MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPOARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION**

Plaintiffs submit this Reply in Support of their Motion for Preliminary Injunction.

**I.      FACTS**

In his Response Memorandum, the Governor asserts he has no role in enforcing the challenged statute. The record conclusively says otherwise.

It is undisputed that Governor Beshear was the subject of an unsuccessful impeachment petition who now, by statute, is and will be entitled to collect certain costs or fees pursuant to KRS 63.070(3), and it is undisputed he actually seeks those costs and fees through a motion he filed along with a final and complete invoice for same. This acknowledged action by the Governor belies his false assertion that he is not enforcing, or otherwise has no part in enforcing, the statute. Rather, his efforts to tax these costs and fees against the unsuccessful impeachment petitioners means the Governor is engaged in behavior creating a severe chilling effect on persons acting in accordance with well-established First Amendment rights.

More specifically, on March 3, 2021, Governor Beshear submitted a cost bill application to the Impeachment Committee stating: "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to order the remaining Petitioners to reimburse

1

the Commonwealth for these expenses." (Pl's Verified Compl., RE#1, ¶ 16, Exhibit 1). In total, the Governor sought $17,730.85 in costs and fees from these petitioners. *Id.* at ¶ 17.

On March 11, 2021, the undersigned counsel for the Beshear Petitioners sent communication to the Governor requesting a response as to whether the Governor would seek enforcement of the costs and fees against the petitioners. (Pl's Verified Compl., RE#1 ¶ 18). There were back and forth communications related to same, which are contained at Exhibit 2. At no point, including in the pleadings before this Court, has the Governor disclaimed his continued intention to collect costs and fees. Yet, if the Governor were inclined to disavow enforcement, it would be a simple matter for him to say so in light of his numerous opportunities to do so.

Throughout the impeachment proceedings by the Legislative Special Impeachment Committee, the committee issued public statements that significant costs would be assessed against all impeachment petitioners. Counsel for the Goforth and Cameron Petitioners filed pleadings before the Committee reminding them that those threats had an improper and unlawful chilling effect. Despite this, both the Impeachment Committee and the Governor's Office continued to assert such threats against any citizen lodging a petition seeking impeachment regarding the performance of an elected official.

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating its intention to impose significant costs and fees on them, totaling $42,444.05 against the Beshear Petitioners alone. (Pl's Verified Compl., RE#1, ¶ 19). That same day, it sent similar letters to the other Petitioners. *Id.* at ¶¶ 20-21. There has been no filing in state court addressing these issues. *Id.* at ¶ 23. However, since the filing of this action, the House Impeachment Committee overruled objections to the cost bills and passed a

motion to impose same on these petitioners.[1]  Consequently, Plaintiffs have exhausted their remedies.  *Id.* at 22.

Plaintiffs seek declaratory relief that K.R.S. 63.070 is unconstitutional, facially and as-applied to them and injunctive relief enjoining its enforcement.  *Id.* at ¶ 24.

## The Challenged Statute

KRS 63.070(1) provides: "In a proceeding for impeachment … if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee."  (Pl's Verified Compl., ¶ 25).

KRS 63.070(3) provides: "Costs taxed pursuant to this section may be recovered on motion, after five (5) days' notice, in a Circuit Court."  (Pl's Verified Compl., RE#1, ¶ 28).  No other legislative committee formed for any other purpose may charge its own attorney, expert, or staff costs to a citizen or petitioner who brings concerns before it.  (Pl's Verified Compl., RE#1, ¶ 30).

Punitive costs and fees have been threatened to be imposed on these private citizens for the mere exercise of their right to petition government.  These private citizens include Grand Jurors who served at the demand of the state as unpaid public servants.  Even more concerning, however, the provisions at issue do not require any finding, before costs and fees can be assessed, that the submitted petition is: (1) frivolous; (2) submitted in bad faith; (3) unreasonable; or (4) intended merely to harass or achieve another illegitimate purpose.  Instead, the subject provisions allow for substantial and burdensome penalties to be imposed without any

---

[1] https://www.youtube.com/watch?v=6VRlYWgHQi0 (last visited 4/15/2021).

finding of fault, and on only some petitioners, those selected by the Impeachment Committee, but not others.

The only certainty of not being assessed costs and fees is where both the full House and Senate actually, successfully impeach the government official named in the petition. (Pl's Verified Compl., RE#1, ¶ 31). Without a doubt, this legislative scheme, more properly a governmental protection racket, unlawfully chills the exercise of a core freedom. *Id.*

There are other mechanisms under Kentucky law where Kentucky's legislative branch receives reports of potential misconduct. (Pl's Verified Compl., RE#1, ¶ 32). For instance, KRS 6.686 provides the means to submit reports of violations of legislative ethics, but provides a mechanism to award costs only if the petition is filed in clear bad faith and the allegations therein are knowingly false. *Id.* Even under those circumstances, the costs awarded do not include the costs of the Legislative Ethics Committee for its counsel, or its investigators or its experts. *Id.*

Kentucky's General Assembly and its members regularly receive reports and petitions by citizens on a range of topics, including whether to pass or not pass legislation on an entire host of topics and issues. (Pl's Verified Compl., RE#1, ¶ 33). These non-impeachment citizen petitions can, and do, generate the expenditure of significant legislative and other governmental resources and expenses for investigation and for resolution. (Pl's Verified Compl., RE#1, ¶ 34).

So, the chilling effect of the subject statutory provision could not be clearer. The record herein establishes the Governor's Office and the Impeachment Committee threatened the four original Petitioners in the first Beshear impeachment petition and publicly stated that onerous costs would be assessed against any Petitioner. Consequently, one Petitioner, a private citizen without deep pockets, was so afraid of this punitive response to his exercise of core First Amendment rights that he withdrew as a petitioner. Recognizing the Governor's role in

enforcing the cost provisions, he then did a very public about-face, expressing a sycophancy towards the Governor that would make even David Copperfield's Uriah Heep blush.[2] This underscores the fact that not only *could* the statute but used to threaten citizens who were acting in good faith to bring matters of public concern before the legislature, but in fact the statute *was and is* used to chill core, First Amendment protected speech.

## II.   LAW AND ARGUMENT

### A.  The Governor is not immune under the Eleventh Amendment

The Governor argues that he is immune under the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123 (1908) makes clear that is not the case. The Governor expressly sought to have his costs and attorney fees awarded and has refused to retreat from that position. (Pl's Verified Compl., RE#1, ¶ 16, Exhibit 1). Statutorily, he is entitled to enforce the provisions against the Plaintiffs. KRS 63.070(1) is clear that the liability is "to the accused," rather than to the legislature. And KRS 63.070(3) provides: "Costs taxed pursuant to this section may be recovered on motion, after five (5) days' notice, in a Circuit Court." The Governor cannot feign ignorance because he filed with the House a document in which he stated: "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to order the remaining Petitioners to reimburse the Commonwealth for these expenses." (Pl's Verified Compl., RE#1, ¶ 16, Exhibit 1).

That statement affirms his continuing demand for penalties from not just the Petitioners who questioned him, but any other person the legislature sent a bill to. It is disingenuous for the Governor to now argue that even though he filed the demand for costs and fees, and is before this

---

[2] https://apps.legislature.ky.gov/CommitteeDocuments/343/13217/Peititioner's%20Motion%20to%20Withdraw%20(Daniel).pdf (last visited 4/16/2021).

5

Court refusing to withdraw that cost demand, that he is not actually an enforcer of the challenged provision.

Thus, the response to the Governor's Eleventh Amendment contentions can be found in *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015). In that case, the Sixth Circuit explained that *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) did not apply, because the Plaintiffs sought to enjoin enforcement of a statute. As in *Russell*, KRS 63.070 envisions multiple state actors working together to jointly, not severally, enforce what they perceive to be the statutory mandate.

First among these is the legislature, which considers the impeachment petition. Second is the House Clerk, who taxes costs. And third, the accused and witnesses, who are listed in the statute as individuals or entities that petitioners are liable to. As in *Russell*, the fact that the Governor is one of those empowered to enforce the statute, here through the Circuit Court action, is sufficient to find him a proper party to this action and to defeat Eleventh Amendment immunity under *Ex Parte Young*. As the Sixth Circuit explained in *Russell*, "*Young*'s enforcement element is not confined to criminal actions, but is satisfied by a government official's execution of a statute in civil actions as well." 784 F.3d 1037 at 1048. "*Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." Id. at 1049. "This is such a situation." *Id.*

On March 11, 2021, the undersigned counsel for the Beshear Petitioners sent communication to the Governor, requesting his position on whether or not the Governor would seek enforcement of the fees and costs against the petitioners. (Pl's Verified Compl., RE#1 ¶

18). There were back and forth communications related to same, which is contained at Exhibit 2 of the Complaint. *Id.* It is clear from that documentation and the filings before both the legislature and this Court that the Governor is expressly seeking costs to be reimbursed by private citizens because they exercised their First Amendment rights, and that the Governor has refused in his response to disclaim any intention to seek same. *Id.*

### B. The claims are ripe

The Governor next erroneously argues that the claims here are not ripe. "A plaintiff meets the injury-in-fact requirement—and the case is ripe—when the threat of enforcement of that law is "sufficiently imminent." *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014). This occurs when (1) the plaintiff alleges "an intention to engage in a course of conduct" implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is "credible." *Id.*

Here, Plaintiffs already engaged in a course of conduct implicating the Constitution, and the threat of enforcement of the statute against them by the Governor is more than credible. Crushing cost and fee bills have been submitted by the Governor and others to the legislature, which have been approved. The *only* thing keeping them from being taxed by the Clerk, and then collected by the Governor, is this litigation. This Court is not required to wait until the monies are actually extorted from these citizens and placed in the state bank account before finding the case ripe. Ripeness is clear and the injury done is certain.

"The question is whether [Plaintiffs] face[] a 'credible threat of enforcement' for engaging in that speech." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016). "The answer turns on whether the [Committee and Governor's communications] carried with it a valid threat of enforcement. It did." *Id.* As in *Winter*, the Governor's communications, to the Impeachment

7

Committee, and to the undersigned, make clear that there is a valid threat of enforcement. The claims are ripe.

If this litigation fails, there are plenty of *indicia* in this record, from the Governor's own filings with the impeachment committee to his refusal to disclaim his intention to enforce, along with his Response in Opposition to the Preliminary Injunction filed with this Court to permit him to collect the amounts in state court, that leave no doubt the Governor immediately will enforce. The claims are ripe.

### C. No Abstention doctrines apply here

1. *Pullman* abstention does not apply, and Sixth Circuit case law has directed that even if it does, or if this Court should choose to certify the questions of law, the Court should adjudicate the Preliminary Injunction first before abstaining

Abstention in this case is not proper. The Governor claims that this Court should "abstain" from adjudicating this matter under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). At the outset, *Pullman* abstention, as this exception has come to be called, does not "involve the abdication of federal jurisdiction, but only the postponement of its exercise." *Harrison v. NAACP*, 360 U.S. 167, 177, (1959).

Pullman abstention, or even certification, is only appropriate where the statutory questions will "render unnecessary or substantially modify the federal constitutional question." *Jones v. Coleman*, 848 F.3d 744, 752 (6th Cir. 2017). The Sixth Circuit likewise observed that abstention is "the exception and not the rule." 848 F.3d 744 at 754.

In the present case, obtaining a statutory construction of K.R.S. 63.070 will not obviate this action. Witnesses were called, and the impeachment committee itself imposed its costs on the Plaintiffs over and above the costs claimed by the Governor. Even if the Governor is not entitled under state law to attorney fees for his staff's work, he is still entitled to recoup these

8

other costs on behalf of the state coffers. In other words, the state law questions involve the *amount* of the punitive financial sanction for the exercise of First Amendment rights, but not *whether* or not there is a punitive financial sanction for the exercise of First Amendment rights. Thus, abstention – or even certification – is not appropriate here. If a challenged state law is, as is the case here, not fairly subject to a state court interpretation that will render it constitutional, the District Court should not abstain. *Babbitt v. United Farm Workers*, 442 U.S. 289, 306 (1979); *Kusper v. Pontikes*, 414 U.S. 51, 54 (1973); *Harman v. Forssenius*, 380 U.S. 528, 534 (1965); *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 207-208 (6th Cir. 1983).

More significantly, this case has First Amendment implications beyond this case. The existence of the statute in question chills free speech – it keeps citizens from invoking constitutional rights. That is the situation regardless of the ultimate amount of the potential penalty involved, which is the only real state law question. It involves facial viewpoint and content discrimination, and no reasonable interpretation cures that issue.

Courts recognize that abstention is often improperly burdensome on parties and impedes the right to recovery and that certification may be used to alleviate some of that burden. "The application of *Pullman* abstention results in significant financial and time burdens on the parties and acts almost as an exhaustion requirement, requiring the federal court plaintiff to seek an authoritative state court construction of the state-law issue before a federal court will entertain her claim." *Jones*, 848 F.3d 744, 750. "Since the Supreme Court created the *Pullman* doctrine, most states have adopted certification procedures, which permit the state's highest court to consider novel questions of state law that have been 'certified' by a federal court." *Id.* "Certification today covers territory once dominated by a deferral device called '*Pullman* abstention' … Certification procedure, in contrast, allows a federal court faced with a novel state-

9

law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of an authoritative response." *Id.*, *citing Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997). While Plaintiffs do not agree that certification is appropriate in this case, abstention is clearly improper.

This case raises clear First Amendment issues. This Court should be guided by decisions in the Sixth Circuit, and U.S. Supreme Court, which have observed that Courts should be particularly reluctant to engage in *Pullman* abstention "in cases involving facial challenges based on the First Amendment," such as the present matter. *Id.*

Even if certification or abstention is appropriate, "when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains." *Id.* "As we see the matter . . . the abstention order did in effect deny preliminary injunctive relief and effectively shut the federal courthouse door upon plaintiffs in their search for timely vindication of their federal constitutional claims." *Daniel v. Waters*, 515 F.2d 485, 492 (6th Cir. 1975). Petitioners sought preliminary injunctive relief in this matter and are entitled to those protections during the pendency of a final decision.

2. *Burford* Abstention does not apply, and there is a heavy presumption against it applying

The Governor next contends that abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) is appropriate. It is not. *Burford* abstention is appropriate only "where timely and adequate state-court review is available and (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002).

10

Obtaining a statutory construction of K.R.S. 63.070 will not obviate this action. If a challenged state law is, as is the case here, not fairly subject to a state court interpretation that will render it constitutional, the District Court should not abstain. *Babbitt*, 442 U.S. 289, 306; *Kusper*, 414 U.S. 51, 54; *Harman*, 380 U.S. 528, 534; *American Motors Sales Corp.*, 708 F.2d 202, 207-208. The statute, both as written and as applied, imposes penalties in costs and fees amounting to nothing short of a tax against citizens who bring critical public concerns before the legislature in an impeachment petition. The language in question cannot be read so as to make it constitutional. For this reason, abstention serves no valid purpose and only complicates and delays the Plaintiffs' right to relief.

Further, this case presents clear questions of federal law involving the First Amendment, not thorny issues of state law and thus *Burford* abstention is inappropriate. *Stein v. Thomas*, 672 Fed. Appx. 565 (6th Cir. 2016). Even if difficult questions of state law were present here (and they are not), that is not a sufficient ground to invoke *Burford* abstention. *Gray v. Bush*, 628 F.3d 779 (6th Cir. 2010).

Furthermore, the delay inherent in a state court adjudication process renders *Burford* abstention inappropriate here, particularly with First Amendment rights at stake. *American Motors Sales Corp.*, 708 F.2d 202, 207-208.

Again, this case has First Amendment implications beyond this case. The existence of the statute in question chills free speech – it keeps citizens from invoking constitutional rights. And that is the case regardless of the ultimate amount of the potential penalty involved, which is the only real state law question. It involves facial viewpoint discrimination, and no reasonable interpretation cures that issue. And finally, even if abstention were appropriate (and it is not), it should only occur after preliminary injunctive relief is decided. *Jones*, 848 F.3d 744, 750.

11

3. *Colorado River* <u>abstention cannot apply in the absence of a parallel state case, and there is no such case here</u>

The Governor next argues that abstention is appropriate under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). "But where, as here, there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist." *Gottfried v. Medical Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998). Further, none of the five *Colorado River* factors that permit abstention in certain unusual and challenging cases are present in the absence of an actually-filed state court action. *Id.* at 329. There is no state court action here, so *Colorado River* does not apply. And finally, even if abstention were appropriate (and it is not), it should only occur after preliminary injunctive relief is decided. *Jones*, 848 F.3d 744, 750.

4. *Younger* <u>abstention only applies to criminal and administrative enforcement cases, and cannot apply in the absence of a formal court or administrative proceeding, which is not present here</u>

Lastly, the Governor argues that abstention under *Younger v. Harris*, 401 U.S. 37 (1971) is appropriate. First, the civil action that the Governor can bring under the challenged statute is not within the three recognized types of claims that are covered by *Younger* abstention. Such abstention is only appropriate for actions involving "(1) federal intrusion in ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). There is nothing criminal involved in these proceedings, the taxation of costs by the House Clerk, or the collection of same by the Governor in Circuit Court. None of the *Younger* factors apply.

But equally significantly, there is no pending state court action that has been filed (yet), and, in the absence of such an action (that actually preceded the filing of this case), *Younger*

12

simply does not apply. *Winter*, 834 F.3d 681 at 688. And finally, even if abstention were appropriate (and it is not), it should only occur after preliminary injunctive relief is decided. *Jones*, 848 F.3d 744, 750.

### D. The First Amendment was and is being violated

Rather than addressing the significant issues raised by the unlawful demand for payment, which deal with content and viewpoint discrimination, the Governor responds that the statute is constitutional under *Cox v. New Hampshire*, 312 U.S. 569 (1975). *Cox*, incidentally, is distinguishable because the *Cox* Court was clear that the challenged "statute, as the state court said, is not aimed at any restraint of freedom of speech," unlike here, where it clearly is – the statute in this case involves a facial determination about the content and viewpoint of speech to determine its applicability. *Id.* at 577-578.

Numerous courts – including the Sixth Circuit – have questioned *Cox*'s continued applicability after the Supreme Court's decision in *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992), which abrogated the fee discussion and analysis in *Cox*. The government cannot impose financial burdens on speakers based upon the content of their speech. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *Forsyth Cnty*, 505 U.S. 123, 130.

The Sixth Circuit addressed the content neutrality requirement (and analyzed all of these cases and the continued validity of *Cox* after *Forsyth Cnty*), and found content neutrality of a cost shifting statute mandatory prior to any further cost shifting analysis. *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485 (6th Cir. 2008). The Governor fails to make any claim that the statute at issue is content neutral (much less viewpoint neutral), as it clearly is not, which is dispositive of the claims.

The Governor claims that his attempts thus far to collect the costs and fees are not "action under KRS 63.070 that possibly could be interpreted as infringing First Amendment rights" (Memo at 12). The fact that he is attempting to exact, impose, and ultimately collect a financial penalty on the Plaintiffs for the exercise of their First Amendment speech and petition rights is yet another "quintessential violation" of the First Amendment. *Ramsek v. Beshear*, 2021 U.S. App. LEXIS 6164, --- F.3d --- (6th Cir. 2021). This is particularly so when one considers the fact that one petitioner was intimidated into withdrawing his petition for impeachment when threatened by the Governor and others with the assessment of punitive costs against them. Action has occurred which has harmed Plaintiffs and third parties. This Court can, and should, award the requested declaratory and injunctive relief.

### E. Irreparable injury includes being punished for the exercise of First Amendment rights and the Plaintiffs will be irreparably harmed if an injunction is not granted

The Governor next argues that there is no irreparable harm here. First, "even minimal infringement upon First Amendment values constitutes irreparable injury." *Bell v. Johnson*, 308 F.3d 594, 609 (6th Cir. 2002); *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Governor argues that these Plaintiffs exercised their rights and therefore there is no irreparable harm. The Governor misses the mark in many respects.

First, permitting the imposition of serious financial penalties as a consequence of the expression of free speech necessarily is itself a First Amendment violation – not only as to these Plaintiffs – but also as to others – constituting an impermissible chilling of free speech. The public, seeing these petitioners punished, to the tune of tens of thousands of dollars, for the exercise of speech, will get the message. One Petitioner already has. Speech has and will be chilled, and this is irreparable harm. *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 355

(1989); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (the fact that protected speech had already occurred did not negate need for injunction and finding of irreparable harm). For several of the Plaintiffs, the charges assessed against them may be financially ruinous. That is a clear violation of a citizen's right to raise concerns about elected officials in the forum provided for such claims.

The Supreme Court found a First Amendment violation from similar actions where the Plaintiffs had already exercised speech rights prescribed by statute, but then enjoined enforcement against them for the exercise of those rights. *Dombrowski v. Pfister*, 380 U.S. 479 (1965); *Douglas v. Jeannette*, 319 U.S. 157 (1943); *Winter*, 834 F.3d 681 (finding standing by Judge Jones for speech she had already engaged in and enjoining enforcement of a challenged judicial canon on that basis); *Taylor v. Kentucky State Bar Ass'n*, 424 F.2d 478 (1970) (noting chilling effect at issue for permitting enforcement action for speech, irreparable harm, and enjoining same).

Indeed, that is why case law is clear that the injunction factors generally collapse in First Amendment cases on the success on the merits. *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020). A First Amendment violation has already occurred, and the violation continues as long as the penalties continue to be threatened for the exercise of First Amendment rights.

F.  **The equities require the vindication of First Amendment rights and the enjoining of KRS 63.070**

Finally, the Governor argues that the injunction prevents the enforcement of state law and in recouping public money spent and thus, says the Governor, the equities warrant withholding relief. But neither the United States Supreme Court, nor the Sixth Circuit, have found this justification sufficient for similar enactments. *Forsyth Cnty.*, 505 U.S. 123, 130; *729, Inc.*, 515

F.3d 485. And the injunction factors always warrant injunctive relief where, as here, the First Amendment is contravened by a legislative enactment.

Clear Sixth Circuit law establishes that the remaining factors are met where constitutional rights are infringed upon, and so, in these cases, the likelihood of success factor is dispositive. *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts*, 958 F.3d 409; *Maryville Baptist Church, Inc.*, 957 F.3d 610; *Elrod*, 427 U.S. 347, 373 (irreparable harm from violation of rights); *Foster v. Dilger*, 2010 U.S. Dist. LEXIS 95195 (EDKY 2010) (no substantial harm to others, even where registry incurred printing costs, where constitutional rights at stake); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982); *see also G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

Finally, the state interests that the Governor claims should be vindicated – the state process – is a thinly veiled recognition, and desire, to chill additional citizen speech on this subject. It is a desire to suppress petitions directed at the legislative body, based on the content of speech. And it is highly unconstitutional.

## III.   CONCLUSION

There is no basis for abstention, this Court has jurisdiction over this matter, the Governor has no Eleventh Amendment Immunity against an action to enjoin his enforcement of the challenged statute, and the preliminary injunction, enjoining enforcement of KRS 63.070 should be granted.

Respectfully Submitted,

/s/Christopher Wiest
Christopher Wiest (KBA 90725)
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
chris@cwiestlaw.com
513.257.1895

/s/Thomas Bruns
Thomas Bruns (KBA 84985)
Bruns Connell Vollmar Armstrong, LLC
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513.312.9890

/s/Zach Gottesman
Zach Gottesman (86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Counsel for the Beshear Petitioners*

/s/Anna Whites
Anna Whites
327 Logan Street
Frankfort, KY 40601
annawhites@aol.com
502.229.1063
*Counsel for the Cameron and Goforth Petitioners*

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing via the Court's CM/ECF system, which will provide notice to all counsel or parties of record this 19 day of April, 2021.

/s/ Christopher Wiest