**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY (at Frankfort)**
*Electronically Filed*

| | | |
|---|---|---|
| **ANDREW COOPERRIDER, et. al.** | : | Case No. 3:21-CV-00012 |
| Plaintiffs | : | |
| v. | : | |
| **ANDREW BESHEAR**, *in his official capacity, et. al.* | : | |
| | : | |
| Defendants | | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, by and through Counsel, provide this Memorandum in Opposition to Defendant's Motion to Dismiss [RE#18]. Before addressing the law, it is important to recount the facts which, for purposes of responding to a Motion to Dismiss, the Court must accept as true and are contained within the Complaint.

**I.      Facts**

Plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark are all citizens and residents of the Commonwealth of Kentucky, residing in Fayette, Mercer, and Grayson Counties, respectively. (Pl's Verified Compl., RE#1, ¶5).

Defendant Hon. Andrew Beshear is the duly elected Governor of Kentucky. He is sued in his official capacity. (Pl's Verified Compl., RE#1, ¶8). Governor Beshear was an accused to an impeachment petition under KRS 63.070. *Id.* As such, he is entitled to enforce, and he has threatened, and continues to threaten, the enforcement of, provisions of that statute. *Id.*

Defendant Melissa Bybee-Fields is the duly appointed Clerk of the Kentucky House of Representatives. (Pl's Verified Compl., RE#1, ¶9). She is sued in her official capacity. *Id.*

1

Clerk Bybee-Fields is sued because it is her ministerial duty to tax, as costs, the costs called for in KRS 63.070.[1]  *Id.*

On or about January 8, 2021, Plaintiffs Andrew Cooperrider, Tony Wheatley, Jacob Clark (collectively the "Beshear Petitioners"), and a fourth individual submitted a petition with the Kentucky House of Representatives requesting redress of injuries, to include the remedy of the impeachment of Governor Andrew Beshear, for, among other things, repeated federal constitutional violations by the Governor as determined by this and other federal courts, in *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Roberts v. Neace*, 457 F. Supp. 3d 595 (EDKY 2020); *Ramsek v. Beshear*, 468 F. Supp. 3d 904 (EDKY 2020).   (Pl's Verified Compl., RE#1, ¶12).  The petition was supported by dozens of other Kentucky residents as affiants, and approximately another 100,000 Kentucky residents submitted supporting petitions.  *Id.*

On or about January 13, 2021, Plaintiffs Michael and Caron VanWinkle (collectively the "Goforth Petitioners") submitted a petition with the Kentucky House of Representatives requesting redress of injuries, to include the remedy of the impeachment of State Representative Robert Goforth, for, among other things, his pending felony charges related to the strangulation of his wife with an ethernet cord among other domestic violence directed towards her.   (Pl's Verified Compl., RE#1, ¶13).  This petition was supported by approximately a dozen other Kentucky residents.  *Id.*

On or about January 22, 2021, Plaintiffs John Does 1-3, through their Counsel, Plaintiff Kevin Glogower, Esq., (collectively the "Cameron Petitioners"), with another affiant, and Jennifer Smith, submitted a petition with the Kentucky House of Representatives requesting

---

[1] The House Clerk is not entitled to legislative immunity for the claims and actions complained of.  *Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015); *Powell v. McCormack*, 395 U.S. 486, 506, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).

2

redress of injuries to include the remedy of the impeachment of Attorney General Daniel

Cameron, for, among other things, grievances related to his handling of the investigation and

presentation of evidence before the Jefferson County Grand Jury related to the death of Breonna

Taylor.  (Pl's Verified Compl., RE#1, ¶14).

On February 23, 2021, all three petitions were dismissed.  (Pl's Verified Compl., RE#1,

¶15).  All of those dismissals indicated an intention to tax the "costs of investigation" to the

Petitioners in all three petitions, which included attorney fees and expert witness fees.  *Id.*

Of particular note, and as respects the Beshear Petitioners, the dismissal order did not find that

the grounds for the petition were baseless or frivolous, and there was no finding that the petition

was brought in bad faith.  Rather, the committee found that the Governor's repeated violations of

the United States Constitution did not rise to an impeachable offence.  *Id.*

On March 3, 2021, Governor Beshear submitted a cost bill application to the

Impeachment Committee seeking, among other things, that "[t]he Governor respectfully requests

the Committee to award these costs pursuant to KRS 63.070, and to order the remaining

Petitioners to reimburse the Commonwealth for these expenses."  (Pl's Verified Compl., RE#1,

¶16).  See Exhibit 1.  In total, the Governor sought $17,730.85 in fees and costs from these

petitioners.

17.  *Id.*  In the same vein, the Kentucky Attorney General, perhaps recognizing the significant

First Amendment issues associated with taxing costs against people for the exercise of well-

established First Amendment rights, expressly declined to seek cost reimbursement.  *Id.*

On March 11, 2021, the undersigned counsel for the Beshear Petitioners sent

communication to the Governor, requesting his position on whether or not the Governor would

seek enforcement of the full amount of the fees and costs against the petitioners.  (Pl's Verified

Compl., RE#1, ¶18).  There were back and forth communications related to same, which is contained at Exhibit 2.  The bottom line is this: the Governor submitted a pleading seeking reimbursement of costs and has refused to disclaim any intention to seek same.  The Governor's statements and actions expressly affirm his belief that recovery of costs against any impeachment petitioner is lawful and enforceable, which is the crux of this action.

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $42,444.05 to the Beshear Petitioners.   (Pl's Verified Compl., RE#1, ¶19).  The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, thus indicating they will not entertain arguments about the constitutionality of imposing such fees.

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Cameron Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $7,597.36 to the Cameron Petitioners.   (Pl's Verified Compl., RE#1, ¶20).  The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, thus indicating they will not entertain arguments about the constitutionality of imposing such fees.  *Id.*

On March 12, 2021, the Kentucky House Impeachment Committee sent a letter to the Goforth Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $12,457.36 to the Goforth Petitioners.   (Pl's Verified Compl., RE#1, ¶21).  The Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, thus indicating they will not entertain arguments about the constitutionality of imposing such fees.  *Id.*

4

Therefore, Plaintiffs have exhausted their remedies.  (Pl's Verified Compl., RE#1, ¶22).

In the meantime, the House Impeachment Committee has approved the foregoing amounts to be

taxed (though the Clerk has yet to tax them, due solely to this litigation).[2]

As of the date and time this matter was filed, there has been no filing in state court to

seek to enforce any cost of investigation and, further, no final costs of investigation under K.R.S.

63.070 have been determined or assessed.  (Pl's Verified Compl., RE#1, ¶23).

Plaintiffs seek injunctive and declaratory relief that K.R.S. 63.070 is unconstitutional,

facially and as-applied to them.  (Pl's Verified Compl., RE#1, ¶24).

<u>The Challenged Statute</u>

KRS 63.070(1) provides: "In a proceeding for impeachment … if the committee reports

against the petition and the report is not overruled by the house petitioned, the petitioner shall be

liable to witnesses and to the accused for the costs of investigation before the committee. These

costs shall be taxed by the clerk of the house appointing the committee."  (Pl's Verified Compl.,

RE#1, ¶25).  The statute does not define what it means for a committee to report "against the

petition".  (Pl's Verified Compl., RE#1, ¶26).  As pertains to this matter, a "report against the

petition" purportedly includes the dismissal of the petition in 3 cases, but not in the other 100+

cases filed contemporaneously.  As such, the statutory language makes it impossible for a

petitioner to determine in advance whether costs of the committee may be imposed against the

petitioner.  (Pl's Verified Compl., RE#1, ¶ 27).

KRS 63.070(3) provides: "Costs taxed pursuant to this section may be recovered on

motion, after five (5) days' notice, in a Circuit Court."  (Pl's Verified Compl., RE#1, ¶28).  What

such "costs" may include is not outlined in statute or case law.  In the present case, "costs"

---

[2] https://youtu.be/6VRlYWgHQi0 (last visited 5/3/2021).

purportedly include the legislature's own costs for multiple outside counsel hired by the committee for its own use, "expert" witnesses who were not available for review or cross-examination by the petitioners, and even staff and Kentucky State Police time spent with the committee. (Pl's Verified Compl., RE#1, ¶29). No other legislative committee formed for any other purpose may charge its own attorney, expert, or staff costs to a citizen or petitioner who brings concerns before it. (Pl's Verified Compl., RE#1, ¶30).

These statutory provisions do not require any finding that, prior to the imposition of fees, there is any determination that the submitted petition is: (1) frivolous; (2) submitted in bad faith; (3) unreasonable; or (4) meant to harass prior. Instead, the provisions provide that substantial penalties be imposed on all petitioners unless the full House and Senate actually, successfully impeach the person named in the petition. (Pl's Verified Compl., RE#1, ¶31). This serves to chill the exercise of a core freedom. *Id.*

These provisions are not the only mechanisms under Kentucky law under which Kentucky's legislative branch receives reports of potential misconduct. (Pl's Verified Compl., RE#1, ¶32). For instance, KRS 6.686 provides the means to submit reports of violations of legislative ethics, but provides for the award of "costs" only if the petition is filed in clear bad faith and the allegations therein are knowingly false. *Id.* Even under those circumstances, the costs awarded do not include the costs of the Legislative Ethics Committee for its counsel, or its investigators or its experts. *Id.*

Kentucky's General Assembly members regularly receive reports and petitions by citizens on a range of topics, including whether to pass or not pass legislation on an entire host of topics and issues. (Pl's Verified Compl., RE#1, ¶33). These non-impeachment citizen petitions can, and do, generate significant legislative and other governmental resources and expenses for

6

investigation and resolution, yet they do not have provisions to award costs where the petitions are deemed unsuccessful.  (Pl's Verified Compl., RE#1, ¶34,35).

Even worse, the impeachment petition statute is viewpoint based: citizen petitions that request impeachment are subjected to liabilities, while citizen petitions that oppose impeachment are not.  (Pl's Verified Compl., RE#1, ¶36).

No distinction is drawn between the contents of a petition which requests impeachment, as one of many proposed legislative actions that can be taken, versus one focused only on impeachment.  (Pl's Verified Compl., RE#1, ¶38).  A petition may contain dozens of requests for relief, but petitioners still may be exposed to the assessment of punitive and chilling fees and costs if "impeachment" is also referenced.  *Id.*  One must look at, and assess, both the contents and viewpoint of a petition to determine whether it seeks impeachment, versus the entire list of topics that do not incur the penalty.  *Id.*

The law has a clear chilling effect on those who wish to bring concerns to the legislature and to hold their elected officials accountable.  (Pl's Verified Compl., RE#1, ¶42).

I.    **LAW AND ARGUMENT**

   **A.  Standard of Review**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citations omitted) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This Court must construe the complaint in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. *See Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008).

**B.  The Governor is not immune under the Eleventh Amendment**

The Governor first argues he is immune under the Eleventh Amendment.  *Ex Parte Young*, 209 U.S. 123 (1908) makes clear that is not the case.  The Governor expressly sought to have his costs and attorney fees awarded and has refused to retreat from that position.  (Pl's Verified Compl., RE#1, ¶16, Exhibit 1).  Statutorily, he is entitled to enforce the provisions against the Plaintiffs.  KRS 63.070(1) is clear that the liability is "to the accused," rather than to the legislature.  And KRS 63.070(3) provides: "Costs taxed pursuant to this section may be recovered on motion, after five (5) days' notice, in a Circuit Court."  The Governor actually attempted the first part of this "recovery" when he filed with the House a document in which he stated: "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS 63.070, and to order the remaining Petitioners to reimburse the Commonwealth for these expenses."  (Pl's Verified Compl., RE#1, ¶16, Exhibit 1).

This statement by the Governor affirms his continuing demand for penalties from not just the Petitioners who questioned him, but any other person the legislature sent a bill to.  It is beyond disingenuous for the Governor to now argue that even though he filed the demand for costs and fees, and is before this Court still refusing to withdraw that demand, that he is not an enforcer of the challenged provision.

Thus, the response to the Governor's Eleventh Amendment contentions can be found in *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015).  In that case, the Sixth Circuit explained that *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) did not apply, because the Plaintiffs sought to enjoin enforcement of a statute.  As in *Russell*, KRS 63.070 envisions multiple state actors working together to jointly, not severally, enforce what they perceive to be the statutory mandate.

8

First among these is the legislature, which considers the impeachment petition. Second is the House Clerk, who taxes costs. And third are the accused and witnesses, who are listed in the statute as individuals or entities that petitioners are liable to. As in *Russell*, the fact that the Governor is one of those empowered to enforce the statute, here through the Circuit Court action, is sufficient to find him a proper party to this action and to defeat Eleventh Amendment immunity under *Ex Parte Young*. As the Sixth Circuit explained in *Russell*, "*Young's* enforcement element is not confined to criminal actions, **but is satisfied by a government official's execution of a statute in civil actions as well**." 784 F.3d 1037 at 1048. (emphasis added). "*Young's* applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Id.* at 1049. "This is such a situation." *Id.*

On March 11, 2021, the undersigned counsel for the Beshear Petitioners sent communication to the Governor requesting his position on whether or not the Governor would seek enforcement of the fees and costs against the petitioners. (Pl's Verified Compl., RE#1 ¶ 18). There were back and forth communications related to same, which are contained at Exhibit 2 of the Complaint. *Id.* It is clear from that documentation and the filings before both the legislature and this Court that the Governor expressly seeks costs to be reimbursed by private citizens because they exercised well-established First Amendment rights, and that the Governor refused in his response to disclaim any intention to seek same. *Id.*

It is not difficult to dispense with the Governor's arguments in this regard when one considers the fact that if he is enjoined from enforcing the statute (the relief sought against him), he cannot then go into Circuit Court, as he is authorized to do under KRS 63.070. Without

question, this would provide Plaintiffs with meaningful relief. This, of course, is the very point of the *Ex Parte Young* exception, as explained by the Sixth Circuit in *Doe v. Dewine*, 910 F.3d 842 (6th Cir. 2018). At least as to these Plaintiffs, where the Governor is an accused under the statute, he is "actively involved with administering" the statute. *Id.* at 849. He (and no one else) is entitled to go into Circuit Court and tax these costs against these Plaintiffs. These are actions against the Plaintiffs' interests sufficient to trigger the *Ex Parte Young* exception. *Doe*, 910 F.3d 842 at 849; *Russell*, 784 F.3d at 1048. And, as in *Doe* and *Russell*, there is a realistic probability that the Governor will enforce the statute against the Plaintiffs (indeed he asks at pages 11 and 12 of his motion for this Court to permit him to enforce the statute against the Plaintiffs in state court).

### C. The claims are ripe

The Governor next erroneously argues that Plaintiffs' claims are not ripe. "A plaintiff meets the injury-in-fact requirement—and the case is ripe—when the threat of enforcement of that law is "sufficiently imminent." *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014). This occurs when (1) the plaintiff alleges "an intention to engage in a course of conduct" implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is "credible." *Id.*

Here, Plaintiffs already engaged in a course of conduct implicating the Constitution, and the threat of enforcement of the statute against them by the Governor is more than credible. Crushing cost bills were submitted by the Governor and others to the legislature, which it then approved.[3] The _only_ thing keeping these costs from being taxed against Plaintiffs by the Clerk, and collected by the Governor, is this litigation. This Court is not required to wait until these

---

[3] https://www.youtube.com/watch?v=6VRlYWgHQi0 (last visited 4/27/2021).

unconstitutional penalties are actually extorted from these citizens, and placed in the state bank account, before finding the case ripe. Ripeness is clear and the injury done is certain.

"The question is whether [Plaintiffs] face[] a 'credible threat of enforcement' for engaging in that speech." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016). "The answer turns on whether the [Committee and Governor's communications] carried with it a valid threat of enforcement. It did." *Id.* As in *Winter*, the Governor's communications to the Impeachment Committee and to the undersigned make clear there is a valid threat of enforcement. The claims are ripe.

Yet another analogous case is *Hill v. Snyder*, 878 F.3d 193, 213-215 (6th Cir. 2017). There, as here, we deal not with an abstract question, but pre-enforcement review and facial challenges to statutes. *Hill* relied upon *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 399 (6th Cir. 2001) (finding that a group of plaintiffs could challenge an ordinance's "judicial review provisions" even before seeking the permits that were the subject of the ordinance). Again, the only thing that remains to be done here is for the Governor to go to state court and tax unconstitutional penalties upon the Plaintiffs for their exercise of protected speech, and chilling any further such speech, based solely on the viewpoint of that speech.

If this litigation fails, there are plenty of *indicia* in this record, from the Governor's own filings with the impeachment committee, to his refusal to disclaim his intention to enforce, along with his Response in Opposition to the Preliminary Injunction filed with this Court reflecting his intention to collect the amounts in state court, that leave no doubt the Governor immediately will enforce. The claims are ripe.

11

**D.  No Abstention doctrines apply here**

Before addressing the Governor's abstention argument, it is important to note that the Governor does not merely want this Court to abstain, but rather, he asks that this Court "Dismiss The Action." (Motion, at page 8, PageID#130).  "If these claims have merit, a question that has nothing to do with the concept of abstention, a district court has no discretion to dismiss them altogether." *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010).  "We have seen this movie before. Each time, when a district court dismissed claims that at most it should have stayed, we vacated the order." *Id.*  And so, before we proceed below to demonstrate that abstention is not appropriate, it is important to note that abstention involves a stay, not a dismissal.

    1.  <u>*Pullman* abstention does not apply, and Sixth Circuit case law directs that even if it does, or if this Court should choose to certify the questions of law, the Court should adjudicate the Preliminary Injunction first before abstaining</u>

*Pullman* abstention in this case is not proper.  The Governor claims that this Court should "abstain" from adjudicating this matter under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941).  At the outset, *Pullman* abstention, as this exception has come to be called, does not "involve the abdication of federal jurisdiction, but only the postponement of its exercise." *Harrison v. NAACP*, 360 U.S. 167, 177 (1959).

*Pullman* abstention, or even certification, is only appropriate where the statutory questions will "render unnecessary or substantially modify the federal constitutional question." *Jones v. Coleman*, 848 F.3d 744, 752 (6th Cir. 2017).  The Sixth Circuit likewise observed that abstention is "the exception and not the rule."  848 F.3d 744 at 754.

In the present case, obtaining a statutory construction of K.R.S. 63.070 will not obviate this action.  The impeachment committee imposed its own costs on the Plaintiffs over and above the costs claimed by the Governor.  Even if the Governor is not entitled under state law to

attorney fees for his staff's work, he is still entitled to recoup these other costs.  In other words, the state law questions involve merely the *__amount__* of the punitive financial sanction for the exercise of well-established First Amendment rights, but not *__whether__* or not the exercise of such rights will be, and are being, punished.  Thus, abstention – or even certification – is not appropriate here.  If a challenged state law is not fairly subject to a state court interpretation that will render it constitutional, the District Court should not abstain. *Babbitt v. United Farm Workers*, 442 U.S. 289, 306 (1979); *Kusper v. Pontikes*, 414 U.S. 51, 54 (1973); *Harman v. Forssenius*, 380 U.S. 528, 534 (1965); *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 207-208 (6th Cir. 1983).

Indeed, the U.S. Supreme Court has been clear that *Pullman* abstention cannot apply unless there is a reasonable interpretation that will avoid the federal constitutional question altogether – and here, that is not the case.  *Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984); *see, also, Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011).

More significantly, this case has First Amendment implications beyond this case.  The existence of the statute in question chills free speech – it keeps poorer citizens from invoking well-established constitutional rights.  That is the situation regardless of the ultimate amount of the potential penalty involved, which is the only real state law question.  It involves facial viewpoint and content discrimination, and no reasonable interpretation cures that issue.

Moreover, *Pullman* abstention is not appropriate where, as here, there is no state court action; rather, certification of questions of law is the preferred remedy if state statutes are subject to a construction that can avoid a constitutional question (something we submit is not the case here).  Courts recognize that abstention is often improperly burdensome on parties and impedes the right to recovery and that certification may be used to alleviate some of that burden.  "The

13

application of *Pullman* abstention results in significant financial and time burdens on the parties and acts almost as an exhaustion requirement, requiring the federal court plaintiff to seek an authoritative state court construction of the state-law issue before a federal court will entertain her claim." *Jones*, 848 F.3d 744, 750. "Since the Supreme Court created the *Pullman* doctrine, most states have adopted certification procedures, which permit the state's highest court to consider novel questions of state law that have been 'certified' by a federal court." *Id.* "Certification today covers territory once dominated by a deferral device called '*Pullman* abstention' … Certification procedure, in contrast, allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of an authoritative response." *Id.*, *citing Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997). While Plaintiffs do not agree that certification is appropriate in this case, abstention is clearly improper.

This case raises clear First Amendment issues. This Court should be guided by decisions both in the Sixth Circuit and U.S. Supreme Court which stress that Courts should be particularly reluctant to engage in *Pullman* abstention "in cases involving facial challenges based on the First Amendment," such as the present matter. *Id.*

The Sixth Circuit has cautioned against engaging in the sort of speculation that the Governor does here: namely that abstention might be appropriate under *Pullman* to permit state courts to have the first crack at an issue to possibly vindicate federal rights. *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019), *citing Zwickler v. Koota*, 389 U.S. 241, 251, 88 S. Ct. 391, 19 L. Ed. 2d 444 (1967) (explaining that *Pullman* "abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim").

*Pullman* abstention does not apply.

14

2.  <u>*Burford* Abstention does not apply, and there is a heavy presumption against it applying</u>

The Governor next erroneously contends that abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) is appropriate.  It is not.  *Burford* abstention is appropriate only "where timely and adequate state-court review is available and (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002).

Most significantly, here, there is no state agency process, or regulation of a field, that is required for *Burford* abstention to apply.  *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009).  In *Saginaw Hous. Comm'n*, the Sixth Circuit explained that *Burford* abstention often protects "complex state administrative processes from undue federal interference."  *Id.*  Even then, the Sixth Circuit observed that "it does not require abstention wherever there exists such a process." *Id.* "Because *Burford* abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, looking behind the action to determine whether it implicates the concerns of *Burford* is necessary." *Id.*  Here, there is no state administrative scheme.

Further, obtaining a statutory construction of K.R.S. 63.070 will not obviate this action.  If a challenged state law is, as is the case here, not fairly subject to a state court interpretation that will render it constitutional, the District Court should not abstain. *Babbitt*, 442 U.S. 289, 306; *Kusper*, 414 U.S. 51, 54; *Harman*, 380 U.S. 528, 534; *American Motors Sales Corp.*, 708 F.2d 202, 207-208.  The statute, both as written and as applied, imposes penalties in costs and

15

fees amounting to nothing short of a tax against citizens who bring critical public concerns before the legislature in an impeachment petition. The language in question cannot be read in a manner to make it constitutional. For this reason, abstention serves no valid purpose and only complicates and delays the Plaintiffs' right to relief.

This case presents clear questions of federal law involving the First Amendment, not thorny issues of state law and an administrative scheme, and thus, *Burford* abstention is inappropriate. *Stein v. Thomas*, 672 Fed. Appx. 565 (6th Cir. 2016). Even if difficult questions of state law were present here (and they are not), that is not a sufficient ground to invoke *Burford* abstention. *Gray v. Bush*, 628 F.3d 779 (6th Cir. 2010). Nor is this the kind of case that bears on coherent state policy that would typically be sufficient to trigger *Burford* abstention. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554 (6th Cir. 2010) (nuisance abatement statutory interpretation not sufficient to trigger *Burford*).

Furthermore, the delay inherent in a state court adjudication process renders *Burford* abstention inappropriate here, particularly with First Amendment rights at stake. *American Motors Sales Corp.*, 708 F.2d 202, 207-208.

Again, this case has First Amendment implications that extend well beyond this case. The existence of the statute in question chills free speech – it absolutely keeps poorer citizens from invoking constitutional rights – and it chills all but the politically connected who can have legislators themselves introduce an impeachment bill. And that is the case regardless of the ultimate amount of the potential penalty involved, which is the only real state law question. It involves facial viewpoint discrimination, and no reasonable interpretation cures that issue. *Burford* abstention does not apply.

3.  <u>*Colorado River* abstention cannot apply in the absence of a parallel state case, and there is no such case here</u>

The Governor next erroneously argues that abstention is appropriate under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). "But where, as here, there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist." *Gottfried v. Medical Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998). *Colorado River* explores five factors to influence the abstention decision: (1) which court first assumed jurisdiction over the res or property involved, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, (4) the order of filing for the state and federal actions, and (5) the presence of a federal question. *Id.* at 329.

There is no state court action that has jurisdiction here, so the first factor does not support the application of *Colorado River* abstention. Nor is there any inconvenience of the federal forum to adjudicate federal issues. Further, there is no state action filed, and there is a federal question. The *Colorado River* factors weigh strongly against abstention.

"In *Colorado River*, the Supreme Court noted that despite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' 424 U.S. at 817 . . ., considerations of judicial economy and federal-state comity may justify abstention in situations involving the ***contemporaneous*** exercise of jurisdiction of state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (emphasis added); *see, also*, *Crawley v. Hamilton Cty. Comm'rs,* 744 F.2d 28, 31 (6th Cir. 1984) (noting, in September 1984, "[a] necessary requirement for application of this Colorado River doctrine, however, is the presence of a parallel state proceeding. In our case, there is no such proceeding. In [state court] little, if any, action has been taken since December 23, 1980…").

17

*Colorado River* abstention simply does not apply here, where there is no state court action.

### 4. *Younger* abstention only applies to criminal and administrative enforcement cases, and cannot apply in the absence of a formal court or administrative proceeding, which is not present here

Lastly, as to abstention, the Governor erroneously argues that abstention under *Younger v. Harris*, 401 U.S. 37 (1971) is appropriate. First, the civil action that the Governor can bring under the challenged statute is not within the three recognized types of claims that are covered by *Younger* abstention. Such abstention is only appropriate for actions involving "(1) federal intrusion in ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).

Here, there is nothing criminal involved in these proceedings. Knowing this, the Governor speciously argues that "impeachment proceedings are civil enforcement proceedings akin to criminal punishment." Not surprisingly, he cites no authority for this contention. In fact, we do not deal here with the impeachment of a public official, but rather the failure to impeach, and the consequent imposition of an unconstitutional financial penalty for that failure.

In many respects, *Sprint Communs., Inc.* constituted a clear trend away from the application of Younger. The Supreme Court began with its observation that *Younger* abstention was the exception, not the rule. *Id., citing New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) (NOPSI) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts."). And, absent a filed criminal proceeding or an action enforcing the judgment of its courts, "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e]

18

to decide a case in deference to the States.'" *Id.* at 73. The Supreme Court in *Sprint Communs., Inc.* was clear, however, that *Younger* abstention did not apply in that case, even though: (i) the case involved a pending administrative and state court process; and (ii) even though the state proceedings would provide an adequate forum to adjudicate the federal questions. *Id.* at 75-79.

There is no criminal action pending here, and there is no state court order that is being enforced here. Instead, the Governor attempts to invoke the second line of *Younger* exception cases, regarding certain civil cases. But, those are only appropriate in cases that are "akin to a criminal prosecution." *Id.* at 79. And then those cases, the Supreme Court has explained, involve a state investigation, and ultimately the filing of a formal complaint against the party who has filed the action. *Id.* Equally significantly, it cannot be said that the process before the Impeachment Committee is or was "akin to a criminal prosecution."

These Plaintiffs were not afforded the ability to call witnesses (including a lack of any compulsory process afforded to them to do so), could not have an attorney present at the proceeding involved, could not even submit questions to the committee for cross-examination, could not present evidence in any sort of formal or informal hearing process. *Cf. Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017). Perhaps most significantly, the Committee explicitly refused to accept or consider any arguments that the statute itself was unconstitutional or its construction was not appropriate, stating "[a] blanket objection to all costs will not be considered."[4] This is hardly a proceeding "akin to a criminal prosecution." *See, also, Online Merchs. v. Cameron*, 468 F. Supp. 3d 883 (EDKY 2020) (explaining that *Younger* did not apply because, in part, the results were a simple investigation rather than a full-blown adjudicatory process).

---

[4] https://apps.legislature.ky.gov/CommitteeDocuments/343/13297/Bill%20of%20Costs%20-%20Gov.%20Beshear%20(FINAL).pdf (last visited 5/3/2021)

19

As an aside, the Governor's position on *Younger* abstention is interesting and consists of a hopeless tension: to trigger the civil proceeding exception under *Younger*, the proceeding must be "characteristically initiated to sanction the federal plaintiff." *Sprint*, 571 U.S. at 79. That was certainly not the case at the time the impeachment proceedings were initiated before the Committee. But, is the Governor now admitting that the taxation of costs is not about recouping spent costs, but instead about punishing Plaintiffs for their protected speech? That is the only way to potentially trigger the *Younger* exception he argues applies. And so, in a sense, that is a startling admission.

But equally significant, there is no pending state court action that has been filed (yet), and, in the absence of such an action (that actually preceded the filing of this case), *Younger* simply does not apply. Case law is clear that there must have been an ongoing state judicial proceeding when the complaint was filed. *Doe*, 860 F.3d at 369 (*citing Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432-34 (1982)). The Sixth Circuit made this point clearly in *Winter*, 834 F.3d 681 at 688. *Winter*, and its handling by the Sixth Circuit, is particularly on point. There, as here, there were administrative letters sent to parties threatening enforcement. *Id.* But that was not enough to trigger *Younger*: rather, a formal proceeding akin to a court action had to be filed. *Id.* Clearly, that is not and has not been the case here (yet). *Id.* And, as in *Winter*, this lawsuit was filed before those proceedings occurred. *Id.* There is no pending, ongoing, state judicial proceeding here, and thus *Younger* does not apply.

Further, the act of impeachment is solely a legislative act, unreviewable in the courts. *Nixon v. United States*, 506 U.S. 224 (1992). This, in and of itself, takes this matter outside *Younger. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368

(1989).("NOPSI") (finding that *Younger* abstention did not and could not apply to state council utility ratemaking procedure as it was essentially a legislative act and not judicial in nature).

And finally, several *Younger* exceptions apply.  First, the flagrant unconstitutionality exception applies, "a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  *Younger*, 401 U.S. at 53-54.  As the Court is aware, the challenged statute constitutes facial viewpoint discrimination.  It is a clear First Amendment violation.

Second, the harassment exception also applies.  The court in *Younger* discussed *Dombrowski v. Pfister*, 380 U.S. 479 (1965), as an example of the harassment exception, because that case involved repeated threats by prosecutors designed to discourage individuals from asserting their constitutional rights.  Here, the purpose of taxing costs is the same: the suppression of speech and a design to discourage individuals from asserting their constitutional rights, and, if there were any doubt but that this were the case, public statements by the Governor, and others, makes clear that it was, and is, their intention to suppress core free speech through the taxation of costs in this action.[5]

## II.    CONCLUSION

The Governor's Motion to Dismiss should be denied.

---

[5] https://spectrumnews1.com/ky/lexington/news/2021/03/13/ky--impeachment-petitions-come-with-thousands-worth-of-costs (last visited 5/3/2021); Unsuccessful Impeachment Petitioners Face Thousands in Fees | Kentucky News | US News (last visited 5/3/2021).

Respectfully Submitted,

/s/Christopher Wiest
Christopher Wiest (KBA 90725)
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
chris@cwiestlaw.com
513.257.1895

/s/Thomas Bruns
Thomas Bruns (KBA 84985)
Bruns Connell Vollmar Armstrong, LLC
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513.312.9890

/s/Zach Gottesman
Zach Gottesman (86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Counsel for the Beshear Petitioners*

/s/Anna Whites
Anna Whites
327 Logan Street
Frankfort, KY 40601
annawhites@aol.com
502.229.1063
*Counsel for the Cameron and Goforth Petitioners*

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing via the Court's CM/ECF system, which will provide notice to all counsel or parties of record this 3 day of May, 2021.

/s/ Christopher Wiest