UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| ANDREW COOPERRIDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | Civil No. 3:21-cv-00012-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW BESHEAR, Governor of the | ) | **OPINION** |
| Commonwealth of Kentucky, | ) | **&** |
| | ) | **ORDER** |
| and | ) | |
| | ) | |
| MELISSA BYBEE-FIELDS, Clerk of | | |
| the Kentucky House of Representatives, | | |
| | | |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In the *Aeneid*, Roman poet Virgil prescribed "fortune favors the bold."[1]  But Virgil, it appears, did not anticipate KRS § 63.070.   Under that statute, fortune does not always side with a citizen emboldened to petition his government for the impeachment of an elected official. Instead, if that citizen's petition is unsuccessful, he is deemed "liable to witnesses and to the accused for the costs" of having sought impeachment.  KRS § 63.070(1).  Present before the Court is a Moton to Dismiss filed by Governor Beshear in which he argues Plaintiffs' claims against him are not ripe.  [R. 18.]  Having reviewed all briefing, the Court **GRANTS** the Governor's Motion [R. 18.]

---

[1] Virgil, *Aeneid*, 10.284, (1470).

**I**

In January 2021, three separate groups of citizens filed petitions in the Kentucky House of Representatives seeking redress of alleged injuries and the impeachment of Governor Andrew Beshear, State Representative Robert Goforth, and Attorney General Daniel Cameron.[2]  [R. 3 at 5-6.]  In February 2021, upon review by the House Impeachment Committee, all three petitions were dismissed and the "dismissals indicated an intention to tax the 'costs of investigation' to the Petitioners […], which included attorney and expert fees."[3]  *Id.* at 4.  On March 3, 2021, Governor Beshear "submitted a cost bill application to the Impeachment Committee," which stated that "[t]he Governor respectfully requests the Committee to award these costs pursuant to KRS § 63.070, and to other the remaining Petitioners to reimburse the Commonwealth for these expenses."  *Id.*  Governor Beshear calculated, in total, $17,730.85 in fees and costs spent in his defense during the impeachment proceedings.  *Id.*  Attorney General Daniel Cameron "expressly declined to seek cost reimbursement."  *Id.*

On March 12, "the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners, totaling $42,444.05 to the Beshear Petitioners."  [R. 3 at 5.]  Further, "[t]he Committee likewise indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicat[ed] they will not entertain arguments about the constitutionality of such fees."  *Id.*  Similarly, the Cameron Petitioners were sent a

---

[2] Each group sought the impeachment of one government official independently of the other groups.  No group was involved in more than one petition for impeachment.
[3] Plaintiffs further state that, in regard to the Beshear Petitioners, "the dismissal order did not find that the grounds for the petition were baseless, frivolous, and no finding was made that the petition was brought in bad faith; rather, the committee found that the Governor's repeated violations of the United States Constitution did not rise to an impeachable offense."  [R. 3 at 4.]

letter indicating that they owe $7,597.36 in costs, while the Goforth Petitioners were sent a letter indicating that they owe $12,457.36 in costs.  *Id.*

Plaintiffs now challenge the constitutionality of KRS § 63.070 [R. 3 at 6.]  KRS § 63.070(1) provides as follows:

> In a proceeding for impeachment … if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee.

KRS § 63.070(1).  The statute does not define "reports against the petition."  And Plaintiffs allege that "100+" other cases, filed contemporaneously with the three impeachment proceedings, were not deemed "reports against the petition," but that these three dismissals were deemed as such.  [R. 3 at 6.]  The statute also fails to define "costs of investigation" and Plaintiffs state that the definition is "not outlined in statute or case law."  *Id.* at 7.   Nonetheless, the House has deemed "costs" to include "the legislature's own costs for multiple outside counsel hired by the committee for its own use, 'expert' witnesses who were not available for review or cross-examination by the petitioners, and even staff and Kentucky State Police time spent with the committee."  [R. 3 at 9.]

Moreover, KRS § 63.070 provides a means to collect the costs. KRS § 63.070(c) states "[c]osts taxed pursuant to this section may be recovered on motion, after five (5) days' notice, in a Circuit Court."  *Id.* at 7.  The statute, however, does not indicate whether the House Clerk is the party who must move in Circuit Court to recover the costs taxed or whether the witnesses and the accused must move for recovery.  *See id.*  Plaintiffs argue that the required payment of costs by those who petition the government for impeachment violates the First and Fourteenth Amendments and request a preliminary injunction to enjoin Defendants from enforcing KRS

3

§ 63.070.  Though the House Clerk has agreed that she "will not tax costs related to the impeachment petitions at issue in this case" "until the conclusions of all litigation (including appeals) in this matter," she has otherwise not responded in this matter.[4]  In response, Governor Beshear seeks dismissal from this matter.  [R. 17.]

## II

Governor Beshear moves for his dismissal from this matter under the doctrine of ripeness.  [R. 18.]  Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense.  A motion to dismiss under Rule 12(b)(1) is different from a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it.  When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true.  *Id.*

The doctrine of ripeness focuses on the extent of the actions taken by the defendant.  To determine whether a matter is ripe, a court considers whether the issues are fit for judicial review and if the parties will suffer hardship if the court withholds consideration.  *Abbott Laboratories v. Gardner*, 387 U.S. 138, 148-149 (1967).  Generally speaking, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).

---

[4] By Proposed Agreed Order, Defendant Bybee-Fields and Plaintiffs agree to permit Ms. Bybee-Fields to answer within fourteen days of the Court's acceptance or rejection of the terms of its Agreed Order [R. 17.]  This proposed agreement, however, is the not the equivalent of the Court's approval of an extension of time.  Nonetheless, the Court will extend Ms. Bybee-Fields's deadline to Answer or otherwise plead in this matter by subsequent Order.

4

Courts weigh three factors when deciding whether to addresses issues presented for review: (1) the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass," (2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims," and (3) "the hardship to the parties if judicial relief is denied at [this] stage." *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995) (citations omitted).  But a case is deemed ripe when the threat of enforcement of an allegedly unconstitutional law is "sufficiently imminent"—that is, when the plaintiff alleges "an intention to engage in a course of conduct" implicating the Constitution, and (2) the threat of enforcement of the challenged law against the plaintiff is "credible." *Platt v. Bd. of Comm'rs on Greivs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014) (citations omitted)

In support of his argument that Plaintiffs' claims against him are not ripe, the Governor surprisingly focuses not on how his own lack of action has prevented a claim against him from ripening, but, instead, argues that "[b]ecause the House Clerk has not yet sought to collect the costs, Plaintiffs' claims are not yet ripe."  [R. 18-1 at 7.]  Consequently, the Governor argues, because "Plaintiffs seek relief from an injury yet to occur, that may not occur, and that may be limited or prevented by a state court," their claims are not ripe.  *Id.* at 8.  In response, Plaintiffs argue that their claims are ripe because "the threat of enforcement of [KRS § 63.070] is sufficiently imminent."  [R. 22 at 10. (citing *Platt*, 769 F.3d at 451).]  As evidence, Plaintiffs argue the Governor's submission of costs to the Impeachment Committee, in which he specifically requested "the Committee [] award these costs pursuant to KRS § 63.070, and [] order the remaining Petitioners to reimburse the Commonwealth for these expenses," constitutes

a sufficiently imminent threat of enforcement.  [R. 1 at 18; R. 22 at 10.]  Moreover, Plaintiffs argue that the Governor, when asked, has refused "to disclaim his intention to enforce" KRS § 63.070.  [R. 22 at 11.]  In reply, however, the Governor contends that he "never sought to enforce KRS § 63.070" and simply complied with the Committee's request to send in a bill of costs.  [R. 23 at 3.]

Upon review, the Court agrees with the Governor.  Although the Governor submitted his bill of costs and included language which appears to insinuate that he would like for KRS § 63.070 to be enforced, he has never explicitly indicated that he intends to seek KRS § 63.070 enforced.  Moreover, when specifically asked whether he planned to enforce the "cost bill" if he were to receive a taxation amount from the House Clerk, the Governor indicated that he was "awaiting the decision of the Impeachment Committee regarding any final order assessing costs pursuant to KRS § 63.070" before making a decision.  [R. 1 at 30.]  The Governor further clarified, once more, that he had only submitted his bill of costs because he was "direct[ly] instruct[ed]" to do so by the Impeachment Committee.  *Id.*  And though the Governor has not explicitly denounced KRS § 63.070, he has not made clear his intention to seek its enforcement.[5]  Accordingly, Governor Beshear has not, at this point, committed an action which gives rise to a ripe claim.  Consequently, Plaintiffs' claims against the Governor are not yet ripe, the Court the Governor's Motion to Dismiss is **GRANTED** [R. 18].


This the 17th day of  December, 2021.

---

[5] This is unlike the actions of the House Clerk, who, only by proposed agreement of the Parties, has agreed to "not tax costs related to the impeachment petitions" until "the conclusion of all litigation" in this matter.  [*See* R. 17.]

Gregory F. Van Tatenhove
United States District Judge