Filed Electronically

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KEVIN GLOGOWER, as representative For the Breonna Taylor Grand Jurors, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br><br> MELISSA BYBEE-FIELDS, in their official capacity, *et al* <br><br> Defendants. | CASE NO. 3:21-cv-00012-GFVT |

**PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**

\*\*\*\*

Come the Plaintiffs, Kevin Glogower, et al, and in support of the Motion to Compel Discovery Responses required by the Court's Order, R 54, state as follows:

STATEMENT OF RELEVANT FACTS

This action stems from various impeachment proceedings before the Kentucky House of Representatives. After determining that the impeachments would be heard, the House refused to allow the parties to participate in the proceedings and held a series of one-sided closed meetings on the matter. The House also hired the Speaker of the House's counsel and another University of Kentucky law professor to testify before the legislative committee and then asked those law professors to bill the Petitioners for their time, even though the Petitioners (Plaintiffs herein) had no opportunity to participate in the hearing or ask any questions of the law professors. No law

1

permits the House (or the professor/attorneys they hired) to charge huge fees to citizens with whom they share no professional relationship.

The House ultimately decided to dismiss the impeachment petitions as meritless, despite prohibiting production of evidence or testimony from the Petitioners to aid in that determination. The Plaintiffs herein, petitioners below, were simply never provided an opportunity to prove their allegations. As a result, even if the statute did permit costs to be assessed upon an unsuccessful petitioner, this denial renders imposition of such costs improper.

When the Plaintiffs were subjected to life-changing financial penalties, including the UK Law Professors' hourly rates of $420, pro rata shares of state expenses, and additional charges unrelated to any reasonable definition of "costs", and the House flatly refused to withdraw those bills, this federal civil rights action was filed. For more than a year these private citizens who raised genuine (and ultimately accurate) claims of serious misconduct by elected officials have suffered under the threat of these inflated bills. The often touted ability of the Clerk of the House to bring a circuit court suit to enforce payment at any time of her choosing constantly hung over Plaintiffs' heads. Every single day since the massive charges were levied brought stress and fear into the private lives of these citizens. Additionally, this Court should note that the huge invoices served on the private citizens as "costs" have already had a serious and improper chilling effect upon the public at large, as shown by the discovery response to Interrogatory #14 reflecting that <u>no impeachment petitions at all</u> were filed in 2022, as compared with the past twenty years, when multiple impeachments were filed every year. Sadly, the House has succeeded in suppressing the public's right to petition its government.

The parties, Plaintiffs and Defendant, engaged in a court conference and jointly crafted an agreed order setting guidelines for discovery and agreeing to a certain number of

interrogatories, requests for production and depositions. Defendant agreed that they were subject to discovery and consented to the discovery process in this action.

Plaintiffs filed discovery on April 11, 2022. Defendant's Response was delayed and when eventually received more than a month later, was primarily non-responsive. Defendant serially pleaded multiple objections, including general allegations of "immunity," and claimed that various documents were "privileged" without providing any privilege log or specifying which "privilege" or "immunity" applied to any particular request.

As an initial matter, Plaintiffs would show that many of Defendant's discovery responses state that the documents and information requested are on the Legislative Research Commission's website under the Impeachment Committee heading. They are not, and the House has refused to respond to Plaintiffs' demand for access to these critical documents. Review of the LRC website shows no such "impeachment committee" heading and a search of the website for relevant documents using the search tool thereon does not turn up any results. Defendant has misrepresented to this Court and counsel the location and accessibility of the entirety of the Impeachment Committee's work, documents that are essential to this case. Therefore as an initial matter the House must be directed to provide the entire file of documents requested to Plaintiffs, rather than falsely claiming that the records are already publicly available.

The Defendant House repeatedly asserts that it has no documents responsive to discovery requests, but fails to follow the discovery instructions of paragraph (I), which require: "If you are not currently in possession or control of any requested document, please list the location of the document and the individual or entity with control over the document." Defendant did not provide information as to who would have those documents. These included Request for Production of Documents #1 stating:

>Please provide a copy of the contract(s) under which Joshua Douglas and Paul Salamanca were retained for their testimony before the legislative impeachment committee.

(Id) and RFP #2, requesting:

>Please provide a copy of any contract under which Paul Salamanca was employed as counsel or otherwise by the legislature or LRC or any member thereof in the years 1/1/2020-4/10/2022.

Id. Contracts of persons employed by the state or the Legislative Research Commission have never been found privileged or inadmissible. In fact, salaries paid under such contracts are printed annually in the state's largest newspapers for public review.

Defendant refused to provide any documents in response to discovery, even falsely or inaccurately asserting that the documents "are on the LRC website", which they are not. See: Responses to Requests for Production of Documents #3, 4, and 5. Plaintiffs would note that a "get it yourself" response is inappropriate, even if the documents are in the public domain, and in this particular case, where they are NOT in the public domain or findable, is particularly improper.

A central issue in this action is whether the selective settlement with the Republican candidate who was a plaintiff in this action, while refusing to settle with the rest of the similarly situated parties, was improper. The initial (unavoidable) question is whether this partisan political decision can be characterized as a "legislative act," an essential element in any claim of "absolute legislative immunity." As the House delegated an administrative employee as the sole party Defendant, and that party is not a legislator, questions about who, if anyone, is directing her action, are key to any claims of immunity or privilege.

>Interrogatory No. 1 asked:
>
>Name the person or persons who directed or authorized the release of the Republican Senate Candidate Andrew Cooperrider from this Federal action. Please state with specificity whether any such direction came from Impeachment Chair Jason Nemes, House

4

>Speaker Osborne, House staff, Paul Salamanca, Joshua Douglas, or any other person or entity.

Interrogatory No. 2 requested similar information:

>Do you assert that the release of GOP Senate Candidate Andrew Cooperrider was a "Legislative Act" conferring absolute immunity? If so, please describe in detail the legislative process authorizing the release. Please specifically identify all hallmarks of traditional legislation associated with any such "Legislative Act."

Interrogatory No. 3 stated:

>Do you contend that Defendant Bybee-Fields signed or authorized the Cooperrider release as a legislative official? If your answer is in the affirmative, please specifically identify the statute, regulation, or legitimate legislative act authorizing this action.

Id. No response was provided to any of these clear requests. It is obvious that Defendant has failed to show any immunity or privilege at all and that the answers to specific discovery requests were non-responsive. A clear and comprehensive response to these discovery requests should be mandated by this Court.

A number of discovery questions were calculated to determine what actions were taken by the Impeachment Committee as a part of its legislative duties, versus actions taken which were not potentially privileged or were directed by non-legislative third parties. Defendant refused to answer any of those questions. See, e.g., Interrogatory #7, which asked:

>Please detail the authority under which Joshua Douglas and Paul Salamanca, in their capacity as persons testifying before a legislative committee, were permitted to charge significant fees to private citizens with whom they share no professional relationship.

Id. Also see Interrogatory #10 which requested:

>Please state whether Speaker Osborne in his official or private capacity was involved in the decision to allow his counsel, Paul Salamanca, to testify in the impeachment action and to charge significant fees to private citizens.

Id. Interrogatory No. 5 stated:

5

> Please state whether there were any telephonic (phone call or text) communications from any Executive Branch officer or counsel for same to the Chair or members of the Impeachment Committee after the impeachments were filed but before the final notice and costs were sent to Plaintiffs' counsel. If your answer is in the affirmative, please state the date(s) of such communications, the parties to such communications, and the substance of each such communication.

No substantive responses were provided by Defendant to any of these requests.

Other discovery was calculated to obtain information on who specifically authorized or directed actions related to the petitions below, including whether those could possibly be characterized as legislative action. These include Interrogatory No. 9, requesting:

> Please outline how Joshua Douglas and Paul Salamanca (the Speaker's private lawyer and two UK law professors) were determined to be appropriate "experts" in the impeachment matters and give the name(s) of the specific individuals who retained them in this matter.

Id. No responses were provided to any of those discovery requests.

Plaintiffs also propounded discovery asking why only some, rather than all, petitioners below were threatened with fines and costs below, necessitating this action and whether there was any rationale for this disparate treatment of similarly situated parties by state actors.

Interrogatory No. 6 asked:

> Please state why only certain Parties Plaintiff in each impeachment action were assessed costs, fees or fines at the legislative level while others were not.

There was no response to this question. In the Supplemental Production to Interrogatory No. 12, which asked:

> Please state whether there were impeachment actions filed in 2021 that were not referred to the legislative impeachment committee.

(Id.), and Interrogatory No. 13 requesting:

> Please state the total number of impeachment actions filed in 2021, and detail who they were filed against and the disposition of each impeachment action.

Defendant admitted that there were three more impeachment actions filed in 2021 but refused to detail any reason for the disparate treatment of those petitions.

Plaintiffs also asked why only certain Plaintiffs in this case (the Republicans) received a settlement offer while others, Democrats, minorities, senior citizens, and low income individuals, did not receive such an offer. Interrogatory No. 4 requested:

> Please specify and detail the reasons for dismissing the Republican Plaintiffs, including Senate Candidate Andrew Cooperrider, while refusing to dismiss or release the Democratic, low income, or racially diverse Plaintiffs remaining in the action.

No answer was made by the Defendant House. This lack of any response is improper and wasteful of the Court's resources. Defendant failed to comply with the Federal Rules of Civil Procedure governing discovery or to plead any applicable privilege or immunity with specificity. Defendant's actions are calculated to be opaque and patently incomplete. Defendant has acted in such a manner that Plaintiffs are forced to expend significant additional legal time and costs simply to get a clear answer. This behavior by Defendant and counsel for Defendant is not only improper, but is a slap in the face to the public which has the greatest interest in this matter. It appears that the Defendant's intent is to cost the public and the Plaintiffs time and money while continuing to conceal improper behavior. That is not something which this Court can permit to continue.

As required by the Local Rules of the Federal Court, Plaintiffs engaged with counsel for Defendant and requested more specificity in the discovery responses and/or the objections thereto. On May 16, Plaintiffs' counsel raised concerns with the inadequate, false or missing responses to particular discovery requests. The parties held a conference with this Court, and this Motion to Compel and supporting memorandum of law are filed as directed by the Court.

ARGUMENT

(A) **The House has failed to support any claim of "immunity"**

Plaintiffs file this motion pursuant to this Court's Order of 6/10/20 and request that this Court require the Defendant House to produce discovery responses sufficient to evaluate the vague claims of privilege and immunity asserted by the House. (See: House discovery responses of 6/13/22 serially alleging unspecified blanket privileges.

A claim of "absolute legislative immunity" must be decided as an initial matter in any case where it may be relied upon, and that determination is subject to immediate appeal. Absolute immunity is an affirmative defense upon which the House carries the burden of proof. *Bogan v Scott-Harris* 523 US 44, at 49 (1998). Unfortunately, the House has utterly failed in its duty to plead and prove this privilege, needlessly delaying this action and compelling the Court to Order production of what would already have been provided by any responsible litigant. Continued failure of the House to establish a specific "Legislative Act" supporting the claim of absolute immunity voids any claim of privilege. *Id.*, 523 US at 49.

The Sixth Circuit recently set out the "two factors" that the House must plead and prove before it can claim "absolute legislative immunity" as follows:

> First, we must consider whether a defendant's actions were legislative in form, i.e., whether "they were integral steps in the legislative process." Id, at 55, 118 S.Ct. 966. Second, we must ask whether a defendant's actions were "legislative in substance," i.e., whether the actions "bore all the hallmarks of traditional legislation," including whether they "reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities" of the government and the services the government provides to its constituents.

*Anders v Cuevas* 984 F3d 1166, at 1181-82 (6th Cir 2021).

The House has not attempted to prove either factor in this case because it cannot. The decision by the GOP supermajority House to release and hold harmless a Republican candidate

8

for state Senate while continuing to harass Plaintiffs herein is clearly not an "integral step in the legislative process" nor is it "legislative in substance." Indeed, "such a pointed act does not indicate a larger policy goal or budgetary concern" at all, and so cannot be considered a "legislative act." *Anders*, 984 F3d at 1182.

"The freedom of speech…protects the right of an ordinary citizen to criticize public officials … without fear of criminal or civil repercussions." *Anders*, 984 F3d at 1184. Yet here ordinary citizens, including those compelled to serve on the Breonna Taylor Grand Jury and those who sought accountability from former state representative Robert Goforth, have been singled out for severe financial, emotional and political retaliation for exercising their Federal rights. "[I]t is well established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of [28 USC] Section 1983*." Anders* 984 F3d at 1185, quoting *Barrett v Harrington* 130 F3d 246, at 264 (6th Cir 1997).

The House does not contest that Plaintiffs were engaged in a protected activity. A cursory review of the allegations made by Plaintiffs against both Attorney General Daniel Cameron and former State Representative Robert Goforth shows that the charges were consequential and of considerable public import. See: Verified Affidavit and Petition for Impeachment of AG Cameron and Petition for Impeachment of Robert Goforth. These "allegations of corrupt practices by government officials are of the utmost public concern" and constitute "core free speech principles." *Anders* 984 F3d at 1176, quoting *Marohnic v Walker* 800F2d 613 (6th Cir 1989). "Statements exposing possible corruption…are exactly the type of statements that demand strong First Amendment protections." *Anders* at 1176, quoting *See v City of Elyria* 502 F3d 484, at 493 (6th Cir 2007).

9

Over the past year since the Impeachment Committee dismissed the Plaintiffs' Petitions, finding "no merit" in the claims made therein, the citizens of the Commonwealth have found that, in fact, that the concerns raised in the Impeachment Petitions were valid. The widely televised committee meetings regarding the events of January 6 include reference to the role played by the Republican Attorney General's Association PAC in recruiting protestors by robocall. AG Cameron was not merely a member of RAGA, but was part of the RAGA Executive Committee closely overseeing its functions. It is also uncontroverted that AG Cameron did, in fact, withhold information and charging authority from the Grand Jury in the Breonna Taylor case. With regard to Representative Goforth, the claims of criminal abuse of his spouse and children have been included in a criminal action against him and the assertions of campaign finance violations and abuse of office property were affirmed in a KREF determination recommending the imposition of significant fines. Further, the allegations of "conduct unbecoming an elected official" are underscored by his guilty pleas in federal court Medicaid and Medicare fraud cases. The issues raised in the impeachment petitions were valid, honest, proven correct, and constitute appropriate exercise of free speech.

In the present case, the House released and held harmless the Republican Plaintiff who was running for state Senate, but refused to offer the same relief to the minority, low income and Democratic Plaintiffs. No valid reason for this discriminatory action has been advanced by the House.

Now, underscoring the continuing misconduct and disparate treatment of similarly situated citizens, the House offered in the last Court status hearing to release the Glogower Plaintiffs, presumably so that Attorney General Cameron will not be exposed to political discomfort during his run for Governor. The House made clear, however, that it fully intends to

continue harassing and deterring the remaining Robert Goforth Plaintiffs. This is clearly a continuation of the House's ongoing discriminatory actions for which no immunity can lawfully be claimed.

The Glogower Plaintiffs have REJECTED this offer of settlement and stand in solidarity with the remaining Plaintiffs. The Glogower Plaintiffs will not aid the House in escaping public accountability for its unlawful actions and recognize that victims of political repression must stand united against efforts to silence them.

The House faces a high bar in claiming "absolute immunity" to selectively punish these concerned citizens who spoke out against government corruption. The House would have this Court believe that releasing GOP candidate Cooperrider while continuing its attack on members of the opposition party is a mere discretionary act, depriving this Court of any power to protect the Plaintiff citizens. The House is deeply mistaken. This federal circuit has firmly rejected the "discretionary act" defense as a bar to liability for Civil Rights violations under 28 USC Section 1983. See: *Franks v Rubitschun* 312 F App'x 764, 766 & n.3 (6th Cir 2009), cited approvingly in *Anders* 984 F3d at 1179.

Clearly this Court possesses the power to protect targeted citizens from life-changing financial penalties arbitrarily imposed by the House because "nothing justifies harassing people for exercising their constitutional rights, so the deterrent effect on speech need not be great to be actionable." *Anders* 984 F3d at 1176, citing *Thaddeus-X v Blatter* 175 F3d 378, 397 (6th Cir 1999)(en banc).

The record conclusively establishes that "deterring" Plaintiffs from ever again criticizing public officials was the specific intent of the House. In fact, the Office of the Attorney General

11

helpfully admitted this central issue in a letter written by the AG, as an Impeachment Respondent, to Impeachment Committee Chair Jason Nemes. Exhibit A hereto. [The Court will note that the Impeachment Committee's records, including this letter, are no longer publicly available, despite counsel for Defendant's assurance that they were "on the LRC website" so counsel is forced to rely on a less than optimal copy from the file].

In this letter, the Attorney General praises the Impeachment Committee for "charging its costs" because "assessing costs…serves the important purpose of **deterring** future baseless petitions." Id., at p.1, emphasis supplied. Astonishingly, the Attorney General's letter also accuses the Plaintiffs of improper "political" motives, a charge later parroted by the Committee. This is yet another improper attack on the Plaintiffs, as courts have made clear: "The argument that … personal motives for speaking may…determine whether that individual's speech addresses a matter of public concern is plainly illogical and contrary to the broader purposes of the First Amendment … because the First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information." *Anders* at 1179, citations omitted.

The House Impeachment Committee and the Attorney General were so determined to "deter" citizens from ever again daring to expose official corruption that the House ran up huge costs specifically to punish them. The "costs" charged to Plaintiffs include over $4000 claimed by two University of Kentucky law professors, who have no relationship to the Plaintiff citizens whatsoever. The Plaintiff citizens requested the opportunity to cross-examine the professors or even to submit questions in writing to them, and were expressly denied that right by the Impeachment Committee. One professor apparently charged the Plaintiffs more than $1000 for three hours spent sitting and waiting on the Impeachment Committee to convene. Another $1000

12

bill was for "protection costs" of armed guards hired by the Impeachment Committee. See: Bill to the Plaintiffs, Exhibit 4 to the Complaint, R. 1.   All told, total costs imposed on the Plaintiffs were more than twenty thousand dollars ($20,000).   Plaintiffs were never permitted to address the Impeachment Committee at any time during the proceedings , and were wholly unaware of the massive expenses being incurred for the purpose of deterring any future exercise of their First Amendment rights.

The attack on Plaintiffs is clearly motivated by animus and ill-will. The House has undeniably taken "adverse action" aimed at "deterring a person … from exercising the constitutional right in question." This is actionable. *Anders* 984F3d at 1176, quoting *Hill v Lappin* 630 F3d 468, 472 (6th Cir 2010).

Retaliation for protected speech violates the Constitution. Statements alleging public corruption are exactly the sort of public speech that demands strong protection. When a state actor openly "deters" free speech under a claim of "absolute privilege" and then refuses to carry the heavy burden of establishing that awesome power, it is necessary for the courts to act.

For these reasons, this Honorable Court should direct the House to produce all relevant evidence upon which it relies in claiming "absolute legislative privilege", along with a properly documented privilege log executed in sufficient detail for the Court to make an informed decision on the sweeping claims of immunity.

(B) **Refusal to comply with discovery rules of this Court**

Defendant's failure to provide appropriate discovery responses are a clear and intentional violation of the discovery rules of this Court.  This Court has the duty and discretion to require full responses to the limited discovery propounded on Defendant.  See, e.g., *In re Bayer*

*Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014).

Fed. R. Civ. P. 26(b)(1) (2010) permits discovery of information "relevant to any party's claim or defense and proportional to the needs of the case." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260 (6th Cir. 2021). Specific descriptions and rationale must be provided if documents or evidence is unavailable to the party responding to discovery in order to protect the rights of the requesting party. See: Fed. R. Civ. P. 56(d). Defendant made no attempt to defend the blanket refusal to provide responsive documents. Objections to production on claims of privilege must be specific and must show why the privilege appropriately attaches. A privilege log must also be provided. See, e.g., *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002). Defendant failed to make any specific objection to discovery or provide any privilege log for allegedly protected materials.

Defendant has clearly not acted in accordance with the rules of civil procedure or professional good faith in responding to discovery. Defendant's bad faith attempts to obfuscate the facts and deprive citizens of oversight into the actions of these public servants is without support in fact or law. This Court should mandate prompt and complete responses and sanction Defendant for its misconduct.

CONCLUSION

The Plaintiffs ask that this Court require immediate and complete responses to all discovery propounded, within thirty (30) days of the Court's Order. The Court should also order Defendant to ensure that the public records of the impeachment committee are reinstated on the LRC's website for public review. Plaintiffs also ask that Defendant be sanctioned for its ongoing refusal to provide the requested information in a matter that is of significant public concern.

Such imposition of sanctions is within the discretion of the Court. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir.2013).

Respectfully submitted,

/s/*Anna Stewart Whites*
Anna Stewart Whites
327 Logan Street
Frankfort KY 40601
(502) 352-2373
Annawhites@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, a copy of the foregoing was filed electronically on counsel for Defendants. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties or their counsel indicated on the electronic filing receipt.

*Anna Stewart Whites*
Attorney for Plaintiffs