UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

KEVIN GLOGOWER, *et al.*,          )
                                   )
    Plaintiffs                )
                                   )
v.                                 )          CASE NO. 3:21-cv-00012-GFVT
                                   )
                                   )
MELISSA BYBEE FIELDS, in their official  )
capacity, *et al.*                 )
                                   )
    Defendants.               )

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

*** *** *** ***

Comes the Defendant, Melissa Bybee-Fields, by counsel, and hereby responds to the Plaintiffs' Motion to Compel as follows:

**INTRODUCTION**

The Kentucky Constitution grants the Kentucky House of Representatives ("House") plenary power over impeachment. *See* KY. CONST. § 66 ("The House of Representatives shall have the sole power of impeachment."). This grant of power implicates the legislative immunity provided to the members of the Kentucky General Assembly by the Kentucky Constitution. *See* KY. CONST. § 43 ("The members of the General Assembly shall . . . be privileged from arrest . . . and for any speech or debate in either House they shall not be questioned in any other place."). The Third Circuit Court of Appeals has specifically held legislative immunity applies to legislators acting in impeachment proceedings. *See Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 251-52 (3d Cir. 1998) ("[W]hen legislators play the role they have been given in impeachment proceedings, they act within the sphere of legitimate legislative activity and within

their legislative capacities. Thus, the necessity for independence requires that legislators be accorded legislative immunity and 'not be questioned in any other place,' concerning their activity and their decision.") (citation omitted). Further, state legislators are afforded absolute legislative immunity against a claim for damages, as well as against claims for injunctive and declaratory relief, for their actions in an impeachment proceeding. *Id*. at 252-53; *see also generally Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359 (6th Cir. 2022) (discussing the broad application of legislative immunity to activities within the legislative sphere).

So, while the Plaintiffs repeatedly refer to "the Defendant House," *see*, *e.g.*, Memorandum in Support of Motion to Compel ("Memorandum") at page 3, these references are a complete *non sequitur* – "the House" is not a named defendant, and even if it or its individual members were named defendants, any activity related to this matter would purely fall within the broad absolute immunity applicable to legislators acting in an impeachment proceeding, and the Plaintiffs' requests for discovery, as well as their entire case, would certainly fail. Furthermore, to the extent the Plaintiffs have named the defendant House Clerk, Melissa Bybee-Fields, ("Clerk"), the United States Supreme Court has also held "that the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel v. United States*, 408 U.S. 606, 618 (1972). The Plaintiffs attempt to argue that much of the discovery "dispute" stems from the Plaintiffs' erroneous, and politically motivated, characterization of this case as involving the House or its members. Simply put, it does not – the House and its members are not named defendants in this matter, and the impeachment process is actually not under serious review – only a single Kentucky statute is at issue in this case. However, a brief recitation of the

2

events leading up to this "dispute" are required.

During the 2021 Regular Session of the General Assembly, plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark ("Cooperrider Plaintiffs") brought an impeachment petition against Kentucky Governor Andy Beshear; plaintiffs John Does 1-3, through their Counsel, plaintiff Kevin Glogower, Esq. ("Glogower Plaintiffs") brought an impeachment petition against Kentucky Attorney General Daniel Cameron; and plaintiffs Michael and Carol VanWinkle ("VanWinkle Plaintiffs") brought an impeachment petition against former state Representative Robert Goforth. The House appointed an Impeachment Committee ("Committee") to investigate the petitions, which met and heard testimony concerning the petitions. <u>The Clerk, the only remaining named Defendant herein, was busy with duties attending to the sessions of the House and took no part in any of the Committee's activities.</u>

Ultimately, the Committee reported against the petitions and recommended the House take no further action on them. At the conclusion of the Committee's investigation, and pursuant to KRS 63.070, the Committee collected the various costs related to the Committee's work and sent a letter to each group of petitioners documenting those costs. *See* KRS 63.070(1) ("In a proceeding for impeachment or removal by address, if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee."). The Plaintiffs have essentially pled in their Complaint the pure legal question as to whether this statute may be invoked to tax the costs of their failed petitions against them. <u>However, several very important facts are that the Clerk did not send those letters to the Plaintiffs, the Clerk took no action related to the impeachment</u>

3

petitions or investigations, and to this day the Clerk has not taxed any costs on any of the Plaintiffs.

Nonetheless, the Plaintiffs filed a Complaint in this Court seeking a declaration that KRS 63.070 is unconstitutional and requesting permanent injunctive relief prohibiting enforcement of the statute and prohibiting the Clerk from taxing the costs against the Plaintiffs, which she had and has not done. After Governor Beshear filed a motion to dismiss, which was granted, the Cooperrider Plaintiffs contacted counsel for the Clerk and proposed settling their claims against the Clerk. On or about February 22, 2022, the Cooperrider Plaintiffs and the Clerk filed a Proposed Agreed Order in which those Plaintiffs agreed to dismiss and withdraw their claims and the Clerk agreed she will never tax any costs against those Plaintiffs. On or about February 24, 2022, the Court entered an Order granting the Parties' Proposed Agreed Order and the Cooperrider Plaintiffs' claims were dismissed. The Glogower and VanWinkle Plaintiffs have never contacted the Clerk seeking a similar settlement.

On or about April 11, 2022, the remaining Glogower and VanWinkle Plaintiffs propounded discovery requests, including interrogatories and requests for production of documents on the Clerk. Beginning on or about May 5, 2022, counsel for the Clerk attempted to contact counsel for the remaining Plaintiffs to discuss potential settlement of additional claims, as well as to request an extension of time for discovery if settlement was not reached. The voicemail messages were not returned. On or about May 11, 2022, counsel for the Clerk sent an electronic mail message (e-mail) to counsel for the remaining Plaintiffs again noting a desire to discuss settlement of additional claims and to request an extension of time for discovery responses. Counsel for the remaining Plaintiffs responded by return e-mail message on May 12, 2022, and flatly denied any extension of time for discovery responses. Nonetheless, counsel for

the Clerk responded by e-mail again and requested that counsel for the Plaintiffs call him on his personal cell phone at her convenience to discuss "an agreed order of dismissal as previously agreed to and filed with other named plaintiffs . . . [and] depending on that conversation . . . also . . . to discuss the discovery you have previously served."

Counsels for the parties did speak by phone later that same day. However, counsel for the Plaintiffs was resistant to any settlement discussions and merely stated she would discuss the proposed further settlement, <u>extended on the same terms as previously agreed to by the Cooperrider Plaintiffs</u>, with her Plaintiff clients. Additionally, although counsel for the Clerk requested an extension of <u>two (2) business days</u> to respond to the discovery requests, counsel for the remaining Plaintiffs would only grant <u>a one (1) day extension</u>, through Friday, May 13, 2022. The Clerk responded to the discovery requests before the end of the next business day, meeting the one (1) day extension of time as graciously agreed to by counsel for the remaining Plaintiffs. The Clerk responded to each interrogatory with the information available to her, which, again, was limited due to her not participating in any of the Committee's activities. The Clerk also stated that the activities of the Committee were available on the General Assembly's website, and she provided links to the documents requested by the Plaintiffs. *See* Answer to Interrogatory No. 8, in which the Clerk provided the following links, which are still active and include all of the Committee's work: https://apps.legislature.ky.gov/CommitteeDocuments/343/ https://apps.legislature.ky.gov/committees/special/21ImCmte/minutes_all.html . Thus, it is erroneous for the Plaintiffs to state that "the House has refused to respond to Plaintiffs' demand for access to these critical documents." Memorandum at 3. Again, the House is not the

defendant, and all of the documents are available at those two links.[1]

Counsel for the remaining Plaintiffs then sent a discovery letter to counsel for the Clerk on May 16, 2022, in which the Plaintiffs alleged the responses were "incomplete and potentially false or inaccurate." On May 23, 2022, counsels for the parties then held a telephonic meet and confer in an attempt to resolve the alleged discovery dispute. Counsel for the Clerk first noted that the Clerk had not taken any part in the Committee's activities, and that the Clerk had never actually taxed any costs to the remaining Plaintiffs, and so it was unclear in what peril those Plaintiffs were or if any potential claims were even ripe. Additionally, counsel for the Clerk stated that the case seemed to be a pure legal question as to the applicability/constitutionality of the statute, KRS 63.070, and so it was unclear how much of the Plaintiffs' discovery requests, amounting to what seemed to be a politically motivated fishing expedition, were relevant to that legal question. Further, counsel for the Clerk noted that legislative immunity was a large issue in the case, and that many of the alleged discovery disputes implicated either legislative immunity, attorney-client privilege, the attorney work-product doctrine, or at a minimum called for the Clerk to state a legal conclusion. Counsel also again reiterated the Clerk's desire to resolve additional claims, but counsel for the remaining Plaintiffs flatly refused to discuss any potential settlement – even on the same terms as previously reached with the Cooperrider Plaintiffs. The parties then went through each of the areas of the discovery letter, with counsel for the Clerk noting that the majority of the responses were complete and would not be supplemented. However, counsel for the Clerk did agree that at least one interrogatory needed supplementation due to an inadvertent mistake and that the Clerk would respond to the issues identified in the letter as diligently as possible. The Clerk supplemented her responses on or about June 8, 2022.

---

[1] Further, counsel for the Plaintiffs sent an email to counsel for the Clerk requesting these links again, which were again provided by counsel for the Clerk by email sent on June 20, 2022, to which counsel for the Plaintiffs replied "Received. Thank you" that same morning.

The remaining Plaintiffs, without any further contact with the Clerk, then filed their Motion for Magistrate Conference Regarding Discovery Issues.  In that motion, the Plaintiffs incorrectly stated this matter involves "penalties improperly imposed by the government on taxpayers and voters who requested review of unlawful behaviors by the Attorney General and a legislator."  As noted, the Clerk has not actually taxed or "imposed" any penalties on any of the Plaintiffs.  Additionally, the Plaintiffs falsely stated "[t]he case involves the disparate treatment by Defendant of the Plaintiff who was a white, financially secure Republican candidate for office, who was released from the action, and the Defendants [sic] who were racially diverse, low-income Democratic voters/taxpayers, who were not released from the action."  Aside from the fact that the Clerk does not know any of the former or remaining plaintiffs' race, income, or political affiliation (except that Mr. Cooperrider was a candidate for state office), as noted herein, the Clerk has extended an offer to settle additional claims by at least some of the remaining Plaintiffs on the same terms as agreed-to with those Cooperrider Plaintiffs.  However, since it is the Plaintiffs who brought the Complaint, it is the Plaintiffs who have the power to release the Clerk, which the Plaintiffs have flatly refused to do.

At the hearing on the discovery dispute, counsel for the Plaintiffs then stated that she had not seen any settlement offer in writing and so it was unclear on what terms her clients were being asked to agree.  Counsel for the Clerk then promptly sent counsel for the Plaintiffs a written settlement offer on the same terms as proposed by the Cooperrider Plaintiffs, but counsel for the Plaintiffs cast doubt on whether that settlement offer would be accepted by her clients.  Those Plaintiffs now unequivocally state in their Motion to Compel that they have REJECTED this offer of settlement, *see* Memorandum at page 11, while also repeatedly continuing the false narrative that the Clerk has selectively "released" the Cooperrider Plaintiffs but not the

remaining Plaintiffs. *Id*. at 4. Again, the Clerk is the defendant in this matter and cannot "release" any of the Plaintiffs without their agreement, which they have refused to grant even though she has extended settlement offers.

The Plaintiffs now file their Motion to Compel, and their arguments are almost exclusively confined to politically attacking "the House" for how the Committee investigated the impeachment petitions and on matters that are not relevant to the legal issue at the heart of their Complaint – the applicability of KRS 63.070, even though the Clerk has not acted under the statute. Additionally, the Plaintiffs arguments amount to allegations that the Clerk is withholding information or documents that she simply does not have or that do not exist. Further, the Plaintiffs ask this Court to compel the Clerk to answer interrogatories or produce documents related to the Committee's investigations, even though the Clerk took no part in the Committee's work, and, even if she did, those activities would be squarely within the legislative immunity and privilege afforded by Section 43 of the Kentucky Constitution, the coextensive protection in the United States Constitution, and by state and federal common law construing those constitutional sections. Each of the Plaintiffs' arguments, vague as they are, will be discussed in turn.

## ARGUMENT

The Plaintiffs make two arguments in the "Argument" section of their Memorandum: "(a) the House has failed to support any claim of 'immunity'"; and (b) "refusal to comply with discovery rules of this Court." However, the Plaintiffs arguments about this discovery dispute are actually contained in the "Statement of Relevant Facts" section of the Memorandum. Specifically, the Plaintiffs principally argue that "the House" has failed to adequately respond to their interrogatories and requests for production of documents. The Clerk will therefore attempt

to address each of the Plaintiffs' arguments in the order they are presented throughout the Memorandum.

1. <u>The Clerk Provided Links to Documents and Information as Requested</u>

The Plaintiffs first argue that the Clerk's responses to discovery erroneously stated that the Committee's work was available online and that "the House has refused to respond to Plaintiffs' demand for access to these critical documents." Memorandum at 3. However, as noted previously, the Clerk provided links to all of the Committee's work, including the minutes for each of the Committee's hearings, as well as all of the documents produced by the Committee. Counsel for the Clerk also re-sent the links to counsel for the Plaintiffs, which counsel           acknowledged           were           received.           See:

https://apps.legislature.ky.gov/CommitteeDocuments/343/

https://apps.legislature.ky.gov/committees/special/21ImCmte/minutes_all.html    .   The Federal Rules of Civil Procedure contemplate that discovery may be limited in frequency or extent if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." FRCP 26(b)(2)(C)(i); *see also Topolewski v. Quorum Health Resources, LLC*, No. 3:10-1220, 2013 WL 99843, at *4 (M.D. Tenn. Jan. 8, 2013) (holding that "if the information is publicly available, the Court is required to limit its discovery . . . " under Rule 26(b)(2)(C)(i). In this case, all of the requested documents from the Committee's work are available at the provided links, and simply providing those links for the Plaintiffs to peruse for whatever information they seek is considerably more convenient, less burdensome, and less expensive for both parties than requiring a paper document dump of hundreds of pages of records that are easily accessible electronically.

Therefore, this Court should reject the Plaintiffs' concocted "dispute" on this issue and

deny their Motion to Compel.

    2. <u>The Clerk Does Not Have Documents Responsive to Certain Requests</u>

Next, the Plaintiffs argue the Clerk failed to appropriately respond to requests for production of documents #1 and #2 by stating she has no documents responsive to those requests, and, according to the Plaintiffs, by failing to "provide information as to who would have those documents." Memorandum at 3. However, the Clerk responded to both requests that she "has no documents responsive to this request. If any such documents are identified or located through additional diligent search, the Defendant may supplement this response consistent with the FRCP and this Court's Local Rules." *See* Responses to Requests for Production of Documents 1. and 2.

As an initial matter, it is again noted that the Clerk took no part in any of the Committee's activities, thus the Clerk has no knowledge of or possession, custody, or control of any contracts related to Joshua Douglas or Paul Salamanca testifying before the Committee. Additionally, the Clerk has no knowledge of or possession, custody, or control of any contracts related to Paul Salamanca being employed by the legislature or LRC or any member thereof. FRCP 34(a)(1) only contemplates requests for documents that are in "the responding party's possession, custody, or control . . . ." Possession, custody, or control of documents means the party "has actual possession, custody or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995).

In the present case, the Clerk does not have possession, custody, or control of any contracts as requested, nor does she have the legal right to obtain any such contracts on demand. Further, the Clerk has no knowledge of any such contracts in any other individual or entity's possession, custody, or control, even if she did have a legal right to obtain those contracts, and

therefore there are simply no contracts to disclose responsive to this request. A party cannot disclose what it does not have or what does not exist. *See*, *e.g.*, *Allison v. Mavic, Inc.*, 2014 WL 12650099 at * 3 (E.D. Ky. October 30, 2014).

Therefore, this Court should reject the Plaintiffs' contention that the Clerk has not been responsive and deny their Motion to Compel on this issue.

3. Settlement is Not a Central Issue and Discovery on This Issue is Not Relevant

The Plaintiffs next argue that a "central issue in this action is whether the selective settlement with the Republican candidate who was a plaintiff in this action, while refusing to settle with the rest of the similarly situation parties, was improper." Memorandum at 4. Aside from the fact that this alleged selective treatment was not pled in the Plaintiffs' Complaint at all, and thus any discovery on this issue is not relevant to any claim as required by FRCP 26(b)(1), as noted previously, the Clerk, a defendant in this action, was approached by the Cooperrider Plaintiffs about settling their claims and she agreed to do so. Additionally, the Clerk has repeatedly reached out to counsel for the Plaintiffs about the possibility of further settlements, and the Plaintiffs have flatly rejected those settlement offers.

Furthermore, the Plaintiff states that "the House delegated an administrative employee as the sole party Defendant" – although it was the Plaintiffs who named the Clerk as a defendant in this action. Following this erroneous characterization of the parties to this action, the Plaintiffs then cite to the Clerk's responses to Interrogatory #1 and #4 as deficient because she does not provide information about other, unnamed parties and their alleged involvement in the settlement with the Cooperrider Plaintiffs and/or because the Clerk outright refuted the Plaintiffs' mischaracterization of the settlement and non-settlement of the claims in this case. Simply put, the Clerk's responses to #1 and #4 are complete – because, as to #4 and as noted previously, the

Plaintiffs' entire premise about the settlement of the various claims in this case is completely false, and because, as to #1, she is the only party who could have entered into the Proposed Agreed Order with the Cooperrider Plaintiffs because she is the only remaining named defendant. "When answering interrogatories, only 'the party to whom they are directed' must respond." *Allison v. Mavic, Inc.*, 2014 WL 12650099 at * 2 (E.D. Ky. October 30, 2014) (citing FRCP33(b)(1)(A)). Additionally, if the Clerk had discussions with her counsel related to that settlement, the Clerk appropriately noted objections based on attorney-client privilege and the attorney work-product doctrine, and if the Clerk had any discussions with legislators regarding the settlement, which is denied, legislative immunity and privilege could apply for either those legislators and/or their staff and it was wholly appropriate for the Clerk to note those possible protections so that they would be preserved and not waived.

Finally, the Plaintiffs also point to the Clerk's responses to Interrogatories #2 and #3 as being deficient. However, the Clerk responded to those interrogatories that the Plaintiffs were stating legal conclusions or calling on the Clerk to reach a legal conclusion, which is not required under the Federal Rules of Civil Procedure. *See* FRCP 33(a)(2) (stating an interrogatory may ask for an opinion that relates to fact or the application of law to fact, but not providing that an appropriate scope of discovery is calling on a non-lawyer party to state an actual legal opinion). Additionally, the Clerk's answers were indeed responsive – she described the process by which the settlement was authorized by her as the only remaining named party, and she stated that her counsel signed the Proposed Agreed Order on her behalf, and that her agreement was made in her capacity as Clerk of the House of Representatives.

Therefore, this Court should reject the Plaintiffs' contention that the Clerk has not been responsive and deny their Motion to Compel on this issue.

4. <u>Activities of the Impeachment Committee are Not Relevant or Are Protected</u>

Finally, the Plaintiffs contend the Clerk was not responsive to a number of other interrogatories related to choices made by the Impeachment Committee.  The Plaintiffs concede these interrogatories "were calculated to determine what actions were taken by the Impeachment Committee as a part of its legislative duties . . . ."  Memorandum at 5.  So, for example, Interrogatories #5, #6, #7, #9, and #10, all ask for information related to decisions made by the Committee on how it conducted its investigation, who it called to testify, the communications by the Committee members, how costs were assessed, and/or the reasons for disposing of impeachment petitions.  However, as noted in the Introduction herein, impeachment is an activity that is within the legitimate legislative sphere and legislative immunity applies, so the Clerk's objection based on legislative immunity and privilege was appropriate for any question related to the Committee's activities.  *See generally Larsen v. Senate of Com. of Pa.*, 152 F.3d 240 (3d Cir. 1998); *see also Collins v. Beshear*, 2013 WL 5350610 at *2 (E.D. Ky. September 23, 2013) (holding legislative defendants enjoy immunity from suit under § 1983 and stating:  "[t]hus, the Kentucky Constitution vests the legislative defendants with full authority and discretion to determine which civil officials, if any, should be impeached.").

Additionally, as previously noted, the Plaintiffs' Complaint pleads the pure legal question as to whether KRS 63.070 is constitutional and if it can be invoked to tax costs against petitioners when their impeachment petition is reported against by an impeachment committee, and thus any inquiry into the actions of the committee is not relevant to the determination of that question.  And, as repeatedly noted, the Clerk has not even taken any action under that statute, and thus there is a serious question as to whether the Plaintiffs have even stated a ripe claim upon which relief may be granted or if they are simply seeking an advisory opinion by this Court, a

13

matter over which this Court does not have subject matter jurisdiction.

Furthermore, the Clerk responded to each of these interrogatories by either stating she had no knowledge relating to those matters, because, again, the Clerk took no part in any of the Committee's activities, or by providing the requested information to the best of her knowledge as to the numbers of impeachment petitions, which was supplemented following her initial responses. The Clerk's responses on each of these interrogatories was completely appropriate.

Therefore, this Court should reject the Plaintiffs' contention that the Clerk has not been responsive and deny their Motion to Compel on this issue.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, this Court should reject the Plaintiffs' contention that the Clerk has not been responsive to the Plaintiffs' discovery requests and deny the Plaintiffs' Motion to Compel in its entirety.

Respectfully submitted:

/s/  Greg Woosley_____ _____
Gregory A. Woosley (91428)
General Counsel
Legislative Research Commission
Capitol, Room 300
700 Capitol Avenue
Frankfort, Kentucky  40601
Telephone:    (502) 564-8100
Fax:            (502) 564-6543
Email:         greg.woosley@lrc.ky.gov

*Counsel for Defendant,*
*Melissa Bybee-Fields*

14

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 8, 2022, a copy of the foregoing Response to Plaintiffs' Motion to Compel was filed with the court, service of which will be sent by operation of the Court's CM/ECF system to all parties or their counsel indicated on the electronic filing receipt. Parties may access the filing through the Court's CM/ECF system.


                             /s/ Greg Woosley_____
                             Gregory A. Woosley