Filed Electronically

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KEVIN GLOGOWER, as representative For the Breonna Taylor Grand Jurors, et al., | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) ) | CASE NO. 3:21-cv-00012-GFVT |
| MELISSA BYBEE-FIELDS, in their official capacity, et al | ) ) ) | |
| Defendants. | ) | |

## Plaintiffs' Reply in Support of Motion to Compel

\*\*\*\*

Come the Plaintiffs, Kevin Glogower on behalf of himself and his confidential clients, John Does 1-3, and Carol and Michael Van Winkle, and in reply to the Defendant Clerk of the Kentucky House of Representatives' *Response to Plaintiffs' Motion to Compel*, (herein "House"), states as follows:

The House freely admits that it has treated the three (3) groups of Plaintiffs very differently in assessing grossly inflated "costs" upon their three separate impeachment petitions. The first Plaintiff, Andrew Cooperrrider, was held harmless and released from costs of $42,444.05 by the House Clerk on February 24, 2022, during the time period when Cooperrider

1

was a Republican candidate for state senate. See: *Defendant's Response to Plaintiffs' Motion to Compel* (herein "Defendant's Response") at p. 4.

The House continued to selectively threaten financial ruin by enforcing costs against the remaining Plaintiffs, until the pleadings of the Glogower Plaintiffs exposed another powerful Republican, Kentucky Attorney General Daniel Cameron, to public scrutiny. Only then was an offer extended to this second set of Plaintiffs, Glogower and the Grand Jurors he represents, to escape their burden of $7,597.36 in costs.

This same offer was not extended to Michael and Carol Van Winkle, (leaders of the Robert Goforth impeachment petitioners), who continue to face the imposition of $12,457.36 in costs, upon 5 days notice in any Kentucky circuit court. KRS 63.070(3). For this reason, the Glogower Petitioners rejected the transparently self-serving offer of settlement extended to them alone. See: *Plaintiffs' Motion to Compel* at pp. 2-3.

Astonishingly, the House claims that this pattern of holding some impeachment petitioners harmless while selectively charging massive costs to others is "not a central issue" in this case because this cause of action is not pleaded in the complaint. *Defendant's Response*, p. 11. This is demonstrably false. The *Plaintiffs' Verified Complaint for Declaratory and Injunctive Relief* (herein "Complaint") clearly sets out this claim, alleging that costs were only being assessed "in three cases, but not in another 100+ cases filed contemporaneously." Id., at p.8, para. 26. Even in the Goforth impeachment action, there were six other Petitioners, in addition to Mike and Carol VanWinkle, who brought that action, but costs and fees were only imposed on the VanWinkles, not the other named Petitioners.

In fact, the House's actions in selectively taxing costs against only a few well chosen targets forms the basis of the entire complaint. "[T]he restriction is actually viewpoint

2

discrimination (citations omitted). Those who submit petitions in favor of impeachment are penalized; those who submit petitions opposing impeachment are not." *Complaint*, Count I, p. 13, para. 53. "Viewpoint discrimination is presumptively unconstitutional." Id., at para. 56. The complaint specifically alleges that these selective attacks on political views violate the Equal Protection Clause. *Complaint*, p. 14, para. 58.

  The House cannot pretend that the continuing violation of specifically pleaded constitutional rights is somehow beyond the reach of this Court, particularly where the House has utterly and completely failed to carry the burden of proof for any supposed privilege. While the House boldly asserts "absolute legislative privilege" as justification for punishing political opponents with massive costs, it yet again refuses to provide this Court with the necessary proof to justify this extraordinary claim. Instead, the House simply claims that "members of the General Assembly…shall not be questioned in any other place" because "the House [has] the sole power of impeachment." *Defendant's Response*, at p. 1.

  The House simply ignores the controlling case in this Circuit: "It is well established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of [28 USC] Section 1983." *Anders v Cuevas* 984 F3d 1166, at 1185 (6th Cir 2021), (citations deleted), set out in *Plaintiffs' Motion to Compel* at p. 2. If the House seeks to avoid this well-established liability for violating Plaintiffs' free speech rights, it must plead and prove that its actions were "legislative in form and substance" possessing "all the hallmarks of traditional legislation." *Anders, supra.*, 984 F3d at 1182-82.

  The House does this Court no favors by avoiding this duty. As the *Anders* case makes clear, failure of proof on this issue requires a remand to the District Court with specific instructions to supplement the record on this point. This Court should not needlessly waste

appellate time and resources simply because the House would prefer to not meet its legal obligations. The House should be directed to meet its burden of proof or abandon the claim of extraordinary privilege.

The House's own meager caselaw cited in the *Defendant's Response* confirms this commonsense requirement: "Broad though the ambit of protection for the 'legislative sphere' has become, it does not cover everything lawmakers do... [The] 'sphere of legitimate legislative activity' remains the touchstone." *Kent v Ohio House of Representatives Democratic Caucus*, 33 F3d 359, at 356 (6th Cir 2022). The *Kent* Court correctly declined to "micromanage exactly what resources…the parties dole out to their members" in a party caucus. 33 F3d at 369. *Kent* obviously offers little guidance in the present case, and the House fails to explain its supposed relevance.

The only other case relied on by the House is not even from the 6th Circuit, and certainly doesn't excuse the House's failure to carry its burden of proof. In *Larsen v Senate of Commonwealth of Pennsylvania* 152 F3d 240 (3d Cir 1998), an impeached judge sued individual state senators arguing that "impeachment is not legislative in nature." That argument, unsurprisingly, was rejected.

The House's citation to *Larsen* is, however, helpful in demonstrating the lack of legislative immunity in the present case. The House Clerk's sole defense is that she acted only in an administrative or ministerial capacity, having taken absolutely no action in any part of the impeachment committee hearings. ("The Clerk…was busy with duties…and took no part in any of the [Impeachment] Committee's activities." *Defendant's Response* at p. 3. "[T]he Clerk took no action related to the impeachment petitions or investigations…." Id., at pp. 3-4, (emphasis in original.)

4

In *Larsen*, "neither party suggests that the Senators were acting in an administrative capacity," which greatly bolstered the claim of immunity. 152 F3d at 252. But the Clerk here insists to this Court that her actions were in fact facially administrative. This triggers requirements that her actions be both "procedurally" and "substantively" a legitimate legislative act. *Anders*, supra. 984 F3d at 1181-82. This is precisely the proof that the House continues to refuse to place into the record, despite citing caselaw making plain this burden.

Further complicating the House's putative defense is the frank admission that the Clerk took it upon herself to choose which Defendants must pay all costs and which Defendants walk away scot free. ("[T]he Clerk has extended an offer to settle additional claims by at least some of the remaining Plaintiffs on the same terms as agreed to with those Cooperrider Plaintiffs." *Defendant's Response* at p.7, (emphasis supplied.)

The Clerk has now judicially admitted that she has voluntarily taken on the duty of picking whose Constitutional rights are violated, and who is released and held harmless. So far, the Clerk has chosen to release a powerful Republican politician and to protect a second powerful Republican by seeking a settlement only with those who publicly criticize the Kentucky Attorney General. The other Plaintiffs remain under the dangling sword of ruinous costs simply because they have nothing of political value to trade for their release.
This is fully actionable in the Federal Courts. "The Equal Protection Clause prohibits discrimination by government which … intentionally treats one different from others similarly situated without any rational basis for the difference." Anders, supra., 984 F3d at 1179, citations to authority deleted. Plaintiffs prevail by "negating every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated

by animus or ill-will…. It is not necessarily dispositive that the decision at issue was discretionary." Id.

The Clerk's continued picking of winners and losers is no part of any legitimate impeachment process. Instead, this Federal Civil Rights action has been hijacked into a political payback operation run by the House Republican supermajority, employers of the Defendant Clerk. Every action taken by the House has been driven by improper motive and is utterly without any indicia of a legitimate "legislative act."

Plaintiffs assert that the Clerk has deprived Plaintiffs of their Constitutional rights at the direction and behest of her employers, the House Republican supermajority, who seek to use the Clerk as a shield for their improper political revenge. This assertion is directly addressed in the Plaintiffs' pending Interrogatories 1 and 2, which the Clerk has failed and refused to answer, despite negotiating the agreed discovery terms with Plaintiffs' counsel.

The Clerk should be directed to answer the outstanding interrogatories, so that the Plaintiffs may discover what persons ordered them singled out for punishment. Plaintiffs fully intend to challenge any claims of "privilege" those persons may claim.

**Conclusion**

Merely invoking the words "legislative immunity" does not confer that powerful shield and sweep away all Federal Civil Rights protections from ordinary citizens who seek to petition their government. The House, knowing full well it carries an unmet burden of proof, fails again to even attempt to meet it, and demands that this Court issue a ruling unsupported by the record.

This is a grave disservice to all parties and, as has been repeatedly pointed out in briefing and argument, is likely to result in an abrupt remand from any reviewing court, as occurred in *Anders, supra.*

The continuing refusal of the House to properly plead and prove "absolute legislative immunity" leaves this Court with little choice but to direct that additional discovery proceed on this threshold issue. The alternative is to rule upon the issue with a manifestly insufficient record, which would result in great loss of judicial economy.

The House has no right to force the parties and this Court into a time and resource wasting game while it seeks to avoid even minimal efforts to properly resolve this matter. For these reasons, Plaintiffs ask that this Court ORDER that the House cooperate in discovery by responding to the outstanding unanswered interrogatories, that the House Clerk be scheduled for a deposition, and that the House produce all evidence upon which it may rely in arguing that it possesses absolute immunity.

Respectfully submitted,

/s/Anna Stewart Whites
Anna Stewart Whites
327 Logan Street
Frankfort KY 40601
(502) 352-2373
Annawhites@aol.com

CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2022, a copy of the foregoing was filed electronically on counsel for Defendants. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties or their counsel indicated on the electronic filing receipt.

<u>Anna Stewart Whites</u>
Attorney for Plaintiffs
