UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KEVIN GLOGOWER, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | CASE NO. 3:21-cv-00012-GFVT |
| ) | |
| ) | |
| MELISSA BYBEE FIELDS, in their ) | |
| official capacity, et al ) | |
| ) | |
| Defendants ) | |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

\*\*\*\*

Come the Plaintiffs, Kevin Glogower on behalf of himself and his confidential clients, John Does 1-3, and Carol and Michael van Winkle, by counsel, and in response to the Defendant Clerk of the Kentucky House of Representatives' *Motion to Dismiss* (Record "R" 58) (herein "House"), state as follows:

**I.   The House Admits that the Clerk Chooses Which Citizens Are Released From Costs; The Clerk is Therefore a Proper Defendant**

The House abruptly abandons its unsubstantiated claim to "absolute legislative immunity" in the *Motion to Dismiss.* This comes on the heels of the Court authorizing *Plaintiffs' Motion to Compel* (Status Order, R. 54), and completion of briefing establishing the House's failure to produce competent evidence of the claimed privilege. (R. 55-57.)

1

This previous discovery briefing cites the recent controlling caselaw in this circuit holding that "[i]t is well established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of [28 USC] Section 1983." *Anders v. Cuevas* 984 F3d 1166, 1185 (6th Cir. 2021), citations deleted. Government officials may seek to avoid this liability by pleading and proving "absolute legislative immunity."

The House evidently recognizes it cannot meet its burden of proof in establishing this extraordinary privilege, which would otherwise enable the House to escape discovery and continue violating Kentucky citizens' Federal rights with impunity.

Defendant now pivots to demand that this Court dismiss Plaintiffs' action because it presents only a "pure legal question" of taxing costs. *Memorandum in Support of Motion to Dismiss*, (R. 58), at p.2. But this putative defense ignores the frank admission by the House that the Clerk is in sole charge of deciding which Plaintiffs are released and which face ruinous costs: "<u>The Clerk has extended an offer to settle additional claims by at least some of the remaining Plaintiffs….</u>" See: Defendant's *Response in Opposition to Motion to Compel Discovery*, (R. 56) at p.7, (emphasis supplied.)

Far from being "a pure legal question of taxing costs", as Defendant claims in the motion, the entire basis of the *Complaint* is that costs were taxed only against a few well-chosen targets. Because the House admits that the Clerk has voluntarily taken it upon herself to choose who remains saddled with costs and who is released from all liability, she is manifestly an appropriate party defendant.

II. **The Complaint Clearly Alleges Constitutional Deprivations Directly Caused By the Clerk's Actions**

Consider the following factual allegations in the Complaint, which must be accepted as true for purposes of the pending motion:

1. Only the Plaintiffs' impeachment petitions were subjected to cost assessment out of the **more than one hundred** which were filed. (*Complaint*, R.1, p. 8 para. 26.) This selective treatment did not end with the Impeachment Committee, but continues to the present day as the House Clerk continues to pick winners and losers among the citizens who dared to question powerful elected officials.
2. This improper treatment of Plaintiffs constitutes purposeful "viewpoint discrimination" in which "those who submit petitions in favor of impeachment are penalized," in violation of *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 US 819, 828-29 (1995). (*Complaint*, R. 1, p. 13, para. 53.)
3. This selective discrimination is "based on the message a speaker conveys" and is thus presumptively violative of the First Amendment. (*Complaint*, R. 1, p. 12, para. 52, citing *Forsyth County v. Nationalist Movement*, 505 US 123 (1992).))
4. The costs charged to Plaintiffs are "far from nominal," making application of the cost statute "unconstitutional on its face." (*Complaint*, R.1, p. 13, para 55, citing *Murdock v. Pennsylvania*, 319 US 105, 114 (1943)).
5. This ongoing practice of selectively imposed costs "has a clear chilling effect on those who wish to…hold their elected officials accountable," and thus damages every citizen of this Commonwealth, not merely the Plaintiffs who seek to vindicate these shared fundamental Civil Rights. (*Complaint*, R. 1, p. 10, para. 42.)
6. The House (and its sole legally approved cost collector under KRS 63.070, the House Clerk) continue to violate the Plaintiffs Federal rights to, *inter alia*, freedom of speech, freedom of association, and Equal Protection. *(Complaint*, R.1, p. 14, paras. 57-58.)

These factual assertions, (along with the House's judicial admission that the Clerk herself selects who remains liable to the state and who is held harmless), put the Clerk squarely in jeopardy for the specified Constitutional deprivations inflicted on Plaintiffs. The Clerk has, in full view of this Court, continued the improper practice of picking whose rights are violated and who walks free.

This Court should note that it is disingenuous in the extreme for the House Clerk to insist that she "took no part in the [Impeachment] Committee's activities." *Motion to Dismiss*, R. 58, p.2, (emphasis deleted.) While her legal role is specified in statute ("the costs shall be taxed by the clerk", KRS 63.070(1)), the Clerk has voluntarily and openly become the one and only

government official deciding who pays impeachment costs. The House cites absolutely no authorizing authority for this extraordinary power, nor any example of its previous existence. Indeed, the selective release of persons charged costs by the Impeachment Committee appears on its face to violate the Clerk's mandatory duty. ("The costs **shall** be taxed…" KRS 63:070(1)).

### III. The Clerk's Actions Violate Clearly Established First Amendment and Equal Protection Rights

The Clerk's actions contravene the directives of the Impeachment Committee itself, and substitute her judgment for that of the bipartisan panel with absolutely no legal justification. This continued improper picking of winners and losers is clearly no part of any legitimate impeachment process and must not be shielded by the Federal Courts, (particularly where no claim of "absolute legislative immunity" can be made out.) Any claim of immunity must be "part and parcel of the legislative process." *Bogan v. Scott-Harris*, 523 US 44, 55 (1998).

The admitted facts establish that Plaintiffs cause of action is sound. Thus far, the Clerk has "chosen" to release a powerful Republican politician, Andrew Cooperrider, who faced $42,444.05 in costs, far in excess of the combined amounts charged to the remaining Plaintiffs. (This makes clear that the recovery of "taxpayer money" plays no part in the calculation of who is released.)

Next, the House Clerk "chose" to protect a second powerful Republican by offering to release only those Plaintiffs who publicly criticized Kentucky Attorney General Daniel Cameron, those being the "Glogower Plaintiffs". The Clerk excluded the remaining Plaintiffs from this proffered release, evidently because they have nothing of political value to trade.

That politically charged offer was rejected by the three John Does in this action (all former Breonna Taylor Grand Jurors) who declined to "aid the House in escaping public

4

accountability for its unlawful actions and recognize[d] that victims of political repression must stand united against efforts to silence them." Plaintiffs' *Motion to Compel*, R. 55, p.3.

This pattern of political payback and suppression of First Amendment rights is fully actionable in Federal Court. "The Equal Protection Clause prohibits discrimination by government which…intentionally treats one different from others similarly situated without any rational basis for the difference." *Anders, supra.,* 984 F3d at 1179, citations deleted.

**IV. Plaintiffs Meet Every Element of a Prima Facie First Amendment Retaliation Claim**

The *Motion to Dismiss* wholly fails to meet the requirements for dismissal set out in the controlling case of *Anders*, *supra*., which is wholly ignored by the House, despite being directly applicable to this case.

*Anders* makes clear that in the absence of a well pleaded claim of "absolute legislative immunity" (as here) a prima facie First Amendment retaliation claim is established by three elements:

1. **Protected speech**: Here the Plaintiffs engaged in the most fundamental free speech activity, the right to question elected officials. "Statements exposing possible corruption…are exactly the type of statements that demand strong First Amendment protections." *Anders,* 984 F3d at 1176, quoting *See v. City of Elyria*, 502 F3d 484, 493 (6th Cir 2007).
2. **Adverse Action**: An adverse action is "one that is *capable* of deterring a person of ordinary firmness from exercising the constitutional right in question." *Anders*, 984 F3d at 1176, quoting *Hill v, Lappin*, 630 F3d 468, 472 (6th Cir 2010), emphasis in original. "Nothing justifies harassing people for exercising their constitutional rights so the deterrent effect on speech need not be great to be actionable." *Id*., quoting in part *Thaddeus-X v. Blatter*, 175 F3d 378, 397 (6th Cir 1999) (en banc). Here the adverse action is the improper selective assessment of huge costs to deter citizens from criticizing their government.
3. **Causation**: "To establish causation, [the Plaintiff] must demonstrate that its protected speech was a substantial or motivating factor of the adverse action." *Anders*, 984 F3d at 1177. Here, of course, the Plaintiffs' speech was the *sole* motivating factor for the imposition of unconstitutional costs.

Having clearly met each element of the cause of action, the Plaintiffs suit is not subject to dismissal. The House's *Motion to Dismiss* is poorly founded, ignores controlling caselaw, makes no attempt to analyze the relevant facts, and should therefore be taken for naught.

### V.     Attempted Selective Settlement Establishes Improper Motive

The Clerk's suggestion that "Plaintiffs have never contacted the Clerk seeking similar settlement" (*Motion to Dismiss* (R. 58), at p.3) is belied by the fact that the House Clerk is the defendant in this Federal Civil Rights suit. Surely no more forceful "contact seeking settlement" is possible.

The House Clerk responded to this suit by again attempting selective release of only those Plaintiffs posing a political risk to the Republican supermajority employing the Clerk, specifically excluding several similarly situated Plaintiffs from any settlement offer. This continuation of the politically motivated assault upon Plaintiffs does not somehow redound to the House's benefit, as it seems to assert; rather it confirms the improper motive in selecting which citizens are singled out for punishment. See: *TriHealth Inc. v. Bd of Comm'rs, Hamilton County*, 430 F3d 783 (6th Cir 2005), holding that the Equal Protection Clause "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently from others similarly situated without any rational basis for the difference." 430 F3d at 788, quoted approvingly in *Anders*, 984 F3d at 1179.

Defendant's insinuation that a good faith offer of release and settlement has been extended to all Plaintiffs (and not just a select few), is flatly untrue. Plaintiffs invite the Defendant House to quit wasting the Court's time and promptly extend any such good faith settlement offer in writing. The Defendant House's continuing tiresome gamesmanship in

6

misrepresenting offers of settlement is beneath the dignity of this Court and should be sanctioned.

### VI.     This Matter is "Ripe"

The House asserts that the imposition of approximately $20,000.00 in charged costs upon 5 days notice at a time and in a court chosen solely by the House Clerk is not actionable, as it is not yet "ripe." *Motion to Dismiss*, (R. 58), at p. 7. The House also suggests that the costs may never be enforced, but does not explain why, or how that would comply with the mandatory language in KRS 63.070: "These costs **shall** be taxed by the clerk." Clearly, this matter is ripe. The source of the Clerk's claimed power to ignore mandatory statutes (as well as directives from the Impeachment Committee) remains undisclosed, but presumably derives from the political wishes of her employers. Whether carrying out such blatantly political directives exposes the Clerk to liability is a proper subject of discovery, which is demanded in the Plaintiffs' pending (and fully briefed) *Motion to Compel*, (R.55-57).

Even assuming that the present House Clerk forbears executing this statutory directive, a future Clerk might understand her duties differently, and so the Plaintiffs could remain liable "on 5 days notice" long beyond the tenure of the present officials. Clearly the Plaintiffs might be faced with an enforcement action years from now, as there is no bar to future collection efforts. Additionally, five days notice is perhaps shorter than any other court deadline, and cannot be considered a safeguard of any kind. Indeed, it is obviously insufficient time for retaining counsel and mounting a proper defense.

The House Clerk's blithe assertion that "all of Plaintiffs objections can and should be addressed by the state Circuit Court" whenever she (or her successor) decides to give 5 days

notice (*Motion to Dismiss*, (R. 58), at p. 7) reveals the House's utter lack of concern with Plaintiffs' fundamental rights, and underscores the necessity of this Court's oversight of this governmental attack on basic civil liberties.

**V. The Clerk's Deposition Will Establish Whether She Is Entitled To "Qualified Immunity"**

*Anders* offers a clear roadmap to prompt resolution of this case. The next step is to assess whether the Plaintiffs can defeat a claim of "qualified immunity," which is the only privilege remaining after the House's abandonment of "absolute legislative privilege."
"To defeat a claim of qualified immunity, the plaintiff must show that the [government] official's conduct (1) violated a constitutional right that (2) was clearly established….We ask only whether, "reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Anders*, 984 F3d at 1175, citations omitted.

The *Anders* Court then remanded the First Amendment retaliation claim to the District Court, holding that "without the benefit of a fuller factual record, we cannot conclude that" the government official acted reasonably. 984 F3d at 1179.

This Court surely does not wish to commit exactly the same error that was so recently corrected by the Court of Appeals. It is frankly shocking that the House would demand such a waste of judicial resources, particularly in light of the House's own failure to produce a record capable of being appealed. This failure will be corrected by Plaintiffs in the House Clerk's evidentiary deposition, which should be promptly ordered by this Court.

## CONCLUSION

The Defendant has improvidently sought dismissal of this action. The Complaint clearly sets out an actionable deprivation of Civil Rights protected by the United States Constitution. The House frankly admits that the Clerk selects which citizens are released from costs and which remain liable.

The Defendant, having declined to carry its burden of proof in establishing "absolute legislative immunity," is now entitled to assert qualified immunity, which is properly the subject of a discovery deposition. The central question is whether "a reasonable government official" could believe that her actions did not violate the Plaintiffs clearly established constitutional rights. *Anders, supra*., 984 F3d at 1178.

The Clerk's discovery deposition, as well as full and complete responses to the outstanding Interrogatories, should be ordered by this Court, as urged by Plaintiffs in the pending *Motion to Compel* and *Reply* in support thereof, (R. 55; 57).
For these reasons, the Defendant's *Motion to Dismiss* must be DENIED and the Plaintiffs' pending *Motion to Compel* should be GRANTED.

        Respectfully submitted,

       /s/ Anna Stewart Whites /s/
      ANNA STEWART WHITES
      *Attorney at Law*
      327 Logan Street
      P.O. Box 4023
      Frankfort KY 40601
      (502) 352-2373/FAX 352-6860
      AnnaWhites@aol.com

CERTIFICATE OF SERVICE

I hereby certify that on this date August 17, 2022, a copy of the foregoing was filed electronically on counsel for Defendants. Notice of this filing will be served on the Court's CM/ECF

/s/ Anna Stewart Whites
Counsel for Plaintiffs