UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:21-CV-00012-EBA

KEVIN GLOWGOWER, *et al.*,                                    PLAINTIFFS,

V.          **MEMORANDUM OPINION & ORDER**

MELISSA BYBEE-FIELDS, *et al.*,                              DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION

On April 11, 2022, Plaintiffs served Defendant Melissa Bybee-Fields, Chief Clerk of the Kentucky House of Representatives ("Chief Clerk"), with their First Set of Discovery Requests. [R. 44]. The Chief Clerk responded to Plaintiffs' discovery requests on May 13, 2022. [R. 47]. Finding the Chief Clerk's responses lacking, Plaintiffs attempted to resolve the dispute informally, but to no avail. [*See* R. 56 at pgs. 4–6]. Accordingly, on May 31, 2022—a day before the close of discovery—Plaintiffs requested a telephone conference with the Court to determine if further briefing is necessary. [R. 48]. This Court held that conference on June 10, 2022. [R. 52]. Ultimately, the Court ordered briefing. [R. 54]. Now, Plaintiffs move to compel the Chief Clerk to respond in greater detail to Plaintiffs' First Set of Discovery Requests. [R. 55; R. 55-1 at pg. 14] ("this Court should require immediate and complete responses to all discovery propounded").

## II. FACTS AND PROCEDURAL HISTORY

In January 2021, three separate groups of citizens petitioned the Kentucky House of Representatives to impeach Governor Andrew Beshear, State Representative Robert Goforth, and

Attorney General Daniel Cameron. All three petitions were dismissed by the House Impeachment Committee in February 2021. The "dismissals indicated an intention to tax the 'costs of investigation' to the Petitioners [. . .], which included attorney and expert fees." [R. 3 at pg. 4]. On March 12, 2021, "the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs . . . totaling $42,444.05 to the Beshear Petitioners." [*Id.* at pg. 5]. Likewise, the Cameron Petitioners were sent a letter indicating that they owe $7,597.36 in costs, and the Goforth Petitioners were sent a letter indicating that they owe $12,457.36 in costs. [*Id.*].

Consequently, all three groups of impeachment petitioners sued Governor Beshear and the Chief Clerk in this single action. [R. 1]. At the onset, Plaintiffs filed an emergency motion for a temporary restraining order to block the Chief Clerk from taxing costs and fees during the pendency of this action and moved for a preliminary injunction to prevent her from enforcing KRS § 63.070. [R. 3]. The Court denied Plaintiffs' emergency motion for a temporary restraining order "because . . . the requirements of Rule 65 [were] not satisfied[,]" but the Court continued its analysis of Plaintiffs' motion for a preliminary injunction until a scheduling conference could been held and additional briefing filed. [R. 11 at pg. 5]. On December 17, 2021, the Court granted Governor Beshear's motion to dismiss [R. 18] the action for lack of subject matter jurisdiction because he did not "commit[] an action giv[ing] rise to a ripe claim." [R. 27 at pg. 6]. At this moment, the Chief Clerk became—and continues to be—the only defendant.[1]

---

[1] Plaintiffs' counsel frequently refers to "the Defendant House" as a named party, as opposed to the "House Clerk." *See*, *e.g.*, [R.55-1 at pg. 7] ("No answer was made by *the Defendant House*.") (emphasis added); [R. 57 at pg. 1] ("*The House* freely admits that it has treated the three (3) groups of Plaintiffs very differently in assessing grossly inflated 'costs' upon their three separate impeachment petitions. The first Plaintiff, Andrew Cooperrider, was held harmless . . . by *the House Clerk* . . . .") (emphasis added); *see also* [R. 56 at pg. 2] ("[W]hile the Plaintiffs repeatedly refer to 'the Defendant House,' these references are a complete *non sequitur*—'the House' is not a named defendant . . . ."). Indeed, as the Chief Clerk notes, the only named Defendant in this action is the Chief Clerk.

Following the Governor's dismissal, the Beshear Plaintiffs reached an agreement to settle their claims with the Chief Clerk and submitted a proposed agreed order to the Court for consideration. [R. 35]. The Chief Clerk agreed to "not tax costs against [the Beshear Plaintiffs]," without making any "concession as to the merits of the petitions or any admission of liability[,]" in exchange for the Beshear Plaintiffs' "dismiss[ing] and withdraw[ing] their claims . . . ." [*Id.*]. On February 24, 2022, the Court granted the proposed order. [R. 37]. At this stage, the Cameron and Goforth Petitioners became—and continue to be—the only plaintiffs.

The remaining Plaintiffs—the Cameron and Goforth Petitioners—and the Chief Clerk reached an agreement as to Plaintiffs' then-pending motion for a preliminary injunction and memorialized it in the record. [R. 36]. The Court granted the proposed agreed order, which directs the Chief Clerk to "hold taxing of fines or costs against the [Cameron and Goforth Petitioners] [. . .] during the pendency of this action[,]" in exchange for the Plaintiffs to "hold any request for injunctive relief [. . .] in abeyance." [R. 39].

## III. Analysis

The Court discerns at least five distinct issues nestled within Plaintiffs' motion to compel, the accompanying memorandum of law, and their Reply. [R. 55; R. 55-1; R. 57]. Specifically, Plaintiffs move the Court to (1) compel discovery due to the Chief Clerk's purported insufficient[2] or evasive responses to Plaintiffs' interrogatories and requests for production, (2) direct the Chief Clerk to produce a privilege log and all evidence upon which she relies in claiming any privilege, (3) direct the Chief Clerk to ensure public records are available on the LRC's website, (4) sanction

---

[2] Plaintiffs' counsel propounded discovery requests on the Chief Clerk on April 11, 2022. [R. 44]. On May 5, 2022, the Chief Clerk's counsel "attempted to contact counsel for the remaining Plaintiffs to . . . request an extension of time for discovery if settlement was not reached." [R. 56 at pg. 4]. However, the messages of the Chief Clerk's counsel "were not returned." [*Id.*]. The Chief Clerk's counsel emailed Plaintiffs' counsel on May 11, 2022, again "to request an extension of time for discovery responses." [*Id.*]. The following day, via email, Plaintiffs' counsel "flatly denied any extension of time for discovery responses." [*Id.*]. However, that same day, Plaintiffs' counsel and the Chief Clerk's counsel spoke by phone and agreed to a one-day extension to respond to the Plaintiffs' discovery requests. [*Id.* at 5].

the Chief Clerk, and (5) reopen fact discovery so that Plaintiffs' counsel can depose the Chief Clerk without timely notice. The Court will address each issue in turn.

### A. DISCOVERY REQUESTS.

As a preliminary matter, the Court must address whether Plaintiffs are entitled to the discovery they request. "Generally, parties in a civil action may obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party." *Likas v. Like Ins. Co. of N. Am.*, 222 F. App'x 481, 485 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(1)). A court may limit discovery if it determines that a party's request is unduly burdensome, cumulative or duplicative, or available through other avenues. Fed. R. Civ. P. 26(b)(2)(c); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.") (citations omitted).

Parties are permitted to move to compel discovery. Fed. R. Civ. P. 37(a). "Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper response to requests for production of documents under Rule 34." *Wright v. State Farm Fire & Cas. Co.*, 2013 U.S. Dist. LEXIS 66275, at *4 (Oh. S.D. May 9, 2013). "The party moving to compel discovery must certify, however, that it 'has in good faith conferred or attempted to confer with the person or party failing to make disclosure in an effort to obtain it without court action.'" *Id.* at *4–5.

### 1. Responses to Interrogatories.

Plaintiffs point to several purported deficiencies with the Chief Clerk's responses to interrogatories. In the first instance, Plaintiffs "note that the federal courts do not accept 'general' objections," so they dispute the legitimacy of the Chief Clerk's responses making a "general

objection." [R. 48-1 at pg. 1]. Further, Plaintiffs quarrel with the Chief Clerk's responses to interrogatories numbered 1–10, 12, and 13.

**I. INTERROGATORY NO. 1**: Name the person or persons who **directed or authorized** the release[3] of the Republican Senate Candidate Andrew Cooperrider from this Federal action. Please state with specificity whether any such direction came from Impeachment Chair Jason Nemes, House Speaker Osborne, House staff, Paul Salamanca, Joshua Douglas, or any other person or entity.

[R. 48-1 at pg. 1] (emphasis in original).

In response to this interrogatory, according to Plaintiffs' counsel, the Chief Clerk noted that she was "the only party who could have reached an agreement to resolve the claims of any named Plaintiff." [*Id.* at pg. 2]; *but see* [R. 55-1 at pgs. 4–5] (Plaintiffs' counsel indicates that "No response was provided to" Interrogatory No. 1). As the lone defendant in this action—and as the sole official with authority to tax costs on failed impeachment petitioners under KRS § 63.070— the Chief Clerk's response is sufficient. Because the Chief Clerk's answer to Interrogatory No. 1 is neither evasive nor incomplete, she need not further respond to that interrogatory.

**II. INTERROGATORY NO. 2**: Do you assert that the release of GOP Senate Candidate Andrew Cooperrider was a "Legislative Act" conferring absolute immunity? If so, please describe in detail the legislative process authorizing the release. Please specifically identify all hallmarks of traditional legislation associated with any such "Legislative Act."

[R. 55-1 at pg. 5].

Plaintiffs characterize the Chief Clerk's response to this interrogatory as "non-responsive." [*Id.*]. However, counsel for the Chief Clerk represents to the Court that the response "[is] complete . . . ." [R. 50 at pg. 3; R. 56 at pg. 6]. Specifically, the Chief Clerk's counsel contends that the Chief Clerk "responded to those interrogatories that the Plaintiffs were stating legal conclusions

---

[3] Plaintiffs' counsel frequently uses the term "release" to characterize the Chief Clerk's settlement with the Beshear Plaintiffs—a settlement that was prompted by the Beshear Plaintiffs. [*See* R. 56 at pg. 4] ("After Governor Beshear filed a motion to dismiss, which was granted, the [Beshear] Plaintiffs contacted counsel for the Clerk and proposed settling their claims against the Clerk. . . . The [Cameron] and [Goforth] Plaintiffs have never contacted the Clerk seeking a similar settlement."). "Additionally, the Clerk has repeatedly reached out to counsel for the Plaintiffs about the possibility of further settlements, and the Plaintiffs have flatly rejected those settlement offers." [*Id.* at pg. 11].

or calling on the Clerk to reach a legal conclusion, which is not required under the Federal Rules of Civil Procedure." [R. 56 at pg. 12] (citing Fed. R. Civ. P. 33(a)(2)). Rule 33 "draws a distinction between questions of fact or of the application of law to fact on one hand and pure questions of law on the other." *Perez v. KDE Equine, LLC*, 2017 U.S. Dist. LEXIS 570, at *19 (W.D. Ky. Jan. 4, 2017). Interrogatories involving fact and law are permitted, those "asking solely about questions of law" are prohibited. *Id.* (citation omitted). Although Interrogatory No. 2 must be addressed on the facts of the case, it tends to seek a legal conclusion rather than an application of law to fact. Indeed, Interrogatory No. 2 requests the Chief Clerk "to make a legal analysis" as to the application of legislative immunity "on one of the factual issues in the case, which is impermissible." *Id.* at *20. Because the question of whether an act is legally "Legislative" as to confer absolute legislative immunity is one of law, the Court finds Interrogatory No. 2 to be improper. Accordingly, the Chief Clerk need not further respond to that interrogatory.

**III. INTERROGATORY NO. 3**: Do you contend that Defendant Bybee-Fields signed or authorized the Cooperrider release as a legislative official? If your answer is in the affirmative, please specifically identify the statute, regulation, or legitimate legislative act authorizing this action.

[R. 55-1 at pg. 5].

Much like with Interrogatory No. 2, Plaintiffs indicate that the Chief Clerk provided "[n]o response" to this interrogatory. [*Id.*]. But the Chief Clerk's counsel characterized the Chief Clerk's answers as "responsive"—detailing that the answers "described the process by which the settlement was authorized by her as the only remaining named party"—and noted that he "signed the Proposed Agreed Order on her behalf, and that her agreement was made in her capacity as Clerk of the House of Representatives." [R. 56 at pg. 12]. Because the Chief Clerk's answer to Interrogatory No. 3 is neither evasive nor incomplete, she need not further respond to that interrogatory.

**IV. INTERROGATORY NO. 4**: Please specify and detail the reasons for dismissing the Republican Plaintiffs, including Senate Candidate Andrew Cooperrider, while refusing to dismiss or release the Democratic, low income, or racially diverse Plaintiffs remaining in the action. [R. 48-1 at pg. 2].

To quote Plaintiffs' counsel's account of the Chief Clerk's response to this interrogatory: "certain parties requested a dismissal." [*Id.*]; *but see* [R. 55-1 at pg. 7] (Plaintiffs' counsel contends that "No answer was made by the" Chief Clerk to Interrogatory No. 4). Plaintiffs' counsel fears this response "fail[s] to state whether this was the only reason for the dismissal." [*Id.*]. Her fear is unfounded. When asked to specify the reasons for settling with the Beshear Plaintiffs and not the Cameron or Goforth Plaintiffs, the Chief Clerk provided her reason for doing so: the Beshear Plaintiffs requested to settle the claims following the dismissal of Governor Beshear from this action, while the other sets of Plaintiffs did not. Because the Chief Clerk's answer to Interrogatory No. 4 is neither evasive nor incomplete, she need not further respond to that interrogatory.

**V. INTERROGATORY NO. 5**: Please state whether there were any telephonic (phone call or text) communications from any Executive Branch officer or counsel for same to the Chair or members of the Impeachment Committee after the impeachments were filed but before the final notice and costs were sent to Plaintiffs' counsel. If your answer is in the affirmative, please state the date(s) of such communications, the parties to such communications, and the substance of each communication. [R. 48-1 at pg. 2].

The Chief Clerk responded to this interrogatory that *she* has "no knowledge of such communications."[4] [*Id.*]; *but see* [R. 55-1 at pg. 5] (Plaintiffs' counsel indicates that the Chief Clerk "refused to answer" Interrogatory No. 5). Plaintiffs' counsel is unsatisfied with the Chief Clerk's response, given her role as Chief Clerk. [*Id.*]. Specifically, Plaintiffs' counsel asks this Court to order the Chief Clerk to "confirm that she has reviewed her phone notes and the phone notes/messages/texts of all committee members, as her response is devoid of that confirmation."

---

[4] Specifically, the Chief Clerk's counsel indicates that the Chief Clerk lacks knowledge because she "took no part in any of the Committee's activities . . . ." [R. 56 at pg. 14].

[*Id.*]. But it is quite clear that the Chief Clerk's "response is devoid of that confirmation" solely because the interrogatory as posed by Plaintiffs' counsel "is devoid of that" request. [*Id.*]. So, the Chief Clerk need not supplement her answer to Interrogatory No. 5 with that information.

However, the Court does find that the Chief Clerk's answer to Interrogatory No. 5 is deficient on a different ground. "[I]t is well-understood that when answering interrogatory responses organizational parties 'must furnish the information available to the party.'" *Savage v. City of Lewisburg*, 2014 U.S. Dist. LEXIS 141777, at *17 (M.D. Tenn Oct. 6, 2014) (quoting Fed. R. Civ. P. 33(b)(1)(B)). Therefore, "a party cannot avoid giving an answer to an interrogatory by an allegation of ignorance if the party can obtain the information from sources under its control." *N.L.R.B. v. Rockwell-Standard Corp., Transmission & Axle Div., Forge Div.*, 410 F.2d 953, 958 (6th Cir. 1969). Consequently, it is insufficient for the Chief Clerk "to rely exclusively on [her] personal knowledge . . . [,]" *Savage*, 2014 U.S. Dist. LEXIS 14177, at *17, as "[a]n answering party cannot limit [her] answers to matters within [her] own knowledge and ignore information immediately available to [her] or under [her] control." *Maurer v. Jones*, 2019 U.S. Dist. LEXIS 139580, at *10 (W.D. Ky. Aug. 16, 2019). Because the Chief Clerk's answer to Interrogatory No. 5 is deficient under Rule 33(b)(1)(B), she must supplement her response informed by all information available to her in her official capacity as Chief Clerk of the House of Representatives.

**VI. INTERROGATORY NO. 6**: Please state why only certain Parties Plaintiff in each impeachment action were assessed costs, fees or fines at the legislative level while others were not. [R. 55-1 at pg. 6].

Plaintiffs' counsel indicates that "[t]here was no response to this question." [*Id.*]. However, counsel for the Chief Clerk represented to the Court that its responses "were complete . . . ." [R. 50 at pg. 3]; [R. 58 at pg. 6]. Because the Chief Clerk's response to the interrogatory is not before

the Court, the Court cannot justly adjudicate whether her response was insufficient. Accordingly,

at this time, the Court will not order the Chief Clerk to further respond to Interrogatory No. 6.

**VII. INTERROGATORY NO. 7**: Please detail the authority under which Joshua Douglas and Paul Salamanca, in their capacity as persons testifying before a legislative committee, were permitted to charge significant fees to private persons with whom they share no professional relationship.
[R. 48-1 at pg. 3].

The Chief Clerk responded to this interrogatory that "*she* has no knowledge of the process

by which Joshua Douglas or Paul Salamanca testified before the impeachment committee or

documented the fees they would customarily receive for their time and work." [*Id.*] (emphasis

added); *but see* [R. 55-1 at pg. 5] (Plaintiffs' counsel indicates that the Chief Clerk "refused to

answer" Interrogatory No. 7). As with Interrogatory No. 5, the Court finds that the Chief Clerk's

answer to Interrogatory No. 7 is deficient for its reliance on personal—not institutional—

knowledge. *See N.L.R.B.*, 410 F.2d at 958; *Savage*, 2014 U.S. Dist. LEXIS 14177, at *17; *Maurer*,

2019 U.S. Dist. LEXIS 139580, at *10. Because the Chief Clerk's answer to Interrogatory No. 7

is deficient under Rule 33(b)(1)(B), she must supplement her response informed by all information

available to her in her official capacity as Chief Clerk of the House of Representatives.

**VIII. INTERROGATORY NO. 8**: Please give the date(s) on which the members of the legislative impeachment committee met to determine which Plaintiffs to release from the action. For each such date, identify the members voting and the vote of each member.
[R. 48-1 at pg. 3].

According to Plaintiffs' counsel, the Chief Clerk "responded that this information is

privileged." [*Id.*]. Plaintiffs' counsel, unsatisfied with the Chief Clerk's response, requests the

Chief Clerk (1) "clarify why information on a date about the meeting of a legislative committee

and which members of the committee were present on that date or dates is privileged or

confidential," (2) "clarify why a legislative committee member's vote is privileged or confidential"

and (3) "affirm that the lack of any meeting by the members regarding the dismissal means the

committee was not involved in the dismissal decision." [*Id.*]. As to Plaintiffs' counsel's third request, the Court directs her back to the Chief Clerk's sufficient response to Interrogatory No. 1, where the Chief Clerk noted that she was "the only party who could have reached an agreement to resolve the claims of any named Plaintiff." [*Id.* at pg. 2]. Accordingly, the Chief Clerk's response sufficiently "affirm[s] that the lack of any meeting by the members regarding the dismissal means the committee was not involved in the dismissal decision." [*Id.* at pg. 3]. Therefore, the Chief Clerk need not supplement her answer to Interrogatory No. 8 with that information. However, as to Plaintiffs' counsel's other two requests, the Court directs the Chief Clerk to produce and distribute a privilege log in conformity with this Order.[5]

**IX. INTERROGATORY NO. 9**: Please outline how Joshua Douglas and Paul Salamanca were determined to be appropriate "experts" in the impeachment matters and give the name(s) of the specific individuals who retained them in this matter.
[R. 48-1 at pg. 3].

In response to this interrogatory, the Chief Clerk contends that she has "no knowledge of the process by which Joshua Douglas or Paul Salamanca testified before the Impeachment Committee or were retained in this matter." [*Id.*]; *but see* [R. 55-1 at pg. 6] (Plaintiffs' counsel indicates that "No response was provided to" Interrogatory No. 9). Again, as with Interrogatory Nos. 5 and 8, the Court finds that the Chief Clerk's answer to Interrogatory No. 9 is deficient for its reliance on personal knowledge, or lack thereof. *See N.L.R.B.*, 410 F.2d at 958; *Savage*, 2014 U.S. Dist. LEXIS 14177, at *17; *Maurer*, 2019 U.S. Dist. LEXIS 139580, at *10. Because the Chief Clerk's answer to Interrogatory No. 9 is deficient under Rule 33(b)(1)(B), she must supplement her response informed by all information available to her in her official capacity as Chief Clerk of the House of Representatives.

---

[5] The Court addresses privilege logs in more detail *infra* at § III(B)(1) Privilege Log.

**X. INTERROGATORY NO. 10**: Please state whether Speaker Osborne in his official or private capacity was involved in the decision to allow his counsel, Paul Salamanca, to testify in the impeachment action and to charge significant fees to private citizens.

[R. 55-1 at pg. 5].

Plaintiffs' counsel avers that the Chief Clerk "refused to answer [this] question." [*Id.*].

Counsel for the Chief Clerk represents to the Court that its responses "were complete . . . ." [R. 50 at pg. 3; R. 58 at pg. 6]. The Chief Clerk's response is not before the Court, so the Court cannot justly adjudicate whether her response was insufficient. Accordingly, at this time, the Court will not order the Chief Clerk to further respond to Interrogatory No. 10.

**XI. INTERROGATORY NO. 12**: Please state whether there were impeachment actions filed in 2021 that were not referred to the legislative impeachment committee.
   **INTERROGATORY NO. 13**: Please state the total number of impeachment actions filed in 2021, and detail who they were filed against and the disposition of each impeachment action.

[R. 55-1 at pg. 6].

According to Plaintiffs' counsel, the Chief Clerk responded to Interrogatory No. 13 that "only three (3) impeachment actions were filed in 2021." [R. 48-1 at pg. 4]. Plaintiffs' counsel characterized this response as "patently false," claiming that "the media noted contemporaneously a significant number of impeachment petitions in 2021." [*Id.*]. According to Plaintiffs' counsel, the Chief Clerk then supplemented her responses to Interrogatory Nos. 12 and 13 to indicate "that there were three more impeachment actions filed in 2021[.]" [R. 55-1 at pg. 7]. Plaintiffs' counsel is unsatisfied with the Chief Clerk's supplemented answer because it does not "detail any reason for the disparate treatment of those petitions." [*Id.*]. However, Interrogatories No. 12 and 13 do not ask the Chief Clerk to "detail any reason for the disparate treatment of those petitions." [*Id.*]. Because the Chief Clerk's supplemented answers to Interrogatory Nos. 12 and 13 are neither evasive nor incomplete, she need not further respond to those interrogatories.

   2.  **Requests for Production.**

Plaintiffs allege that the Chief Clerk's responses to Plaintiffs' requests for production of documents are deficient. Specifically, Plaintiffs quarrel with the Chief Clerk's responses to requests for production numbered 1–4, and 6.

**I. REQUEST NO. 1**: Please provide a copy of the contract(s) under which Joshua Douglas and Paul Salamanca were retained for their testimony before the legislative impeachment committee. [R. 55-1 at pg. 4]

  **REQUEST NO. 2**: Please provide a copy of any contract under which Paul Salamanca was employed as counsel or otherwise by the legislature or LRC or any member thereof in the years 1/1/2020 – 4/10/2022.
[R. 48-1 at pg.4].

According to the Chief Clerk's counsel, the Chief Clerk responded to these requests that she "has no documents relevant to [these] request[s]. If any such documents are identified or located through additional diligent search, the Defendant may supplement [these] response[s] consistent with the FRCP and this Court's Local Rules." [R. 56 at pg. 10]. To the extent that the Chief Clerk's responses are informed by personal, rather than institutional, knowledge, she must supplement her responses to Request for Production Nos. 1 and 2.[6] If the Chief Clerk discovers relevant documents relating to Plaintiffs' request during her search of institutional resources, she must produce the documents. If the documents are privileged, the Chief Clerk must indicate as such and provide a sufficient privilege log.[7]

**II. REQUEST NOS. 3, 4, and 6**: These RPFs 3 and 4 request confirmation that each and every meeting of the impeachment committee and its members and every document provided to the impeachment committee or created by the impeachment committee has been received by Plaintiffs. RPF #6 asked for all communications between the Executive Branch or any officer thereof and the Impeachment Committee Chair.

[R. 48-1 at pg.4].

---

[6] Notably, the Chief Clerk relies on the fact that she did not personally take part "in any of the Committee's activities," to assert that she "has no knowledge of or possession, custody, or control of any" requested documents. [R. 56 at pg. 10]. However, as indicated earlier in this Opinion, the Chief Clerk's personal knowledge is irrelevant when sued in her official capacity. Put another way, in this action, the Chief Clerk is charged with knowledge of all things discoverable as one who holds the Office of Chief Clerk of the House of Representatives, not with the limited personal knowledge of Mrs. Bybee-Fields.

[7] The Court address privilege logs in more detail *infra* at § III(B)(1) Privilege Log.

According to Plaintiffs' counsel, the Chief Clerk "affirmed that the entirety of such documents and meetings are completely contained on the LRC website." [*Id.*]. Yet, Plaintiffs' counsel insists that the Chief Clerk should again "affirm that [her] answer is full and complete." [*Id.*]. Because the Chief Clerk's answer to Requests for Production Nos. 3, 4, and 6 are neither evasive nor incomplete, she need not further respond to these requests for production.

## B.  LEGISLATIVE PRIVILEGE.

In addition to moving the Court to compel supplementary responses to various interrogatories and requests for production, Plaintiffs' counsel requests the Court direct the Chief Clerk to produce (1) a privilege log that supports her claims of legislative privilege, attorney-client privilege, and the work-product doctrine, and (2) "all relevant evidence upon which [she] relies in claiming 'absolute legislative privilege.'" [R. 55 at pg. 4].

### 1.  Privilege Log.

The party raising a privilege holds the burden of establishing the privilege's existence. Fed. R. Civ. P. 26(b)(5); *Osborn v. Griffin*, 2013 U.S. Dist. LEXIS 132613, at *6 (E.D. Ky. Sept. 17, 2013); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) ("The burden of establishing the existence of the privilege rests with the person asserting it."). A party withholding information on the grounds of any privilege must comply with Rule 26, which reads in part:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Generally, when a privilege is asserted, counsel is obligated to create and produce a privilege log laying out the information required under Rule 26. *Mafcote, Inc. v. Federal Ins. Co.*, 2010 U.S. Dist. LEXIS 46471, at *5 (W.D. Ky. May 12, 2010). This is done so that the Court can assess the claim of privilege and determine if it is a legitimate one. "In order to meet the requirements of the Federal Rules and justify a claim of privilege, . . . a privilege log must contain sufficient factual content to allow the court to reach the conclusion that each element of that privilege is fulfilled." *Id.* In *Mafcote*, the court explained that privilege logs should include:

(a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions.
(b) The document's date.
(c) The purpose and subject matter of the document.
(d) The nature of the privilege[] asserted, and why the particular document is believed to be privileged.

*Id.* at *6.

At times, the Chief Clerk asserts legislative privilege, attorney-client privilege, and the work-product doctrine to avoid answering interrogatories or producing documents. But Plaintiffs' counsel asserts that the Chief Clerk's counsel failed to provide a privilege log pursuant to Rule 26. The Chief Clerk's counsel does not rebut this claim in Response. [R. 56]. Failure to produce a privilege log is fatal to a party's assertion of privilege. For the Court to respect the Chief Clerk's assertions of privilege, her counsel must provide Plaintiffs' counsel and the Court with a sufficiently detailed privilege log. *See Mafcote*, 2010 U.S. Dist. LEXIS 46471, at *5.

On a related note, the Chief Clerk often cites "legislative immunity" as a reason for why she does not need to respond in greater detail to Plaintiffs' interrogatories and requests for production of documents. *See, e.g.*, [R. 56 at pgs. 1, 2, 12]. Plaintiffs' counsel similarly refers to "legislative immunity," even dedicating an entire section of her Argument to the topic. *See, e.g.*, [R. 55-1 at pg. 8] ("A claim of 'absolute legislative immunity' must be decided as an initial matter

in any case where it may be relied upon, and that determination is subject to immediate appeal."). But both counsel miss the mark. In a motion to compel, where questions of discovery are at issue, the relevant question is whether the legislative *privilege*—not legislative *immunity*—applies.

Without doubt, federal common law extends absolute legislative *immunity* derived from the Federal Speech and Debate Clause to state legislators. *See generally*, *Bradley v. Mallory*, 871 F.2d 1087 (6th Cir. 1989); *Tenney v. Brandhove*, 341 U.S. 367 (1951). However, the legislative *privilege* afforded to state legislators is qualified. *Mich. State A. Philip Randolph Inst. v. Johnson*, 2018 U.S. Dist. LEXIS 87623, at *11 (E.D. Mich. Jan. 4, 2018) ("[S]tate legislators enjoy only a qualified legislative privilege against having to provide records or testimony concerning their legislative activity, which can be overcome in extraordinary circumstances, *e.g.*, where important federal interests are at stake.").

"[F]ederal common law governs claims of legislative privilege for state legislators in federal question cases because neither the federal Speech or Debate Clause nor the [state constitution] protects state legislators from interference by the federal government." *League of Women v. Johnson*, 2018 U.S. LEXIS 86398, at *6 (E.D. Mich. May 23, 2018); *see* Fed. R. Evid. 501 (noting that in federal question cases, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless" the U.S. Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise.). *See also United States v. Gillock*, 445 U.S. 360, 374 (1980) ("The Federal Speech or Debate Clause, of course, is a limitation on the Federal Executive, but by its terms is confined to federal legislators. The [state] Speech or Debate Clause is in terms a limit only on the prosecutorial powers of that State."); *Nashville Student Org. Comm. v. Hargett*, 123 F.Supp.3d 967, 969–70 (M.D. Tenn. 2015). "To be sure, a state legislator's privilege is qualified, not absolute; a state legislator's privilege is

not coterminous with the privilege of a member of Congress under the Constitution's Speech and Debate Clause." *Florida v. United States*, 886 F.Supp.2d 1301, 1303–04 (N.D. Fla. 2012).

Qualified legislative privilege carefully balances "the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process." *N. Carolina State Conference of the NAACP v. McCrory*, 2014 U.S. Dist. LEXIS 185130, at *2 (M.D. N.C. Nov. 20, 2014). Courts assess whether the qualified legislative privilege applies using a five-factor balancing test. The five-part test was laid out in *Rodriguez v. Pataki*, 280 F.Supp.2d 89, 100–01 (S.D. N.Y. 2003), and has been adopted by district courts in the Sixth Circuit. *See, e.g.*, *Johnson*, 2018 U.S. Dist. LEXIS 87623, at *14; *League of Women*, 2018 U.S. Dist. LEXIS 86398, at *7–8. Under *Rodriguez*, the Court must consider: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Rodriguez*, 280 F.Supp.2d at 100-01. Further, the Court may consider "the purpose of the legislative privilege, evidence that the legislator's compliance would divert them from their legislative duties and/or impose an impermissible burden upon them, and the possibility of waiver as to any document." *McCrory*, 2014 U.S. Dist. LEXIS 185130, at *2.

For these reasons, in cases such as this one, any assertion that a party need not respond to interrogatories or produce certain documents should invoke legislative *privilege*, not legislative *immunity*, as the applicable law for each differ.

### 2. All Relevant Evidence Relied Upon.

Although Plaintiffs' counsel correctly seeks a privilege log from counsel for the Chief Clerk, Plaintiffs' counsel is misguided in urging the Court to compel the Chief Clerk to produce all relevant evidence relied upon in determining that a privilege applies. [R. 57 at pg. 7]. If the

Court were to compel the Chief Clerk to produce such evidence, the privilege would be without teeth. Indeed, "parties in a civil action may obtain discovery regarding any *unprivileged* matter that is relevant to the claim or defense of any party." *Likas*, 222 F. App'x at 485 (citing Fed. R. Civ. P. 26(b)(1)) (emphasis added). In fact, it is for this reason that privilege logs are used. For "[w]ithout such a privilege log, [the party opposing privilege is] unfairly denied the opportunity to assess the claim of privilege" because they cannot otherwise access the evidence relied upon in determining that a privilege applies. *Fuller v. Kerr*, 2015 U.S. Dist. LEXIS 45684, at *11 (E.D. Mich. April 8, 2015) (referencing Fed. R. Civ. P. 26(b)(5)(A)(ii)). Just as the Court will not "require the [Plaintiffs] to simply take the [Chief Clerk's] word . . . as to the propriety of [her] decision to unilaterally withhold information[,]" so to the Court will not require the Chief Clerk to produce the very evidence she seeks to protect. *Id.*

## C.  REINSTATING PUBLIC RECORDS ON THE LRC'S WEBSITE.

Whether this Court should "order" the Chief Clerk to "ensure that the public records of the impeachment committee are reinstated on the LRC's website for public review[,]" resolved organically through briefing. [R. 51 at pg. 4].

In her Answer to Interrogatory No. 8, the Chief Clerk provided Plaintiffs with a direct link to all public materials concerning the 2021 Regular Session Impeachment Committee, including its minutes. [*See* R. 56 at pg. 5, citing Answer to Interrogatory No. 8]. The links provided by the Chief Clerk are in working order and direct Plaintiffs' counsel to the LRC's public-facing pages that host all public information concerning the actions of the Impeachment Committee. Although Plaintiffs assert in their motion that "Defendant has misrepresented to this Court and counsel the location and accessibility of the entirety of the Impeachment Committee's work," the Court has found that the links provided by the Chief Clerk work. [R. 55-1 at pg. 3]. More importantly, in her response, the Chief Clerk noted that "counsel for the Plaintiffs sent an email to counsel for [the

Chief Clerk] . . . requesting these links again, which were again provided by [her] counsel . . . by email sent on June 20, 2022, to which counsel for the Plaintiffs replied 'Received. Thank you' that same morning." [R. 56 at pg. 6]. Critically, Plaintiffs' counsel did not address this matter in her subsequent Reply. Thus, as it appears counsel for the parties independently resolved the matter, the Court need not consider this aspect of Plaintiffs' motion.

### D. SANCTIONS.

In addition to her requests for the Court to (1) compel supplementation to numerous interrogatories and requests for production of documents, (2) direct the production of a privilege log, and (3) "order" the reinstatement of public records on the LRC's website, Plaintiffs' counsel further urges the Court to (4) sanction the Chief Clerk "for [her] ongoing refusal to provide the requested information in a matter that is of significant public concern." [55-1 at pg. 14].

The Federal Rules of Civil Procedure provide that "[i]f a party … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). However, the Court perceives no issues concerning compliance with any orders of the Court. Moreover, to alleviate concerns of compliance during the discovery period, this Court reminds the parties of Rule 1's language: "[t]hese rules … should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Therefore, at this time, the Court will deny Plaintiffs' motion for sanctions against the Chief Clerk.

### E. DEPOSITION.

In the final sentence of her reply, Plaintiffs' counsel requests this Court to order "that the House Clerk be scheduled for a deposition . . . ." [R. 57 at pg. 7]. A thorough review of the record reveals no evidence that Plaintiffs' counsel previously noticed a deposition of the Chief Clerk before discovery closed on June 1, 2022. Although Plaintiffs' counsel moved to compel discovery

on May 31, 2022, she did not provide a request for a deposition in the motion. *See* [R. 55; 55-1]. Plaintiffs' counsel's first request to depose the Chief Clerk appears in the very last sentence of her reply, filed July 18, 2022—well after the close of discovery.[8] [R. 57 at pg. 7].

The Court has broad discretion over discovery matters, including reopening discovery. *See Brasfield & Gorrie v. Harrod Concrete & Stone Co.*, 2021 U.S. Dist. LEXIS 227198, at *3–4 (E.D. Ky. Aug. 23, 2021). "Accordingly, a court may modify a discovery schedule for good cause[,]" and with the judge's consent. *Id.* at *4 (citing Fed R. Civ. P. 16(b)(4)); *see also Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (noting that district courts have "broad discretion under the rules of civil procedure" in managing the discovery process). "Courts consider five factors when determining whether to reopen discovery: (1) whether the movant has demonstrated good cause for reopening discovery; (2) whether the need for additional discovery was precipitated by the neglect of the movant or by the party opposing the motion to reopen; (3) the specificity of the discovery that is sought; (4) the relevance of the discovery being sought; and (5) whether the party opposing the motion to reopen discovery will be prejudiced." *Id.* (citing *Fedex Corp. v. United States*, 2011 U.S. Dist. LEXIS 59570, at *10 (W.D. Tenn. Mar. 28, 2011)).

Most of these factors weigh against reopening discovery. But more importantly, Plaintiffs' counsel made no attempt to demonstrate good cause. As aforementioned, Plaintiffs' counsel's request to depose the Chief Clerk is made one month-and-a-half after the close of discovery in the final sentence of her reply to the Chief Clerk's response to the Plaintiffs' motion to compel. Notably, the request to depose the Chief Clerk is not supported with any argument—the request is made in passing without any reference being made to it previously in any briefing.

---

[8] Notably, on May 31, 2022—a day before the close of discovery—Plaintiffs' counsel requested a telephone conference with the Court to discuss the subject discovery disputes. [R. 48]. Accordingly, the Court deems most of the issues raised by Plaintiffs' counsel as timely. However, as a deposition was never mentioned in the June 10, 2022 telephone conference, nor in the Motion to Compel that was prepared thereafter, Plaintiffs' counsel's request to depose the Chief Clerk is deemed untimely.

Granting Plaintiffs' request to conduct a deposition this late in litigation—now two-months after the close of discovery, and less than two months before trial—would effectively reopen discovery without good cause. Accordingly, the Court denies Plaintiffs' request to reopen discovery to depose the Chief Clerk.

## IV. CONCLUSION

The Court, having considered the issues and being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiffs' motion to compel [R. 55] is **GRANTED IN PART** and **DENIED IN PART**.

1. The Plaintiffs' motion to compel the Defendant, Chief Clerk Bybee-Fields, to supplement her responses to Interrogatory Nos. 5, 7, and 9 is **GRANTED**. Within 7 days of the entry of this Order, the Defendant shall supplement her responses to Interrogatory Nos. 5, 7, and 9 as informed by all information available to her in her official capacity as Chief Clerk of the House of Representatives.

2. The Plaintiffs' motion to compel the Defendant to supplement her responses to Interrogatory Nos. 1, 2, 3, 4, 6, 8, 10, 12, and 13 is **DENIED**.

3. The Plaintiffs' motion to compel the Defendant to supplement her responses to Request for Production Nos. 1 and 2 is **GRANTED**. Within 7 days of the entry of this Order, the Defendant shall supplement her response to Request for Production Nos. 1 and 2 as informed by all information available to her in her official capacity as Chief Clerk of the House of Representatives.

4. The Plaintiffs' motion to compel the Defendant to supplement her responses to Request for Production Nos. 3, 4, and 6 is **DENIED**.

5. The Defendant is **DIRECTED** to produce a sufficiently detailed privilege log documenting all claims of privilege consistent with this Opinion, and shall include:

    a. The author and all recipients, along with their capacities/roles/positions.

    b. The document's date.

    c. The purpose and subject matter of the document.

    d. The nature of the privilege asserted, and why the particular document is believed to be privileged.

6. The Plaintiffs' motion to compel the Defendant to produce all relevant evidence relied upon in determining whether a privilege applies is **DENIED**.

7. The Plaintiffs' motion for sanctions is **DENIED**.

8. The Plaintiffs' motion to reopen fact discovery to conduct a deposition of the Defendant is **DENIED**.

Signed September 2, 2022.

**Signed By:**

**Edward B. Atkins**   *EBA*

**United States Magistrate Judge**