UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

KEVIN GLOGOWER, *et al.*,        )
                                 )
        Plaintiffs               )
                                 )
v.                               )        CASE NO. 3:21-cv-00012-GFVT
                                 )
                                 )
MELISSA BYBEE FIELDS, in their official  )
capacity, *et al.*               )
                                 )
        Defendants.              )

## DEFENDANT'S PRE-TRIAL MEMORANDUM

\*\*\* \*\*\* \*\*\* \*\*\*

Comes the Defendant, Melissa Bybee-Fields, by counsel, and pursuant to this Court's Scheduling Order, and hereby submits the following Pre-Trial Memorandum:

## INTRODUCTION

The Kentucky Constitution grants the Kentucky House of Representatives ("House") plenary power over impeachment. *See* KY. CONST. § 66 ("The House of Representatives shall have the sole power of impeachment."). This grant of power implicates the legislative immunity provided to the members of the Kentucky General Assembly by the Kentucky Constitution. *See* KY. CONST. § 43 ("The members of the General Assembly shall . . . be privileged from arrest . . . and for any speech or debate in either House they shall not be questioned in any other place."). The Third Circuit Court of Appeals has specifically held legislative immunity applies to legislators acting in impeachment proceedings. *See Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 251-52 (3d Cir. 1998) ("[W]hen legislators play the role they have been given in impeachment proceedings, they act within the sphere of legitimate legislative activity and within

their legislative capacities.  Thus, the necessity for independence requires that legislators be accorded legislative immunity and 'not be questioned in any other place,' concerning their activity and their decision.") (citation omitted).   Further, state legislators are afforded absolute legislative immunity against a claim for damages, as well as against claims for injunctive and declaratory relief, for their actions in an impeachment proceeding.  *Id*. at 252-53; *see also generally Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359 (6th Cir. 2022) (discussing the broad application of legislative immunity to activities within the legislative sphere).  And, to the extent the Plaintiffs have named the defendant House Clerk, Melissa Bybee-Fields, ("Clerk"), the United States Supreme Court has also held "that the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel v. United States*, 408 U.S. 606, 618 (1972).

## FACTUAL SUMMARY

During the 2021 Regular Session of the General Assembly, plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark ("Cooperrider Plaintiffs") brought an impeachment petition against Kentucky Governor Andy Beshear; plaintiffs John Does 1-3, through their Counsel, plaintiff Kevin Glogower, Esq. ("Glogower Plaintiffs") brought an impeachment petition against Kentucky Attorney General Daniel Cameron; and plaintiffs Michael and Carol VanWinkle ("VanWinkle Plaintiffs") brought an impeachment petition against former state Representative Robert Goforth.  The House appointed an Impeachment Committee ("Committee") to investigate the petitions, which met and heard testimony concerning the petitions.  The Clerk, the only remaining named Defendant herein, was busy with duties attending to the sessions of the House and took no part in any of the Committee's

2

activities.

All of the petitioners and the Plaintiffs were advised that KRS 63.070 authorizes costs to be assessed to the petitioners if the committee reported against the petition and if the report was not overruled by the House. *See* KRS 63.070(1) ("In a proceeding for impeachment or removal by address, if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee."). Each of the petitioners and plaintiffs herein chose to continue with their petitions despite the notice regarding KRS 63.070 and the potential imposition and taxing of costs against them.

Ultimately, the Committee reported against the petitions and recommended the House take no further action on them. At the conclusion of the Committee's investigation, and pursuant to KRS 63.070, the Committee collected the various costs related to the Committee's work and sent a letter to each group of petitioners documenting those costs. The Plaintiffs have essentially pled in their Complaint the pure legal question as to whether this statute may be invoked to tax the costs of their failed petitions against them. However, several very important facts are that the Clerk did not send those letters to the Plaintiffs; the Clerk took no action related to the impeachment petitions or investigations; and to this day the Clerk has not taxed any costs on any of the Plaintiffs.

Nonetheless, the Plaintiffs filed a Complaint in this Court seeking a declaration that KRS 63.070 is unconstitutional and requesting permanent injunctive relief prohibiting enforcement of the statute and prohibiting the Clerk from taxing the costs against the Plaintiffs, which she had and has not done. After Governor Beshear filed a motion to dismiss, which was granted, the

3

Cooperrider Plaintiffs contacted counsel for the Clerk and proposed settling their claims against the Clerk.  On or about February 22, 2022, the Cooperrider Plaintiffs and the Clerk filed a Proposed Agreed Order in which those Plaintiffs agreed to dismiss and withdraw their claims and the Clerk agreed she will never tax any costs against those Plaintiffs.  On or about February 24, 2022, the Court entered an Order granting the Parties' Proposed Agreed Order and the Cooperrider Plaintiffs' claims were dismissed.  The Glogower and VanWinkle Plaintiffs have never contacted the Clerk seeking a similar settlement.

Beginning on or about May 5, 2022, counsel for the Clerk attempted to contact counsel for the remaining Plaintiffs to discuss potential settlement of additional claims.  The voicemail messages were not returned.  On or about May 11, 2022, counsel for the Clerk sent an electronic mail message (e-mail) to counsel for the remaining Plaintiffs again noting a desire to discuss settlement of additional claims.  On or about May 12, 2022, counsel for the Clerk sent an e-mail again and requested that counsel for the Plaintiffs call him on his personal cell phone at her convenience to discuss "an agreed order of dismissal as previously agreed to and filed with other named plaintiffs . . . ."  Counsels for the parties did speak by phone later that same day.  However, counsel for the Plaintiffs was resistant to any settlement discussions and merely stated she would discuss the proposed further settlement, extended on the same terms as previously agreed to by the Cooperrider Plaintiffs, with her Plaintiff clients.

As noted, the Clerk has not actually taxed or "imposed" any penalties on any of the Plaintiffs.  Additionally, the Plaintiffs falsely stated "[t]he case involves the disparate treatment by Defendant of the Plaintiff who was a white, financially secure Republican candidate for office, who was released from the action, and the Defendants [sic] who were racially diverse, low-income Democratic voters/taxpayers, who were not released from the action."  Aside from

the fact that the Clerk does not know any of the former or remaining plaintiffs' race, income, or political affiliation (except that Mr. Cooperrider was a candidate for state office), as noted herein, the Clerk has extended an offer to settle additional claims by at least some of the remaining Plaintiffs on the same terms as agreed-to with those Cooperrider Plaintiffs. However, since it is the Plaintiffs who brought the Complaint, it is the Plaintiffs who have the power to release the Clerk, which the Plaintiffs have flatly refused to do.

At the hearing on the discovery dispute, counsel for the Plaintiffs then stated that she had not seen any settlement offer in writing and so it was unclear on what terms her clients were being asked to agree. Counsel for the Clerk then promptly sent counsel for the Plaintiffs a written settlement offer on the same terms as proposed by the Cooperrider Plaintiffs, but counsel for the Plaintiffs cast doubt on whether that settlement offer would be accepted by her clients. Those Plaintiffs then unequivocally stated in their Motion to Compel that they have REJECTED this offer of settlement, *see* Memorandum at page 11, while also repeatedly continuing the false narrative that the Clerk has selectively "released" the Cooperrider Plaintiffs but not the remaining Plaintiffs. *Id*. at 4. Again, the Clerk is the defendant in this matter and cannot "release" any of the Plaintiffs without their agreement, which they have refused to grant even though she has extended settlement offers.

The Plaintiffs' arguments are almost exclusively confined to politically attacking "the House" for how the Committee investigated the impeachment petitions and on matters that are not relevant to the legal issue at the heart of their Complaint – the applicability of KRS 63.070, even though the Clerk has not acted under the statute.

## QUESTIONS OF FACT

1. Has the Clerk taken any action against any of the Plaintiffs?

2.  Has the Clerk taxed any costs against any of the Plaintiffs?

3.  Have the Plaintiffs received any communications from the Clerk related to costs?

4.  Has the Clerk filed any action in Franklin Circuit Court seeking to recover any taxed costs?

5.  Have the Glogower or Van Winkle Plaintiffs ever contacted the Clerk seeking to settle their claims?

6.  Have the Glogower or Van Winkle Plaintiffs rejected a settlement offer that was extended by the Clerk?

7.  What damages have the Glogower or Van Winkle Plaintiffs suffered if there have not been any costs taxed to them?

8.  Was any Plaintiff prohibited from filing a petition for impeachment or prohibited from exercising any constitutional right?

9.  What facts establish any knowledge by the Clerk of the Plaintiffs' gender, race, ethnicity, socio-economic status, or political affiliation?

## **QUESTIONS OF LAW**

1.  Are Plaintiffs' claims ripe if the Clerk has taken no action against them?

2.  Are Plaintiffs' claims ripe if there have been no costs actually taxed against them?

3.  Does any claim of a constitutional violation under KRS 63.070 require that costs actually be taxed?

4.  Does a citizen of the Commonwealth of Kentucky have a constitutional right to petition the General Assembly's House of Representatives to impeach a public official, or is that right merely a conditional right granted by state statute?

5.  Is a statutory scheme governing an impeachment process that permits citizens to petition

for impeachment, but also subjects those petitioners to potential costs for petitions that are found to be without merit, constitutional?

6. Can a Plaintiff maintain a claim of disparate treatment if the Clerk had no knowledge of their alleged protected class status?

7. Can a Plaintiff establish constitutional violation claims related to costs being taxed for an impeachment petition when the Clerk offers to settle those claims by agreeing to never tax the costs but the Plaintiff rejects that settlement offer?

8. Are the actions of the Impeachment Committee subject to judicial review, or are those legislator members, and their aides, protected by absolute legislative immunity?

9. Are the actions of the Impeachment Committee subject to judicial review, or are those actions by the legislator members, and their aides, non-justiciable political questions?

## EXPECTED EVIDENTIARY OBJECTIONS

The Defendant Clerk anticipates objecting to any offered evidence related to the actions by the House of Representatives, the Impeachment Committee, or any member thereof, as those bodies of legislators or those individual legislators were acting within their legislative capacities, are absolutely immune, and are not named defendants to this action.  The Defendant Clerk also anticipates objecting to any offered evidence related to the Plaintiffs' gender, race, ethnicity, socio-economic status, and political party affiliation as the Plaintiffs will not be able to provide any evidence showing the Clerk's knowledge of the Plaintiffs being in any protected class.

## PENDING MOTIONS

The Defendant currently has a pending Motion to Dismiss based on the Plaintiffs failing to state a claim upon which relief may be granted and on the Plaintiffs' lack of standing because the Plaintiffs have not alleged an injury or an injury in fact, and because their claims are not ripe.

## STATUS OF SETTLEMENT NEGOTIATIONS

The Defendant Clerk has extended a settlement offer in writing to the Glogower Plaintiffs, stating she will agree to the same terms as previously agreed to with the Cooperrider Plaintiffs, as those terms were stated in an Agreed Order filed with this Court. The Glogower Plaintiffs flatly rejected that settlement offer, and instead have chosen to continue this litigation over an alleged injury that has not occurred because no costs have been taxed against them by the Clerk. The Defendant Clerk is willing to engage in further settlement negotiations in a settlement conference.

Respectfully submitted:

/s/ Greg Woosley
Gregory A. Woosley (91428)
General Counsel
Legislative Research Commission
Capitol, Room 300
700 Capitol Avenue
Frankfort, Kentucky 40601
Telephone:    (502) 564-8100
Fax:          (502) 564-6543
Email:        greg.woosley@lrc.ky.gov

*Counsel for Defendant,*
*Melissa Bybee-Fields*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2022, a copy of the foregoing Pre-Trial Memorandum will be sent by operation of the Court's CM/ECF system to all parties or their counsel indicated on the electronic filing receipt. Parties may access the filing through the Court's CM/ECF system.

/s/ Greg Woosley
Gregory A. Woosley