UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:21-CV-00012-EBA

KEVIN GLOWGOWER, *et al.*                                           PLAINTIFFS

V.                                            **ORDER**

MELISSA BYBEE-FIELDS, *et al.*                                      DEFENDANTS

*** *** *** ***

## I. INTRODUCTION

On July 28, 2022, Defendant Melissa Bybee-Fields, sued in her official capacity as Chief Clerk of the Kentucky House of Representatives ("Chief Clerk"), moved to dismiss the Plaintiffs' Complaint. [R. 58]. The Plaintiffs responded, [R. 59], and the Chief Clerk replied. [R. 60]. For the reasons expressed in this Opinion, the Court takes the Motion to Dismiss under advisement.

## II. FACTS AND PROCEDURAL HISTORY

In January 2021, three sets of petitioners petitioned the General Assembly to impeach three different elected officials—Governor Andy Beshear, Attorney General Daniel Cameron, and Representative Robert Goforth. The Beshear Petition—filed by the Beshear Plaintiffs, Andrew Cooperrider, Tony Wheatley, and Jacob Clark (who are no longer parties to this action)—"was supported by dozens of other Kentucky residents as affiants, and approximately another 100,000 Kentucky residents submitted supporting petitions." [R. 1 at ¶ 12]. The Goforth Petition—filed by the Goforth Plaintiffs, Michael and Carol VanWinkle—"was supported by approximately a dozen other Kentucky residents." [*Id.* at ¶ 13]. The Cameron Petition—filed by the Cameron Plaintiffs,

John Does 1–3, through their counsel, Kevin Glogower[1]—was filed "with another affiant and Jennifer Smith[.]" [*Id.* at ¶ 14].

A month later—in February 2021—"all three petitions were dismissed. All of those dismissals indicated an intention to tax the 'costs of the investigation' to the Petitioners in all three petitions, which included attorney and expert fees." [*Id.* at ¶ 15]. The Governor promptly "submitted a cost bill application to the Impeachment Committee, seeking, among other things, that . . . the Committee . . . award these costs pursuant to KRS 63.070, and to order the remaining [Beshear] Petitioners to reimburse the Commonwealth for these expenses." [*Id.* at ¶ 16]. The Attorney General took no action, "perhaps recognizing the significant First Amendment issues associated with taxing costs against people for the exercise of First Amendment rights[.]" [*Id.* at ¶ 17]. Seemingly, Representative Goforth followed the Attorney General's lead and took no action.

Another month later—in March 2021—"the Kentucky House Impeachment Committee sent a letter to the Beshear Petitioners and Plaintiffs, . . . the Cameron Petitioners and Plaintiffs, . . . [and] the Goforth Petitioners and Plaintiffs, indicating their intention to impose significant fees and costs on these Petitioners[.]" [*Id.* at ¶¶ 19–21]. For the Beshear Petitioners, the costs totaled $42,444.05. [*Id.* at ¶ 19]. The Cameron Petitioners faced costs of $7,597.36. [*Id.* at ¶ 20]. And the Goforth Petitioners were assessed costs totaling $12,457.36. [*Id.* at ¶ 21]. In the letters, the Impeachment Committee "indicated that they would not entertain any objections or argument about the imposition of these fees or costs generally, and thus indicating they will not entertain arguments about the constitutionality of such fees." [*Id.* at ¶ 19]. Thus, "Plaintiffs have exhausted their remedies." [*Id.* at ¶ 22]. At the time this suit was filed, and to date, "there has been no filing

---

[1] Kevin Glogower's name was misspelled in the Complaint as "Glowgower," hence the misspelled caption of this case. [R. 1].

in state court to seek to enforce any cost of investigation, and, further, no final costs of investigation under K.R.S. 63.070 have been determined or assessed." [*Id.* at ¶ 23].

All three groups of impeachment petitioners sued Governor Beshear and the Chief Clerk in this single action. [R. 1]. At the onset, Plaintiffs filed an emergency motion for a temporary restraining order to block the Chief Clerk from taxing costs and fees during the pendency of this action and moved for a preliminary injunction to prevent her from enforcing KRS § 63.070. [R. 3]. The Court denied Plaintiffs' emergency motion for a temporary restraining order "because . . . the requirements of Rule 65 [were] not satisfied[,]" but the Court continued its analysis of Plaintiffs' motion for a preliminary injunction until a scheduling conference could be held and additional briefing filed. [R. 11 at pg. 5]. On December 17, 2021, the Court granted Governor Beshear's motion to dismiss the action for lack of subject matter jurisdiction, [R. 18], because he did not "commit[] an action giv[ing] rise to a ripe claim." [R. 27 at pg. 6]. In that Order, the Court distinguished between the actions of the Governor and those of the House Clerk. The Court found that the Governor never "made clear his intention to seek [KRS § 63.070's] enforcement[,]" but noted that "[t]his is unlike the actions of the House Clerk, who, only by proposed agreement of the Parties, has agreed to 'not tax costs related to the impeachment petitions' until 'the conclusion of all litigation' in this matter." [*Id.* at pg. 6 n. 5]. At this moment, the Chief Clerk became—and continues to be—the only defendant.[2]

Following the Governor's dismissal, the Beshear Plaintiffs reached an agreement to settle their claims with the Chief Clerk and submitted a proposed agreed order to the Court for consideration. [R. 35]. The Chief Clerk agreed to "not tax costs against [the Beshear Plaintiffs]," without making any "concession as to the merits of the petitions or any admission of liability[,]"

---

[2] Plaintiffs' counsel frequently refers to "the Defendant House" as a named party, as opposed to the "Chief Clerk." *See, e.g.*, [R. 59 at pgs. 1–3, 6, 7]. But, as the Chief Clerk notes, the only named Defendant in this action is the Chief Clerk. [R. 1; R. 27].

in exchange for the Beshear Plaintiffs to "dismiss and withdraw their claims[.]" [*Id.*]. On February 24, 2022, the Court granted the proposed order. [R. 37]. At this stage, the Cameron and Goforth Petitioners became—and continue to be—the only plaintiffs.

The remaining Plaintiffs and the Chief Clerk reached an agreement as to Plaintiffs' then-pending motion for a preliminary injunction and memorialized it in the record. [R. 36]. The Court granted the proposed agreed order, which directs the Chief Clerk to "hold taxing of fines or costs against the [Cameron and Goforth Petitioners] [. . .] during the pendency of this action[,]" in exchange for the Plaintiffs to "hold any request for injunctive relief [. . .] in abeyance." [R. 39].

## III. DISCUSSION

This case is unique and complex in a few ways. *First*, as pled, the Complaint alleges violations of several of the First Amendment's clauses, as well as the Fourteenth Amendment's equal protection clause. [R. 1 at ¶¶ 47–58]. *Second*, although not challenging the Commonwealth of Kentucky's impeachment process, this case relates to it.[3] *Third*, as the Chief Clerk of the

---

[3] The Court has an "independent obligation" to raise and determine whether subject matter jurisdiction exists. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Because this case tangentially concerns impeachment, an undeniably political function, it is prudent for the Court to address the political question doctrine. *See generally Nixon v. United States*, 506 U.S. 224 (1993); *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960) (discussing the political question doctrine's applicability in the state context).

It is true that this matter concerns impeachment to some degree, and it is true that in Kentucky the awesome power of impeachment is "vested solely in the legislature," and "the definition of impeachable conduct is exclusively a matter to be determined by the legislature." Legislative Research Comm'n, Impeachment in Kentucky, Informational Bulletin No. 176, at 1 (1991); *see Collins v. Beshear*, 2013 U.S. Dist. LEXIS 135531, at *6 (E.D. Ky. Sept. 23, 2013). But the Plaintiffs do not ask this Court to consider the state legislature's power of impeachment, nor its definition of impeachable conduct. *See generally* [R. 1]. Here, the Court is not tasked with finding—nor even with considering—whether the Plaintiffs' First and Fourteenth Amendment rights extend to Kentucky's impeachment *process*. Rather, the Court is narrowly tasked with finding whether the Plaintiffs' First and Fourteenth Amendment rights might extend to *petitioning* the Kentucky House of Representatives to consider impeachment pursuant to KRS § 63.070. This distinction is key.

Impeachment is not the essence of this action, but an accidental to it. In other words, in this case, that *impeachment* petitions are concerned is not an essential property. Any other sort of petition could be at issue, and the same rights would be implicated. Therefore, the essential property at issue is the *petition* itself, not its relation to the Kentucky impeachment process—an accidental property. *See* THOMAS AQUINAS, COMMENTARY ON THE METAPHYSICS, Book VII at § 1372 (trans. John P. Rowan) (1961) ("[I]n the case of accidental predications it is not true to say that the essence of a thing and the thing of which it is the essence are the same."). This case does not concern impeachment, nor does it require the Court to opine on how Kentucky's General Assembly should have responded to the

Kentucky House of Representatives is the sole defendant, this action is effectively against the Commonwealth. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (holding "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). And *fourth*, while Plaintiffs admit that the Chief Clerk has yet to tax costs against them, that is not case dispositive as this is a *pre*-enforcement action.[4]

The Complaint seeks declaratory and injunctive relief and raises just three issues for the Court to consider. Those are: whether (1) this Court should declare that KRS § 63.070, facially or as applied, is unconstitutional; (2) this Court should grant Plaintiffs' request for permanent injunctive relief to prohibit enforcement of KRS § 63.070; and (3) the Plaintiffs are entitled to reasonable attorney fees under 42 U.S.C. § 1988, if they prevail. This case is scheduled for jury trial on October 3, 2022 in Frankfort, Kentucky. However, upon review of the Complaint and record, the Court discerns not one triable issue. *See Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574, 590 (E.D. Mich. 2014) ("The Seventh Amendment '*preserve[s]*' the right to a jury trial as existed during the founding of this nation; it does not grant an unconditional right to a jury in all matters.") (quoting *James v.* Mann, 234 F.3d 1268, at *2 (6th Cir. 2000) (unpublished table opinion)). All these claims are legal in nature, so a jury trial is inappropriate. *See Hildebrand v. Board of Trustees of Michigan State University¸* 607 F.2d 705, 708 (6th Cir. 1979) ("If the remedy sought is injunctive relief . . . no jury trial right attaches."); *see also Black v. Boyd*, 248 F.3d 156 (6th Cir. 1957). The role of the jury, after all, is to determine the facts, not the law. *Fidelity &*

---

impeachment petitions. Rather, it solely concerns the Plaintiffs' First and Fourteenth Amendment rights implicated by petitioning the government for a redress of grievances. Because there is no political question, the political question doctrine does not foreclose review.

[4] "One could imagine a court system that prevented a party from challenging a law unless the law had already been enforced against that party. If no enforcement, then no injury, so no case or controversy. But that is not our system." *Chelsey Nelson Photography LLC v. Louisville/Jefferson County Metro Gov't*, 479 F.Supp.3d 543, 549–50 (W.D. Ky. 2020).

*Deposit Co. of Md. v. United States*, 187 U.S. 315 (1902) (summary judgment does not violate Seventh Amendment right to jury); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365 (6th Cir. 2009) (same).

More importantly, neither Plaintiffs nor the Chief Clerk demanded trial by jury in this civil action. In fact, Plaintiffs affirmatively declined to demand trial by jury when they filed their Complaint, [R. 1-1 at pg. 1], and they never made a jury demand in any subsequent pleading.[5] This means that the parties effectively "waive[d] a jury trial" in this action. Fed. R. Civ. P. 38(d) ("A party waives a jury trial unless its demand is properly served and filed."); Fed. R. Civ. P. 39(b) ("Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court[.]"); *see also Olund v. Swarthout*, 459 F.2d 999, 1000 (6th Cir. 1972) (finding that even an "untimely" "demand" for a jury trial is insufficient to preserve the right to a jury trial). Because a timely demand for trial by jury is lacking, there will be no jury trial in this case. Instead, this matter will be resolved on well-drafted, focused, and succinct legal briefs.

The gravity of this action cannot be understated. The Plaintiffs request extraordinary remedies—that this Court declare KRS § 63.070, which provides Kentuckians an avenue to petition their government to impeach elected officials, to be unconstitutional and to permanently enjoin its enforcement. *See, e.g.*, *Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co.*, 177 F.2d 942, 945 (6th Cir. 1949) (noting that injunctions imposed by "the strong arm of equity" are "extraordinary remed[ies]."). Consequently, it is vital for counsel to brief these issues carefully. Briefs prepared by counsel should be focused *solely* on the legal issues addressed in this Order.[6]

---

[5] It seems the first mention of trial by jury appears in a jointly filed Rule 26(f) Report filed into the record one year after the suit was initiated. [R. 41]. This does not function as a demand for a jury trial, nor is it timely. *See Olund*, 459 F.2d at 1000.

[6] Political arguments are inappropriate and unpersuasive. The Court is not convinced that this case concerns gross political corruption as the Plaintiffs' assert in briefing (but not in Complaint). As the Plaintiffs concede in their Complaint, at the onset of this case, "there [were] three groups of Plaintiffs in this matter, constituting registered Republicans and Democrats. They could not disagree with each other more about the substance of what each group

This means that counsel shall not raise arguments in briefing that appear nowhere in the Complaint—such as First Amendment retaliation, *see* [R. 59 at pgs. 5–6], or claims that the Chief Clerk selectively "released" the Beshear Petitioners by accepting their offer to settle their claims, *see* [*Id.* at pgs. 4–5]. Similarly, arguments raised in briefing shall apply to the context of this case—that is, the *pre*-enforcement context against an *official* capacity defendant.

### IV. Conclusion

The Plaintiffs bring a pre-enforcement action against the Chief Clerk of the Kentucky House of Representatives. The Court finds that purely legal questions are presented, negating any need for a jury trial. Further, the Court finds that neither party timely demanded trial by jury in this action. The Court directs the parties to file briefs on the questions raised by the Court in this Order. At this time, the Court takes the Chief Clerk's Motion to Dismiss under advisement. But the Court will deny the Chief Clerk's Motion in Limine as moot.

The Court, having considered the issues and reviewed the pleadings, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1. The Final Pretrial Conference scheduled for Thursday, September 29, 2022 is **CANCELLED**;

2. The Jury Trial scheduled for Monday, October 3, 2022 in Frankfort, Kentucky is **CANCELLED**;

3. The Defendant's Motion to Dismiss [R. 58] is **TAKEN UNDER ADVISEMENT**; and

4. The Defendant's Motion in Limine [R. 76] is **DENIED AS MOOT**.

---

sought through their petitions, and yet they collectively agree on the importance of the rights at issue in this case. The rights at issue are non-partisan, ancient, and fundamental." [R. 1 at pg. 3].

**IT IS FURTHER ORDERED** that, **NO LATER THAN 5:00 P.M. ON FRIDAY, OCTOBER 14, 2022**, the parties **SHALL FILE BRIEFS** of no longer than 20 pages outlining why they should prevail on only the following issues:

1. Do the Plaintiffs enjoy pre-enforcement standing?

2. Does KRS § 63.070, facially or as applied, violate the First Amendment's petition, free speech, and assembly clauses?

3. Does KRS § 63.070, facially or as applied, violate the Fourteenth Amendment's equal protection clause?

4. If the Plaintiffs prevail, does 42 U.S.C. § 1988 permit recovery of reasonable attorney's fees against a government official sued in her official capacity in the 42 U.S.C. § 1983 pre-enforcement context?

Signed September 23, 2022.

Signed By:

_Edward B. Atkins_  *EBA*

**United States Magistrate Judge**