UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

KEVIN GLOGOWER, et al., )
    Plaintiffs )
)
v. ) CASE NO. 3:21-cv-00012-GFVT
)
MELISSA BYBEE FIELDS, in their )
official capacity, et al )
    Defendants )

<u>BRIEF FOR PLAINTIFFS</u>

\*\*\*\*

    Come the Plaintiffs, by counsel, and in accordance with this Court's Order of 9/22/22, R. 78, and provide the following brief on the legal issues outlined by the Court:

    As the Court's Order shows at p. 1, the Beshear Petitions for impeachment were filed by over 100 different petitioners, but only three (Cooperrider, Clark and Wheatley) were targeted with fees for filing. The Cameron Petition was filed by five Petitioners, but only Glogower and the three Breonna Taylor grand jurors were targeted with an invoice for fees and costs. The Goforth petition was filed by twelve individuals, but only Mike and Carol Vanwinkle were targeted with an invoice for fees and costs. Those fees were charged via an invoice sent by the Impeachment Committee to the parties named as Plaintiffs herein. Those invoices are attached to the initiating Complaint in this Court. The record below shows that no invoices were sent to the other petitioners. Order, p. 2. The Plaintiffs filed a complaint outlining First and Fourteenth Amendment claims. Order, p. 4.

1

I. <u>The Plaintiffs Have Pre-Enforcement Standing</u>

The First Amendment protects the right of Petitioners and members of the public to bring issues of public interest before the State Legislature. In the present case the Petition brought was one of impeachment, pursuant to KRS 63.030 which provides that "any person" may petition for the impeachment of "any officer." Under KRS 63.035(2) an impeachment may address any misdemeanor while in office. KRS 63.070(1) states that a Petitioner may be taxed the "costs" of the proceeding. Such costs "shall" be taxed by the Clerk, who may enforce that invoice on five days notice in any circuit court. The statute does not limit the time when the invoice will lapse or become invalid. The clerk may force a petitioner to pay that invoice at any time in their lifetime or, presumably, enforce it against their estate once they are dead. Thus, persons sent that invoice live in constant fear that grievous financial harm could be visited on them at any time on the whim of the clerk, whomever the Clerk of the House of Representatives is. Defendant Clerk recognizes the onus visited on the parties by this looming threat, as her only settlement offer (made to some, but not all of the Plaintiffs herein) has been to agree to never enforce the demand for payment.

"Standing" has been reduced to three necessary elements: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision will provide redress of plaintiff's injury. It is clear that the Plaintiffs have been injured, since they have lived for several years with the threat of the huge debt being enforced against them at any moment simply because they complained about criminal actions and serious misconduct by their elected officials. They are being charged those costs and fees by the Legislature for exercising their First Amendment rights. Courts define an injury in fact as

2

"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." The injury is present and ongoing.

Although the Clerk has not yet filed an action in circuit court to enforce payment of the invoices sent to the Plaintiffs, she has affirmed that she continues to have the right to do so on five days notice under the law. This future injury is impending and there is clearly a substantial risk that the harm will incur in future. *Tennesseans for Sensible Election Laws*, 2021 WL 4621249, at *3 (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)). A plaintiff is not required to subject himself to actual arrest, prosecution, or other acts of enforcement in order to establish Article III standing. The injury in this case is threatened enforcement of a law that imposes serious financial harm on citizens because they spoke out. The Plaintiffs are suffering present imminent risk of harm at the hands of Defendant.

The law as written and enforced chills public discourse and has imposed actionable harm on the Plaintiffs. They are entitled to pre-enforcement standing for that reason. See: *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020) quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007). See also, *Glass v. Paxton*, 900 F.3d 233, 238 quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018) ("government action that chills protected speech without prohibiting it can give rise to constitutionally cognizable injury); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006). The law states that financial penalties in the form of undefined "costs" shall be charged against anyone who files an impeachment petition that is not successful. No limits are placed on the size of the "costs."

In the pre-enforcement context, Plaintiffs need only allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,

3

and . . . a credible threat of prosecution thereunder.*" Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-64 (2014). Plaintiffs far exceed that burden of proof, as they engaged in protected speech, were sent invoices for engaging in the speech, and now live under the looming threat that the Defendant, or any future Clerk of the House of Representatives, may choose to enforce payment of those invoices. "[I]n a pre-enforcement review case under the First Amendment (like this one), courts do not closely scrutinize the plaintiff's complaint for standing when the plaintiff 'claims an interest in engaging in protected speech that implicates, if not violates, each [provision of the law at issue].'" *Platt v. Bd. of Comm'rs on Grievances &Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 196 (6th Cir. 2010)).

Where, as here, the Plaintiffs can "objectively establish an imminent threat that chills protected activity," a cognizable injury-in-fact exists. *Faith Baptist Church v. Waterford Twp.*, 522 Fed.Appx. 322, 330 (6th Cir. 2013) (quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832, 834 (6th Cir. 2001)). "'A plaintiff meets the injury-in-fact requirement-and the case is ripe-when the threat of enforcement of that law is sufficiently imminent.'" *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 506 (6th Cir. 2017). The threat that an invoice for thousands of dollars can be enforced on five days notice as outlined in the statute, at any time for the remainder of the lives of the Plaintiffs is clearly an imminent threat.

Plaintiffs showed below that they filed impeachment petitions such as are permitted under the law. They engaged in a course of conduct, free speech and assembly protected under both the federal Constitution and the Kentucky Constitution. There is now a real and immediate threat of injury to them as a direct and proximate result of their speech and actions. *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 421 (3d Cir. 1992). Failure to redress the Plaintiffs'

4

complaint exposes the Plaintiffs to financial harm or even, for those who are less affluent, financial ruin. That risk is clearly actionable and provides standing to the parties. *W.R. Grace & Co. v. E.P.A.*, 959 F.2d 360, 364 (1st Cir. 1992).

Not only is there clear injury to the Plaintiffs, but the Defendant has affirmed in pleadings and court hearings that it wants to make clear that future exercise of free speech by others bringing impeachment actions will be penalized the same way. This acknowledgement by Defendant of the intent to punish free speech establishes a clear and present injury. *Brown v. Buhman*, 822 F.3d 1151, 1175 (10th Cir. 2016). There is actual harm being done to the Plaintiffs and an ongoing risk of enforcement. *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997) (citations omitted).

Failure of the Court to grant relief to the Plaintiffs in the pre-enforcement stage would be improper. This matter is sufficiently developed to produce a fair adjudication of the merits of the parties' claims. *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 195 (6th Cir.1988). See also *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985), cert. denied, 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985). In this case pre-enforcement review is permitted as there are clear circumstances that render the threatened enforcement sufficiently imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). This Court must find that Plaintiffs have standing to be heard and have the matter adjudicated and do not have to wait until the Clerk of the House of Representatives files an action to enforce the invoice in circuit court before they can ask for redress.

  II.   KRS 63.070, As Applied by Defendant, Violates the First Amendment's Petition, Free Speech and Assembly Clauses

   A.  The Statute As Applied is Unconstitutional

KRS 63.030 permits citizens to bring matters of public interest before the public's elected spokespersons. Legislators act as the representative of the voters, who send them to Frankfort to act and speak on behalf of the public. The statute allows persons to file an impeachment action where an elected official has breached the public trust, and grants the legislature the right to review and determine whether an impeachment is proper and to bring articles of impeachment before the House where appropriate. KRS 63.035. KRS 63.090 define the categories of behaviors by public officials which may expose them to impeachment. That type of offenses were detailed in the impeachment petitions filed before the Legislature by Plaintiffs.

KRS 63.070, the state law at issue in this action, provides in relevant part that:

> In a proceeding for impeachment or removal by address [before the state House], if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee.

Id, Subsection (1). In the present case the committee found that the petitions had "no merit." There was no claim made by the Impeachment Committee for "costs" of the <u>accused</u>. Neither the Attorney General nor former Representative Goforth claimed any "costs" related to their defense against the impeachment. No <u>witness</u> claimed "costs" against the citizens bringing the impeachment. There was no hearing granted by the Impeachment Committee and the Impeachment Committee did not allow Plaintiffs (Petitioners below) to argue their claims, call witnesses or speak before the Impeachment Committee. Rather, the Impeachment Committee itself sent the petitioners invoices claiming that the state legislature was owed monies for its time reviewing the public interest matter, and compensation of various attorneys it had retained to advise the Committee.

None of those charges invoiced by Defendant fall under the definition of "costs of witnesses or the accused." The statute does not include the right of the legislature to bill for the legislature's own attorney or any expert hired by the legislature to advise it. Those individuals are not properly characterized as "witnesses" or "the accused" under the statute. As applied, the statute was used to support Respondent's right to charge citizens who raise public concerns. The Impeachment Committee was doing the work they were elected to do. They are compensated for that work by the Commonwealth. Allowing them to invoice persons bringing matters of public interest before the legislature is an improper and unconstitutional application of the law.

Further, the invoice for the legislature's own lawyers and work was sent to only a few of the persons who filed the impeachment actions. In the Cameron impeachment, only three (3) of the five (5) individuals bringing the impeachment were sent an invoice or subject to demand for payment. In the Goforth impeachment, only two (2) of the nine (9) persons bringing the impeachment were sent invoices. The statute does not permit picking and choosing who to bill, particularly where the persons hit with those bills were those least able to pay them.

B.   Even Were The Statute Applied Fairly, It Would Be Unconstitutional

KRS 63.070 exposes persons who complain about illegal activities of elected officials through an impeachment petition to ruinous costs. The statute does not place a cap on the costs to be assessed or define what "costs" include.

Constitutional application of monies imposed on those who exercise free speech may be enforced. Courts making the analysis of constitutionality must make sure that there is a balancing of interests, in which "the critical inquiry is whether the governmental interest is

7

sufficiently substantial to justify the effect of the ordinance on the restricted expression." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118 2129, 80 L.Ed.2d 772 (1984). There must be a legitimate and substantial interest requiring the application of the law. No such legitimate and substantial interest supported the charges demanded from the Plaintiffs.

The fora in which the free speech occurs is also relevant to an analysis of financial burdens placed on such speech. Greater protections are given to a "traditional public forum". See: *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Nothing could be more traditionally protected than the right of citizens to share concerns with their elected officials who are representing them in the legislature. Constituent needs and interests are the guiding force for Kentucky's legislators. The Supreme Court has held that "[t]he rights of the State to limit expressive activity are sharply circumscribed.... the State must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Id. at 45, 103 S.Ct. at 955 (citations omitted). Caselaw holds that a state must show that the regulation on speech is reasonable and that it is not an effort to suppress expression merely because public officials oppose the speaker's view. Id. at 46, 103 S.Ct. at 955 (citation omitted).

The question of whether the government may charge for speech-related activity has been before the Courts frequently. Such costs are typically only found applicable to non-public forums. See, e.g., *Gannett Satellite Information Network, Inc. v. Metropolitan Transportation Authority,* 745 F.2d 767, 770 (2d Cir.1984). To be constitutional, fees must be content neutral and be the least restrictive means of serving the government's interests. *Century Federal, Inc. v. City of Palo Alto*, 710 F.Supp. 1559 (N.D. Cal. 1988). The unlimited right for an Impeachment

8

Committee to bill citizens who raise serious and substantiated concerns about misfeasance by elected officials is overbroad and improper.

The statute does not define or cap fees or costs that may be charged to citizens raising those public questions. As this case shows, the invoices sent were for thousands of dollars unrelated to either the "accused" or traditional costs. The charges were for matters the legislature controlled – whether the Impeachment Committee made up primarily of attorneys should hire another three attorneys to advise them, and whether they should allow those attorneys to charge the Petitioners an hourly fee of almost $500, where the state cap on attorney fees is $125/hr.

In the present case, the Impeachment Committee created those unnecessary costs and approved, without a contract, hourly charges at almost quadruple the state rate. Those charges were in turn passed on to the citizens who had raised the public issues before their representatives. An Impeachment Committee with an improper motive to penalize citizens raising those issues could create a bill for "costs" that was hundreds of thousands of dollars, bankrupting anyone who chose to raise such a claim. While the public citizens do have the right to go to circuit court to contest the imposition of such "costs", after the Clerk of the House of Representatives files that action, participating in civil litigation is costly and time consuming and places an additional financial burden on the impacted citizens. No public defender is typically provided for a low income citizen in a civil action. The statute, both as written and as applied, imposes improper financial harm on citizens for exercising their rights to free speech and assembly.

    III.    <u>KRS 63.070, As Applied by Defendant, Violates the Fourteenth Amendment's equal protection clause</u>

The statute as written and as applied has a significant disparate impact based on both the financial status of an impeachment petitioner and on what actions the legislature decides to consider "costs" of the impeachment.

It is common sense to recognize that persons with different income levels will be disparately harmed by financial penalties imposed for the exercise of free speech and assembly. Some persons could pay an invoice for $12,000.00, due on five days notice, while many others would struggle or even face bankruptcy in that situation. As noted in *United States Supreme Court in Tigner v. State of Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124: "The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." Where costs are imposed on parties protecting their constitutional rights or bringing actions permitted by law, statutes which have been found constitutional provide a means for low income residents to have such charges reduced or excused. This law does not do so. As applied in this case, the "costs" were assessed against some of the Plaintiffs least financially able to bear such costs.

Financial inequity and the disparate impact of the law violates the Equal Protection Clause from that "invidious discrimination" referred to by the Supreme Court of the United States in *Griffin v. People of State of Illinois*, (1956), 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891, when it required that destitute defendants have the same right as defendants who have the money to buy a transcript required for an appeal. Id. 351 U.S. at page 19, 76 S.Ct. at page 591. A law must contain a rational basis for the different treatment if it is to be found constitutional. See: *United States v. Lane*, 196 F.Supp. 484, 488 (N.D. Ind. 1961).

In the present case the law contains no basis showing equality in the impact of the "costs" provision. Poor people will inevitably suffer to a far greater extend that than those with substantial means. No legitimate purpose is shown in the law for that disparate impact. Further, this Court should note that the person filing the impeachment petition has no means of controlling the cost which can be assessed against them. In the present case the Plaintiffs (Petitioners below) were not permitted to have any voice in the Impeachment Committee's work. They could not appear, ask questions, make arguments, present witnesses or speak to the Committee. It was the Committee itself, unchecked by any law or regulations, which had total control over what charges were or could be incurred, and what "costs" it would assess against the public citizens. There is no avenue for for those who cannot afford an invoice such as was sent in this case to request financial relief other than equally costly civil litigation.

The legislative Impeachment Committee can create, and bill for, varying levels of charges based on decisions that it, alone and unchecked, make during the course of review of an impeachment petition. The inequity of the law is emphasized in this case, where the legislative committee reviewing impeachment actions hired multiple counsel at four times the state maximum attorney fee rate to assist them, and then imposed the costs created by their own choice on the Plaintiffs. The Plaintiffs had no ability to weigh in on those charges, the employment of numerous lawyers by the legislative committee, or the amount of time spent by those lawyers. A legislative committee could act vindictively and cause the charges to exceed $100,000.00 with ease, simply by hiring more expensive experts or lawyers and having those persons spend more hours. This unchecked ability to impose financial ruin on any citizen filing an impeachment is clearly illegal and unconstitutional.

As applied, the law has an improperly disparate financial impact on the current Plaintiffs. The law also fails to define "costs", which creates an improper risk of harm to those filing impeachment petitions. In the present case the legislative committee created most of the "costs" it invoiced Plaintiffs for and could do so in a more disastrous way in the future, as there are no limits on that contained in the law. The statute provides that "costs" of witnesses and the accused may be imposed if the respondent is successful when an impeachment is heard. KRS 63.070. In the present case, the impeachment was never brought before the House. Arguably, then, no costs could have been imposed under the statute. Regardless, the Impeachment Committee sent massive invoices to those citizens raising those public concerns. The impeachment committee reviewed the petitions and claimed they had no merit. The committee then relied on the inapposite statute to charge Plaintiffs for its own expenses, rather than the "costs" of witnesses and the accused as outlined in the law. It is clear that the law was improperly applied so as to cause maximum harm to the persons filing impeachments.

IV. <u>A Reasonable Attorney Fee Should Be Granted By the Court Under 42 USC Section 1983 and 1988</u>.

This Court held that as the Defendant is a representative of the Commonwealth, this is essentially a suit against the Commonwealth. Order, p. 5. "A claim against a government official in his official capacity is a claim against the governmental entity he represents." See *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099 3105, 87 L.Ed.2d 114 (1985). The Plaintiffs asserted that the impeachment "costs" statute is unconstitutional because it penalizes the public for bringing critical public issues before the body charged by law with redress of those issues. The statute, as written as well as in the manner it was applied, deprives the Plaintiffs of a constitutional right which may be remedied under 42 U.S.C. § 1983. 42 U.S.C. § 1983 provides

a federal remedy in damages when a person, acting under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1988(b) authorizes a trial court, in the exercise of its discretion, to award reasonable attorney fees to the prevailing party in an action to enforce 42 U.S.C. § 1983.

Courts hold that "[t]o qualify for attorney fees under [section] 1988, a plaintiff must successfully prosecute a federal civil rights action." *Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1376 (Utah 1993). Where, as here, a state officer is sued in its official capacity under § 1983 for declaratory or injunctive relief and attorney fees and does not seek any damages, fees may be awarded. The person sued is that individual whose duties include implementation or enforcement of the statute being assailed. *Oten v. Colorado Board of Social Services*, 738 P.2d 37 (Colo.App.1987). Relief may properly be sought against that individual. "§ 1983 "provides the exclusive federal damages remedy for the violation of rights guaranteed by § 1981 when the claim is pressed against a state actor."*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).

To establish liability, the Plaintiffs have identified conduct properly attributable to the government entity itself, showing proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. This satisfies the burden required under the law. *Davis v. Tarrant Cnty, Tex.*, 565 F.3d 214, 227 (5th Cir. 2009).

42 USC §1988 provides for awards of attorney fees to a prevailing party "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title" (42 USC § 1988[b]). These fees are not compensation for the injury giving rise to an action. Plaintiffs' fear and suffering over the past two years can never be repaid. The time the Plaintiffs had to spend missing time at hourly jobs, which created an additional financial

13

sacrifice on their parts, can never be repaid. The award of fees is simply to ensure that Plaintiffs do not incur additional damages for having the courage to bring this concern before the Court. *White v New Hampshire Dept. of Employment Sec.*, 455 US 445, 451-452 (1982). Two years of extensive litigation, briefing and court appearances is a significant amount of legal work. Counsel for the Plaintiffs worked hard to ensure that the Plaintiffs were protected from unconstitutional charges against them for exercising free speech rights, and that future public comments would not suffer the same financial penalty.

## CONCLUSION

The state law at issue in this matter, both as written and as applied, violates the First and Fourteenth Amendment rights of the current Plaintiffs and adversely impacts any future member of the public who files an impeachment action with the state legislature. For that reason, the law must be held unconstitutional. This Court should find that the Plaintiffs have pre-enforcement standing and that the statute violates both the Plaintiffs' right to free speech and their equal protection rights. Plaintiffs brought this action and have prosecuted it for two years. They are entitled to an award of reasonable attorney fees for bringing the unconstitutional application of this statute to the attention of the Court and protecting the rights of all members of the public.

Respectfully submitted,

*Anna Stewart Whites*
ANNA STEWART WHITES
Attorney at Law
327 Logan Street
P.O. Box 4023
Frankfort KY 40601
(502) 352-2373/FAX 352-6860
AnnaWhites@aol.com

14

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, a copy of the foregoing was filed electronically on counsel for Defendants. Notice of this filing will be served on the Court's CM/ECF

<u>Anna Stewart Whites</u>
Counsel for Plaintiffs