UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KEVIN GLOGOWER, *et al.*, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | CASE NO. 3:21-cv-00012-GFVT |
| ) | |
| ) | |
| MELISSA BYBEE FIELDS, in their official ) | |
| capacity, *et al.* ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S BRIEF**

\*\*\* \*\*\* \*\*\* \*\*\*

The Defendant, Melissa Bybee-Fields, in her official capacity as the Clerk of the Kentucky House of Representatives ("Clerk"), by counsel, hereby submits this Brief on the merits pursuant to the Court's September 23, 2022 Order:

**INTRODUCTION**

During the 2021 Regular Session of the Kentucky General Assembly, plaintiffs Andrew Cooperrider, Tony Wheatley, and Jacob Clark ("Cooperrider Plaintiffs") brought an impeachment petition against Kentucky Governor Andy Beshear; plaintiffs John Does 1-3, through their counsel, plaintiff Kevin Glogower, Esq. ("Glogower Plaintiffs") brought an impeachment petition against Kentucky Attorney General Daniel Cameron; and plaintiffs Michael and Carol VanWinkle ("VanWinkle Plaintiffs") brought an impeachment petition against former state Representative Robert Goforth. As noted by the Court, while each of the petitions were "supported by . . . other Kentucky residents as affiants" it was the named Plaintiffs who filed the petitions with the House of Representatives ("House"), (R. 78, at 1-2.), pursuant to

Kentucky Revised Statute ("KRS") 63.030, which establishes a statutory scheme for an individual to petition the House for the impeachment of a public officer. (R. 1 at P. 4.) The House appointed an Impeachment Committee ("Committee") to investigate the petitions, which met and heard testimony concerning the petitions. <u>The Clerk, the only remaining named Defendant herein, was busy with duties attending to the sessions of the House and took no part in any of the Committee's activities.</u>

All of the petitioners and Plaintiffs herein were advised that KRS 63.070 authorizes costs to be assessed to the petitioners if the committee reported against the petition and if the report was not overruled by the House. *See* KRS 63.070(1) ("In a proceeding for impeachment or removal by address, if the committee reports against the petition and the report is not overruled by the house petitioned, the petitioner shall be liable to witnesses and to the accused for the costs of investigation before the committee. These costs shall be taxed by the clerk of the house appointing the committee."). Each of the petitioners and plaintiffs herein chose to continue with their petitions despite the notice regarding KRS 63.070 and the potential imposition and taxing of costs against them.

Ultimately, the Committee reported against the petitions and recommended the House take no further action. At the conclusion of the Committee's investigation, and pursuant to KRS 63.070, the Committee collected the various costs related to the Committee's work and sent a letter, not an invoice or a bill, to each group of petitioners documenting those costs. The Plaintiffs have essentially pled in their Complaint the pure legal question as to whether this statute may be invoked to tax the costs of their failed petitions against them. (R. 1 at P. 10.) <u>However, several very important facts are that the Clerk did not send those letters to the Plaintiffs; the Clerk took no action related to the impeachment petitions or investigations; and to</u>

<u>this day the Clerk has not taxed any costs on any of the Plaintiffs.</u>

Nonetheless, the Plaintiffs filed a Complaint in this Court seeking a declaration that KRS 63.070 is unconstitutional and requesting permanent injunctive relief prohibiting the Clerk from taxing the costs against the Plaintiffs, which she had not, and still has not, done. Notably, the Plaintiffs' Complaint states that "[a]s of the date and time that this matter has been filed, there has been no filing in state court to seek to enforce any cost of investigation . . . ." (R. 1, P. 8). Additionally, the Complaint does not contain a single allegation that the Clerk has taken any action related to the Plaintiffs' impeachment petitions or against the Plaintiffs themselves at all. This is because, as noted previously, but bears repeating – the Clerk did not send the letters relating to costs to the Plaintiffs; the Clerk has not had any communication at all with the Plaintiffs related to costs; the Clerk took no action related to the impeachment petitions or investigations; and to this day the Clerk has not taxed any costs on any of the Plaintiffs.

## **LEGAL STANDARD**

The Plaintiffs Complaint should be dismissed either for lack of subject matter jurisdiction or for failure to state a claim. If dismissal is not warranted under the current record, the Defendant should be granted judgment as a matter of law.

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (6) provide that a claim may be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir.

2010). "[A] district court may, at any time . . . dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of the complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citations omitted). Similarly, "[t]he lack of subject matter jurisdiction is a nonwaivable defect that may be raised at any time to justify dismissal of a pending action." *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984) (citation omitted).

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (citations omitted).

## ARGUMENT

### I. The Plaintiffs Do Not Have Pre-Enforcement Standing

As noted above, the Plaintiffs' Complaint does not contain a single allegation that the Clerk has acted in any way against them. The Complaint merely states the statute authorizes the Clerk to tax the costs of a failed impeachment petition against them, and that the statute works to deprive them of some constitutional right. However, the Clerk has not actually taxed the costs against any of the Plaintiffs.

The Constitution limits a federal court's jurisdiction to "cases and controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A case or controversy requires a Plaintiff to have standing. *Id*. at 560. Standing requires "a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . traceable to the challenged action of the defendant[.]'" *Id*. (citation omitted). Standing also requires an injury in fact, meaning the injury

4

is actual or imminent, rather than hypothetical. *Id*. (citation omitted). In the present case, the Plaintiffs fail to allege an injury traceable to the action of the Clerk or an injury in fact, and thus the Plaintiffs do not have traditional standing and, even if they did, their claims are not ripe.

Additionally, the Plaintiffs do not have pre-enforcement standing. "In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). The Supreme Court has held "that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citing and quoting from *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

In the present case, the Plaintiffs cannot meet this standard for several reasons. First, the Plaintiffs have brought impeachment petitions under a statutory right, and although their Complaint alleges a First Amendment right to petition the Kentucky House of Representatives for the impeachment of a public official, they do not cite to a single case establishing a constitutional right to participate in the impeachment process. Indeed, the Kentucky Constitution gives the House of Representatives plenary power over impeachment. Ky. Const. § 66 ("The House of Representatives shall have the sole power of impeachment."). Second, <u>the conduct</u> the Plaintiffs participated in, filing impeachment petitions, is not proscribed by statute at all, but rather is authorized by a statute, which is the only source of authority for them to file the petitions. Additionally, that statutory right includes the imposition of costs scheme that they now allege violates their constitutional rights.

5

Finally, the Plaintiffs cannot show there exists a credible threat of prosecution under the statute. As noted, the Clerk has taken no action against the Plaintiffs. Instead, the Plaintiffs merely point to letters received from the House Impeachment Committee documenting the costs attributable to each of the failed petitions and allege that those letters chill some future protected speech of some future potential petitioners. However, "'without some other indication of imminent enforcement[,]' our circuit has held that mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact for pre-enforcement standing purposes." *McKay v. Federspiel*, 823 F.3d 862, 868–69 (6th Cir. 2016) (citing and quoting from *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012)). The Sixth Circuit Court of Appeals has held a credible threat of prosecution may still be found if a plaintiff alleges a subjective chill and points to some combination of several factors, such as (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action. *Id*. at 869 (citations omitted).

However, the Plaintiffs cannot point to any history of past enforcement against them or others. In fact, it's unclear if the statutory scheme imposing costs has ever been enforced against any petitioner. Similarly, the Plaintiffs cannot point to any warning letter received <u>from the House Clerk</u>, the defendant and official with authority to tax costs, and even the letters received from the Impeachment Committee cannot be characterized as "warning letters" – the statute does not empower the Committee to tax the costs and the letters merely documented the costs of witnesses and accused as compiled by the Committee under the law. Further, the letters did not warn the Plaintiff petitioners to refrain from any conduct at all, unlike the letters noted by the

6

Sixth Circuit in *Berry* and *Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014). And, finally, although the statute allows the Clerk to enforce any potential imposition of costs upon five (5) days' notice in a Kentucky state court, the statute does not make such actual enforcement more likely because the Clerk, and only the Clerk, would still have to take an affirmative step, but she has taken no action against any of the Plaintiffs, nor has she ever given any indication she would.

The Plaintiffs cannot establish pre-enforcement standing, and therefore, their Complaint against the House Clerk should be dismissed with prejudice.

### II.  KRS 63.070 Does Not Violate The First Amendment's Free Speech, Petition, Or Assembly Clauses

A. <u>Free Speech</u>

The Plaintiffs' First Amendment claims as to free speech are analyzed in three steps: (1) the court first looks to determine if the plaintiffs' conduct is protected speech; (2) the court next identifies whether the forum is public or nonpublic; and (3) the court analyzes whether the justifications for restriction in the relevant forum satisfy the requisite standard. *Saieg v. City of Dearborn*, 641 F.3d 727, 734-35 (6th Cir. 2011).

In the present case, the Plaintiffs' conduct is not protected speech. The Kentucky Constitution gives the House of Representatives plenary power over the impeachment process. Ky. Const. § 66. Indeed, the House could choose to not accept any citizen petitions at all regarding impeachment of government officials. However, the House, along with the Senate through an act of the General Assembly, has created a statutory process for citizens to file impeachment petitions in KRS 63.070. Absent this statutory process, a citizen does not have the right to file a petition, and therefore, the Plaintiffs' conduct is not protected speech under the First Amendment.

Similarly, even if the Plaintiffs have a right to speak through an impeachment petition,

the forum for that speech, an Impeachment Committee of the House of Representatives, is not a public forum. Rather, that Committee is a special committee of the House of Representatives that is given authority to conduct impeachment proceedings, which are not required to accept input from the public, and which are not required to be conducted in public at all. See KRS 61.810(1)(i) (noting that committees of the General Assembly other than standing committees are excepted out of the state Open Meetings Law). The House, and by delegation, the Impeachment Committee determines how the proceedings will be conducted and what testimony will be received, consistent with its plenary power under the constitution, and by nature that forum can be and often is a nonpublic forum.

Access to a nonpublic forum can be restricted as long as the restrictions are reasonable and are not an effort suppress expression merely because public officials oppose the speaker's views. *Cornellius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800 (1985). And, "'[t]ime, place, and manner restrictions may be enforced even in a *traditional public forum* so long as they are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Saieg*, 641 F.3d at 735 (citing and quoting from *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841, 850 (6th Cir.2008)).

In the present case, the imposition of costs statute actually does not restrict the Plaintiffs' access to the forum at all – they were permitted to file their petitions and could file additional petitions in the future. Even if it did, the "restriction" of the statute is merely a fee shifting mechanism designed to limit the filing of frivolous petitions that could waste the time and resources of the General Assembly in its already time constrained sessions. *See* KY. CONST. § 42 (limiting the sessions of the General Assembly to thirty legislative days in odd-numbered years

8

and sixty legislative days in even numbered years). Further, the statute is completely content neutral and does not seek to suppress any expression based on the Plaintiffs' views – it merely shifts costs when petitions are found to be without merit. Finally, even if the Court determines the forum is public, the manner restrictions are content neutral – the costs are not dependent on the subject of the petition, the statute is narrowly tailored – it only applies to petitions without merit, and even if the cost statute is applied, it does not restrict any person from speaking through the filing of another petition.

B. Petition

Although the First Amendment guarantees the right to petition the government for redress of grievances, the jurisprudence under the Petition Clause does not "indicate that the right to petition is absolute." *McDonald v. Smith*, 472 U.S. 479, 484 (1985). Indeed, the Court has held that "baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983). Further, "[a] citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

As with the holding in *Bill Johnson's Restaurants*, the costs imposition statute is only implicated when the Impeachment Committee "reports against the petition and the report is not overruled by the house petitioned." KRS 63.070(1). Similarly, the mere filing of a petition, which was not in any way infringed in this case, does not guarantee a response to the petition or the right for the Impeachment Committee to act on or adopt the petitioner's views. In other words, the Impeachment Committee was not required to report favorably on the Plaintiffs' petitions, and the Impeachment Committee had the authority to determine the petitions were

9

without merit to go forward, or akin to being found baseless. And, under the statutory scheme granting the Plaintiffs the ability to file their petitions, that determination then allowed the imposition of costs, and neither that determination or the potential imposition of costs infringes on any rights of the Plaintiffs, costs may be imposed, and the Plaintiff petitioners are not immunized by the First Amendment right to petition.

### C. Assembly

"Courts typically evaluate free speech, assembly and petition claims under the same analysis." *Ramsek v. Beshear*, 468 F.Supp.3d 904, 914 (E.D.KY. 2020) (citations omitted). The Plaintiffs allege no additional facts in their Complaint relative to the right to assemble that distinguish this claim from the right to free speech or petition. Therefore, the same analysis as above applies, and the cost imposition statute did not, and does not, in any way prevent the Plaintiffs, or any other potential petitioners, from filing petitions for impeachment of government officials. Rather, the statute gave a mechanism for citizens to participate in the impeachment process by filing a petition, but also carried with it the possibility of a fee shifting mechanism to limit the filing of frivolous or purely politically motivated petitions.

KRS 63.070 does not violate the Plaintiffs' rights under the First Amendment's free speech, petition, or assembly clauses, either on its face or as applied. Therefore, the Plaintiffs' Complaint is without merit, and the House Clerk should be granted judgment as a matter of law.

### III. KRS 63.070 Does Not Violate the Fourteenth Amendment's Equal Protection Clause

The Plaintiffs allege that the cost imposition structure in KRS 63.070 violates the Fourteenth Amendment's Equal Protection Clause because the statute impacts a fundamental right, free speech, and treats this group of impeachment petitioners differently than other petitioners based on some unnamed protected class. However, the Plaintiffs have not advanced

any credible facts and have merely made baseless allegations of discrimination based on a protected class.

The Equal Protection Clause ensures that a state "cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). In order to survive a motion to dismiss, a Plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citation omitted).

In the present case, the Plaintiffs merely allege that the cost imposition statute burdens their fundamental right to free speech. However, the Plaintiffs were permitted to file their impeachment petitions, and thus were permitted to speak, and there was actually no burden placed on that right. Rather, the Plaintiffs are potentially subject to the state recouping the costs associated with the proceedings on their petitions, which the Impeachment Committee determined did not warrant any further action by the House. Additionally, the Plaintiffs have not advanced any evidence to support that the statute was applied in a way to target a suspect class or to intentionally treat any of them differently than any other similarly situated persons. Indeed, all of the Plaintiffs were treated exactly the same – they were sent letters documenting the costs associated with the witnesses and accused that were the subject of their petitions. Insofar as the Plaintiffs allege they were merely treated unfairly based on the potential imposition of costs against them, their equal protection claim is properly dismissed. *Id*.

There is no evidence of any Equal Protection Clause violation. Therefore, the Plaintiffs' Complaint is without merit, and the House Clerk should be granted judgment as a matter of law.

**IV.     42 U.S.C. § 1988 Does Not Permit Recovery Of Reasonable Attorney's Fees Against The House Clerk In The 42 U.S.C. § 1983 Pre-Enforcement Context**

The Plaintiffs are not entitled to attorney's fees because their Complaint should be dismissed or the House Clerk granted judgment as a matter of law, and thus the Plaintiffs are not prevailing parties. However, even if the Court determines that KRS 63.070 is unconstitutional, the Plaintiffs should still not be awarded attorney's fees because the House Clerk has taken no action against them, and in this pre-enforcement context, the award would be merely against the Clerk based on the General Assembly enacting a statute or on the Impeachment Committee finding against the petitions – legislative functions for which the General Assembly, the House of Representatives, the Impeachment Committee, and the Clerk, as an aide to the House, would enjoy absolute legislative immunity. *See Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 738-39 (1980) (holding award of attorney's fees against Supreme Court of Virginia was improper when the Court was acting in a legislative capacity in failing to exercise rulemaking authority).

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs have failed to state a claim upon which relief may be granted under the First and Fourteenth Amendments to the United States Constitution, and the Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact or meet their burden of proof on their claims. Therefore, the House Clerk respectfully requests that the Plaintiffs' Complaint be dismissed with prejudice or that she be granted judgment as a matter of law.

Respectfully submitted:

/s/ Greg Woosley_____
Gregory A. Woosley (91428)

12

        General Counsel
Legislative Research Commission
Capitol, Room 300
700 Capitol Avenue
Frankfort, Kentucky  40601
Telephone:     (502) 564-8100
Fax:               (502) 564-6543
Email:            greg.woosley@lrc.ky.gov

*Counsel for Defendant,*
*Melissa Bybee-Fields*

## CERTIFICATE OF SERVICE

    I hereby certify that on October 14, 2022, a copy of the foregoing Brief was filed with the court, service of which will be sent by operation of the Court's CM/ECF system to all parties or their counsel indicated on the electronic filing receipt. Parties may access the filing through the Court's CM/ECF system.

        /s/ Greg Woosley_____
        Gregory A. Woosley

13